**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| RICHARD R. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-20-180-D |
| | ) | |
| PROVIDENT LIFE AND ACCIDENT | ) | |
| INSURANCE COMPANY, a foreign | ) | |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT</u>**

PHILLIP G. WHALEY, OBA No. 13371
MATTHEW C. KANE, OBA No. 19502
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK   73104
Telephone:   (405) 239-6040
Facsimile:    (405) 239-6766
pwhaley@ryanwhaley.com
mkane@ryanwhaley.com

ATTORNEYS FOR DEFENDANT
PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY

## TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................... 1

**ARGUMENTS AND AUTHORITIES** ............................................................................ 2

  **I.**    **There is No Viable Breach of Contract Claim Asserted Here** .......................... 2

  **II.**   **Plaintiff's Bad Faith Claim Fails as There is No Breach** ................................. 4

  **III.**  **Plaintiff's Bad Faith Claim also Fails under the *Twombly-Iqbal* Standard** ..... 7

    **A.**  **The Pleading Requirements under the Federal Rules and Applicable Cases** ............................................................................................................ 8

    **B.**  **Plaintiff fails to plead a plausible bad faith claim under *Twombly*** ................ 9

    **C.**  **The Infirmities in Plaintiff's Bad Faith Allegations are Evidenced by the Fact They are Virtually Identical to Those Used in Numerous Other Cases** ............................................................................................................... 16

  **IV.** **Plaintiff does not State a Viable Claim for Misrepresentation based on the Agent's Purported Statements** ........................................................................... 17

  **CONCLUSION** .......................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*4100 Perimeter Ltd. P'ship v. Hartford Cas. Ins. Co.*,
 No. CIV-14-0641-HE, 2015 WL 5008410 (W.D. Okla. Aug. 20, 2015) ....................... 5

*Allen* v. *Zavaras*,
 430 F. App'x 709 (10th Cir. 2011) ................................................................. 8

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ......................................................................... 7, 8, 9, 11

*Badillo v. Mid Century Ins. Co.*,
 2005 OK 48, 121 P.3d 1080, 1093 ............................................................. 4, 5

*Ball v. Wilshire Ins. Co.*,
 2009 OK 38, 221 P.3d 717 .......................................................................... 5

*Bankers Trust Co. v. Brown*,
 2004 OK CIV APP 1, 107 P.3d 609 ............................................................. 20

*Bell Atl. Corp.* v. *Twombly*,
 550 U.S. 544 (2007) ............................................................................ passim

*Bixler v. Foster*,
 596 F.3d 751 (10th Cir. 2010) .................................................................... 8

*Boggs v. Great Northern Ins. Co.*,
 659 F.Supp.2d 1199 (N.D. Okla. 2009) ...................................................... 2

*BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*,
 2005 OK 65, 148 P.3d 832 ......................................................................... 2

*Brant* v. *Shea Mortg, Inc.*,
 No. 2: 10-CV-829-FKD-RJJ, 2011 WL 1300360 (D. Nev. Mar. 30, 2011) .................. 17

*Brown v. U.S. Bank Nat'l Ass'n*,
 Civ. No. 3:14-CV-89-L, 2014 WL 3764887 (N.D. Tex. July 31, 2014) ...................... 17

*Bunnell v. American Bankers Insurance Co. of Florida*,
 No. 12-cv-372-R, 2013 WL 9554564 (W.D. Okla. July 17, 2013) ............................ 12

*Buzzard v. McDanel*,
  1987 OK 28, 736 P.2d 157 ............................................................................. 6

*Christian v. American Home Assur. Co.*,
  1977 OK 141, 577 P.2d 899 ........................................................................... 4

*City National Bank and Trust Co.* v. *Jackson National Life Insurance*,
  1990 OK CIV APP 89, 804 P.2d 463 .............................................................. 5

*City of Orem v. Evanston Ins. Co.*,
  12-CV-425-JNP-PMW, Dkt. No. 90 (D. Utah Oct. 27, 2017) ..................... 13

*Coonce v. Auto. Club of Am.*,
  No. CIV-17-279-RAW, 2017 WL 6347165, at *1 (E.D. Okla. Dec. 12, 2017) ............. 3

*Coonce v. CSAA Fire & Cas. Ins. Co.*,
  748 F. App'x 782 (10th Cir. 2018) ................................................................. 3

*Daily v. USAA Cas. Ins. Co.*,
  No. CIV-14-0550-HE, 2014 WL 12729172 (W.D. Okla. Nov. 19, 2014) ................... 12

*Erbe v. AAA Fire & Cas. Ins. Co.*,
  No. 16-CV-596-TCK-PJC, 2017 WL 489417 (N.D. Okla. Feb. 6, 2017) ............... 12, 13

*Erikson* v. *Pawnee Cnty. Ed of Cnty. Comm'rs*,
  263 F.3d 1151 (10th Cir. 2001) ...................................................................... 9

*Felsenthal* v. *Travelers Prop. Cas. Ins. Co.*,
  No. 12 C 7402, 2013 WL 1707931 (N.D. Ill. Apr. 19, 2013) .......................... 14

*Fisher v. Aetna Life Ins. & Annuity Co.*,
  39 F. Supp. 2d 508 (M.D. Pa. 1998), aff'd. 176 F.3d 472 (3d Cir. 1999) ................... 21

*Frost* v. *Aurora Loan Servs., LLC*,
  No. 10-cv-2476-WHA, 2011 WL 3471024 (N.D. Cal. Aug. 5, 2011) ......................... 16

*Garnett v. Government Employees Ins. Co.*,
  2008 OK 43, 186 P.3d 935 .............................................................................. 5

*Gee v. Pacheco*,
  627 F.3d 1178 (10th Cir. 2010) ...................................................................... 3

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
  130 F.3d 1381 (10th Cir. 1997) ........................................................................ 3

*Givens* v. *Smith*,
  No. 5:12-CV-145, 2014 WL 1393181, (N.D.W.V. Apr. 9, 2014) ................................ 17

*Godfrey v. CSAA Fire & Casualty Insurance Company*,
  CIV-19-329-JD, U.S. District Court, Western District of Oklahoma ........................... 16

*Hall v. Edge*,
  1989 OK 143, 782 P.2d 122 ............................................................................. 19

*Hightower v. USAA Cas. Ins. Co.*,
  No. 16-CV-274-JED-FHM, 2017 WL 1347689 (N.D. Okla. Apr. 7, 2017) ........... 12, 13

*Houchin v. Hartford Life Ins. Co.*,
  No. CIV-14-522-D, 2016 WL 502075 (W.D. Okla. Feb. 8, 2016) ................................ 5

*Inks v. USAA Gen. Indem. Co.*,
  No. 17-CV-00210-GKF-FHM, 2018 WL 3589116 (N.D. Okla. June 27, 2018) ........... 7

*Jacobsen v. Deseret Book Co.*,
  287 F.3d 936 (10th Cir. 2002) ......................................................................... 3

*JP Energy Mktg., LLC v. Commerce & Indus. Ins. Co.*,
  2018 OK CIV APP 14, 412 P.3d 121 ................................................................ 2

*Kan. Penn Gaming, LLC* v. *Collins*,
  656 F.3d 1210 (10th Cir. 2010) ........................................................................ 8

*Khalik v. United Air Lines*,
  671 F.3d 1188 (10th Cir. 2012) ................................................................... 8, 13

*Krantz v. Peerless Indem. Ins. Co.*,
  No. 18-3450, 2019 WL 1123150 (E.D. Pa. Mar. 12, 2019) .................................... 14

*Larson v. Agos*,
  No. 11-cv-986-CMACBS, 2011 WL 2473078 (D. Colo. June 22, 2011) .................... 8

*Liberty Ins. Corp.* v. *PGT Trucking, Inc.*,
  No. 2:11-cv-151, 2011 WL 2552531 (W.D. Pa. June 27, 2011) ......................... 14, 15

*McCorkle v. Great Atlantic Insurance Co.*,
   1981 OK 128, 637 P.2d 583 ............................................................................. 4

*McCoy v. Okla. Farm Bureau Mut. Ins. Co.*,
   1992 OK 43, 841 P.2d 568 ......................................................................... 6, 20

*Nat'l Fire Ins. Co. v. McCoy*,
   1951 OK 379, 239 P.2d 428 ........................................................................... 19

*Navarez v. State Farm Mut. Auto. Ins. Co.*,
   1999 OK CIV APP 92, 989 P.2d 1051 ............................................................ 4

*Oulds v. Principal Mut. Life Ins. Co.*,
   6 F.3d 1431 (10th Cir. 1993) .......................................................................... 6

*Palmisano* v. *State Farm Fire & Casualty Co.*,
   Civ-No. 12-886, 2012 WL 359276 (W.D. Pa. Aug. 20, 2012) ...................... 15

*Propitious, LLC v. Badger Mut. Ins. Co.*,
   No. 18 CV 1405, 2019 WL 480008 (N.D. Ill. Feb. 7, 2019) ......................... 14

*PWB Dev., L.L.C. v. Acadia Ins. Co.*,
   No. CIV-17-387-R, 2018 WL 4088793 (W.D. Okla. Aug. 27, 2018) ............ 20

*Ridpath v. Progressive Adv. Auto. Ins. Co.*,
   No. CV 19-5871, 2020 WL 1250395 (E.D. Pa. Mar. 16, 2020) .................... 14

*Rivera v. Hartford Ins. Co. of the Midwest*,
   No. CIV-14-1082-HE, 2014 WL 7335320 (W.D. Okla. Dec. 19, 2014) ....... 11

*Riverbend Land, LLC v. First Am. Title Ins. Co.*,
   No. CIV-18-0247-F, 2018 WL 4905353 (W.D. Okla. Oct. 9, 2018) .............. 2

*Scheffler* v. *Am. Republic Ins. Co.*,
   No. 11-CV-760-CVE-TLW, 2012 WL 602187 (N.D. Okla. Feb. 23, 2012)............. 9, 13

*Silver v. Slusher*,
   1988 OK 53, 770 P.2d 878 ............................................................................. 20

*Skinner v. John Deere Ins. Co.*,
   2000 OK 18, 998 P.2d 1219 ............................................................................ 4

*Slover v. Equitable Variable Life Ins. Co.*,
  443 F. Supp. 2d 1272 (N.D. Okla. 2006) ........................................................ 19

*Smith v. Allstate Vehicle and Property Insurance Co.*,
  2014 WL 1382488 (W. D. Okla. 2014) .................................................... 19, 20

*Stephenson* v. *FEI*,
  No. 2:09-CV-905-CW-SA, 2010 WL 2024704 (D. Utah Mar. 26, 2010), *report and recommendation adopted by,* 2010 WL 1978689 (D. Utah May 17, 2010) ................... 9

*Vickers v. Progressive N. Ins. Co.*,
  353 F. Supp. 3d 1153 (N.D. Okla. 2018) ........................................................ 19

*Wanat* v. *State Farm Mut., Auto Ins. Co.,*
  No. 4: 13-CV-1366, 2014 WL 220811 (M.D. Pa. Jan 21, 2014) .................................. 14

*Willis v. Midland Risk Ins. Co.*,
  42 F.3d 607 (10th Cir. 1994) ................................................................. 6

*Wise v. CSAA Gen. Ins. Co.*,
  2016 WL 1732746 n.1 (N.D. Okla. 2016) ........................................................ 3

Wittekamp v. Gulf & Western, Inc.,
  991 F.2d 1137 (3d Cir. 1993) ................................................................ 21

## Rules

Fed. R. Civ. P. 12(b)(6) ................................................................. 1, 21

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Provident Life and Accident Insurance Company ("Provident") moves the Court for an Order dismissing Plaintiff's asserted causes of action in his Complaint. [Dkt. No. 1] for breach of contract, breach of the duty of good faith and fair dealing and agent misrepresentation.   Based on the plain language of the policy, all three claims fail.   As a result, the Court should dismiss Plaintiff's Complaint in its entirety.

## INTRODUCTION

Plaintiff filed this action on February 28, 2020, claiming breach of contract, bad faith, and misrepresentation/fraud in the inducement.   Plaintiff had obtained an individual policy from Provident in 1987 (the "Policy").   Complaint, ¶ 4.   Plaintiff maintained the policy, increasing coverage twice in 2001.   *Id.*   For over thirty years, Plaintiff worked both as an emergency room ("E.R." physician and a clinical physician (his "day position.").   *Id.,* ¶ 7.   In 2019, Plaintiff had a heart attack.   *Id.,* at ¶ 5.   He contends that this heart attack was debilitating and specifically that the stress of E.R. work prevents him from such a practice in the future.   *Id.*   However, Plaintiff continued to work as a clinical physician.   *Id.,* ¶ 7.

Notwithstanding Plaintiff's contentions, the Policy plainly defines "occupation" as "occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled."   Thus, under the Policy, if one has more than a single occupation at the time of disability (*i.e.*, E.R. physician and clinical physician), then one is disabled under the Policy only if disabled from both.   The Policy further clarifies that only if the occupation is "limited to a recognized specialty," then that specialty is deemed to be

one's occupation.   Plaintiff worked both as an E.R. physician and a clinical doctor at the time of his disability, and had for over thirty years (Complaint, ¶ 7).   Both, under the terms of the policy, are his occupation.   His occupation was not "limited" to a specialty, as he plainly worked as both an E.R. physician **and** a clinical doctor.   Given the plain language of the Policy, Plaintiff's claims fail in their entirety.

## ARGUMENTS AND AUTHORITIES

**I.      There is No Viable Breach of Contract Claim Asserted Here.**

There is little dispute regarding the rules of interpretation for insurance policies. "In Oklahoma, interpretation of an insurance contract is a matter of law."   *Riverbend Land, LLC v. First Am. Title Ins. Co.*, No. CIV-18-0247-F, 2018 WL 4905353, at *3 (W.D. Okla. Oct. 9, 2018), *quoting Boggs v. Great Northern Ins. Co.,* 659 F.Supp.2d 1199, 1204 (N.D. Okla. 2009).

> Parties may contract for risk coverage and will be bound by policy terms. When policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning; and the contract is enforced carrying out the parties' intentions.   The policy is read as a whole, giving the words and terms their ordinary meaning, enforcing each part thereof.   This Court may not rewrite an insurance contract to benefit either party...We will not impose coverage where the policy language clearly does not intend that a particular individual or risk should be covered.

*BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 2005 OK 65, ¶ 6, 148 P.3d 832 (footnotes omitted); *see also JP Energy Mktg., LLC v. Commerce & Indus. Ins. Co.*, 2018 OK CIV APP 14, ¶ 14, 412 P.3d 121, 125 (quoting same).

Plaintiff's Petition is predicated on a breach that simply cannot exist.   Plaintiff's policy, attached as Exhibit 1,[1] explicitly provides:

> Your occupation means the occupation (***or occupations, if more than one***) ***in which you are regularly engaged at the time you become disabled***.   If your occupation is ***limited*** to a recognized specialty within the scope of your degree or license, we will deem your specialty your occupation.

(Emphasis added).   To be clear, "occupation" specifically includes "occupations, if more than one" in which the insured is "regularly engaged at the time" of the disability.   If, and only if, the insured's "occupation is limited" to a specialty, will the specialty be deemed the insured's occupation.   This language is as clear as it can be.

Plaintiff plainly admits and alleges his occupation was both an E.R. physician and as a clinic physician.   *See, e.g.,* Complaint, ¶¶ 7, 13.   He only alleges he is disabled from his work as an E.R. Physician.   *Id.,* ¶ 5.   The entire basis of his claim is that he should receive benefits related to his inability work in the emergency room based on the Policy, while he continues to work as a clinical physician.   Plaintiff specifically contends that the "policy was expressly written to cover his duties as an emergency room physician," and that he is "totally disabled from his specialty as an E.R. physician."   *Id.,* ¶¶ 5-6.   He complains that it was never disclosed that his claim would be handled differently if he was "working in multiple occupations."   *Id.,* ¶ 13.

---

[1] The Court may consider the policy at issue without converting the Motion to Dismiss to one for summary judgment.   *See, e.g., Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002); *Coonce v. Auto. Club of Am.*, No. CIV-17-279-RAW, 2017 WL 6347165, at *1 (E.D. Okla. Dec. 12, 2017), *aff'd sub nom*; *Coonce v. CSAA Fire & Cas. Ins. Co.*, 748 F. App'x 782 (10th Cir. 2018); *Wise v. CSAA Gen. Ins. Co.*, 2016 WL 1732746 n.1 (N.D. Okla. 2016) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997)).

Applying the Policy language to the allegations in Plaintiff's Complaint, Plaintiff's "occupation" (*i.e.*, "occupations, if more than one") was both "E.R. physician" and "clinical physician" at the time of his alleged disability. His "occupation" was not "limited" to a single specialty, as he worked both as an E.R. physician and a clinical physician. There is, and could not be, any allegation that he is also disabled from his occupation as a clinic physician. Plaintiff simply is not disabled from his "occupations," and, as a result, there is, and can be, no breach of contract here.

## II.   Plaintiff's Bad Faith Claim Fails as There is No Breach.

The Oklahoma Supreme Court first recognized the tort of bad faith in *Christian v. American Home Assur. Co.*, 1977 OK 141, 577 P.2d 899. "[A]n insurer has an implied duty to deal fairly and act in good faith with its insured and . . . the violation of this duty gives rise to an action in tort." *Id.* at 904. The duty of good faith does not require an insurer to pay every claim made by an insured, and there may be valid disagreements between the parties. *Id.* at 905. *See also Badillo v. Mid Century Ins. Co.*, 2005 OK 48 ¶ 28, 121 P.3d 1080, 1093 ("[t]he essence of an action for breach of the duty of good faith and fair dealing 'is the insurer's unreasonable, bad-faith conduct'"); *Skinner v. John Deere Ins. Co.*, 2000 OK 18, ¶ 17, 998 P.2d 1219, 1223 (recognizing that insurer "acted reasonably as a matter of law and, thus, summary judgment was proper"); *Navarez v. State Farm Mut. Auto. Ins. Co.*, 1999 OK CIV APP 92 ¶13, 989 P.2d 1051, 1053 (citing *McCorkle v. Great Atlantic Insurance Co.*, 1981 OK 128, 637 P.2d 583) ("The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions").

> The elements of a bad faith claim against an insurer for delay in payment of first-party coverage are: (1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury. ***The absence of any one of these elements defeats a bad faith claim.***

*Ball v. Wilshire Ins. Co.*, 2009 OK 38, ¶ 21, 221 P.3d 717, 724 (emphasis added); *see also 4100 Perimeter Ltd. P'ship v. Hartford Cas. Ins. Co.*, No. CIV-14-0641-HE, 2015 WL 5008410, at *3 (W.D. Okla. Aug. 20, 2015), *citing Badillo,* 121 P.3d at 1093.

*Badillo,* 121 P.3d at 1094, also clarified that "bad faith" requires a showing of "more than simple negligence." This point was reiterated by the Oklahoma Supreme Court when it held that "a party prosecuting a claim of bad faith carries the burden of proof and must plead all of the elements of an intentional tort." *Garnett v. Government Employees Ins. Co.*, 2008 OK 43, 186 P.3d 935, 944. Thus, to prove a *prima facie* case of bad faith against Provident, Plaintiff must establish more than just a mistake or negligence.

As stated in *City National Bank and Trust Co. v. Jackson National Life Insurance,* 1990 OK CIV APP 89, ¶ 18, 804 P.2d 463, 468: "We…hold that before the issue of insurer's alleged bad faith may be submitted to the jury, the Trial Court must first determine, *under the facts of the particular case* and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious." (Emphasis added). "[T]o establish such a claim, the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for [its determination]." *Houchin v. Hartford Life Ins. Co.*, No. CIV-14-522-D, 2016 WL 502075, at *6 (W.D. Okla. Feb. 8, 2016), citing *Oulds v. Principal Mut. Life Ins. Co.*, 6

F.3d 1431, 1436 (10th Cir. 1993) and *McCoy v. Okla. Farm Bureau Mut. Ins. Co.*, 1992 OK 43, 841 P.2d 568, 572.

Thus, in evaluating an insurer's conduct in light of an allegation of bad faith, the Court may consider both the reasonableness of the conduct of the insurer in light of existing Oklahoma law at the time of the conduct, and the reasonableness of the insurer's conduct in light of the facts that are known or knowable to the insurer. *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612-13 (10th Cir. 1994) (applying Oklahoma law). Said differently, the action of the company "must be assessed in light of all of the facts known and knowable concerning the claim at the time the plaintiff requested the company to perform its contractual obligation." *Buzzard v. McDanel*, 1987 OK 28, 736 P.2d 157, 159.

Determining whether an insurer committed bad faith concerns an examination of the conduct of the insurer with respect to the particular insurance claim at issue over the time period when the insurer was requested to perform its contractual obligation to the insured. That is because the decisive question is whether the insurer "had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy." *Buzzard,* 1987 OK 28, ¶ 10, 736 P.2d at 159.

> "A central issue in any analysis to determine whether breach has occurred is gauging whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are claimed violative of the duty of good faith and fair dealing." *Id.* at 1093-94. "Where an insurer has demonstrated a reasonable basis for its actions, bad faith cannot exist as a matter of law." *Beers v. Hillory*, 241 P.3d 285, 293 (Okla. Civ. App. 2010); *see also Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 170-71 (Okla. 2000) ("[B]ad faith cannot exist if an insurer's conduct was reasonable under the circumstances.").

*Inks v. USAA Gen. Indem. Co.*, No. 17-CV-00210-GKF-FHM, 2018 WL 3589116, at \*6 (N.D. Okla. June 27, 2018).

Given the Policy's plain language, and Provident's correct application of those terms (*supra* Section I), Plaintiff's bad faith claim fails as a matter of law.

## III.   Plaintiff's Bad Faith Claim also Fails under the *Twombly-Iqbal* Standard.

Plaintiff's bad faith claim presents precisely the sort of conclusory, "laundry list" bad faith allegations that numerous courts – including the Western and Northern Districts of Oklahoma – have dismissed as not containing sufficient facts under *Twombly* and *Iqbal*. An examination of Plaintiff's bad faith allegations reveals they are virtually identical (if not exactly the same) as other lawsuits Plaintiff's counsel have filed against other insurance companies.   Taking Plaintiff's bad faith allegations and the others filed by his counsel as true would suggest that *every* insurance company doing business in Oklahoma has acted in virtually *the* same way to cause virtually the same damage resulting in virtually the same bad faith cause of action.   This is the exact opposite of pleading "sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face.'*" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 570 (2007).   Provident respectfully requests that this Court dismiss Plaintiff's bad faith claim as Plaintiff's generic allegations cannot satisfy the requirements of *Twombly* and *Iqbal.*

**A.    The Pleading Requirements under the Federal Rules and Applicable Cases.**

Under Rule 8, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).   In other words, "[a] plaintiff must 'nudge [his] claims across the line from conceivable to plausible.'"   *Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly,* 550 U.S. at 570); *see also Bixler v. Foster,* 596 F.3d 751, 756 (10th Cir. 2010) (similar). The *Twombly* "pleading requirement serves two purposes: to ensure that a defendant is placed on notice of [its] alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim."   *Kan. Penn Gaming, LLC* v. *Collins,* 656 F.3d 1210, 1215 (10th Cir. 2010) (citation and quotation marks omitted).

To satisfy the plausibility standard, a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully."   *Larson v. Agos,* No. 11-cv-986-CMA-CBS, 2011 WL 2473078, at *2 (D. Colo. June 22, 2011) (internal quotation marks and citation omitted).   In so doing, the plaintiff may not simply rely on legal conclusions, which the Supreme Court has instructed shall not be "'accept[ed] as true.'"   *Id.* (quoting *Iqbal,* 556 U.S. at 678); *see also Allen* v. *Zavaras,* 430 F. App'x 709, 712 (10th Cir. 2011) ("[C]onclusory allegations ... are not sufficient."). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion [ s]' devoid of 'further factual

8

enhancement.'"   *Iqbal,* 556 U.S. at 678 (second alteration in original) (quoting *Twombly,* 550 U.S. at 555, 557). Rather, the complaint must contain sufficient factual heft "to allow the court 'to draw the reasonable inference' that a defendant has acted unlawfully." *Stephenson* v. *FEI,* No. 2:09-CV-905-CW-SA, 2010 WL 2024704, at *3 (D. Utah Mar. 26, 2010) (citation omitted), *report and recommendation adopted by,* 2010 WL 1978689 (D. Utah May 17, 2010).  The "court need not accept as true those allegations that are conclusory in nature." *Scheffler* v. *Am. Republic Ins. Co.,* No. 11-CV-760-CVE-TLW, 2012 WL 602187, at *1 (N.D. Okla. Feb. 23, 2012) (citing *Erikson* v. *Pawnee Cnty. Ed of Cnty. Comm'rs,* 263 F.3d 1151, 1154-55 (10th Cir. 2001).

**B.**      **Plaintiff fails to plead a plausible bad faith claim under *Twombly.***

Plaintiff's bad faith claim is conclusory and without any factual support. Plaintiff alleges that he had a Policy, the Policy should cover his work as an E.R. physician, that he worked as an E.R. physician, and Provident breached the policy by failing to pay benefits. *See Complaint,* ¶¶ 6-9.   Plaintiff then claims Provident breached the duty of good faith and fair dealing in fifteen different ways:

a.  failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendant knew that they were entitled to those benefits;

b.  failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.  withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

d.  refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

    e.  refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

    f.  refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

    g.  failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under this policy to include Plaintiff's claims;

    h.  not attempting in good faith to effectuate a prompt fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

    i.  forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

    j.  failing to properly evaluate any investigation that was performed;

    k.  improperly delaying the payment of policy benefits for months after benefits were due such that Dr. Morgan was deprived of the disability income coverage for which the insurance was in place;

    l.  failing and refusing to reform the policy in order to honor the true intent expressed in the policy to cover his specialty duties as an emergency room physician;

    m.  failing and refusing to pay the proper waiver of premium benefit and improper delay in addressing and honoring this benefit in an attempt to conceal and avoid payment of the premium waiver altogether;

    n.  when confronted with the coverage for the total disability benefit, changing its excuse for denial, to deny the disability altogether and continue in its search for an excuse or denial rather than honor the coverage it knew had been promised to this insured; and

    o.  avoiding and concealing the insurance company's own knowledge of how the specialty occupation coverage is supposed to be provided by simply switching to a different coverage issue and claiming that Dr. Morgan was not disabled at all.

*Complaint*, ¶ 10.   Plaintiff alleges such conduct was "all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to the Defendant." *Id*.

10

Plaintiff offers nothing but these conclusory allegations, based on the same very limited facts alleged in the brief breach of contract claim.   None of the factual allegations meet the *Iqbal-Twombly* requirements.[2]

In *Rivera v. Hartford Ins. Co. of the Midwest*, No. CIV-14-1082-HE, 2014 WL 7335320, at *4 (W.D. Okla. Dec. 19, 2014), Judge Heaton wrote:

> Plaintiffs allege Hartford breached its duty to act in good faith and deal fairly with its insured by "[f]ailing to pay the full and fair amount for the property damage sustained" but do not identify the amount that ought to have been paid, the basis for their calculations, or the amount that was actually paid. They also claim defendant "[w]rongfully, intentionally and repeatedly fail[ed] to communicate all coverages and benefits applicable to Plaintiffs' claim" but do not suggest what communications occurred regarding coverages and benefits. Plaintiffs also allege that defendant's investigation was "outcome oriented" rather than "fair and objective," but offer no specifics other than their disagreement with the policy benefits they received. Doc. No 1–1, p. 5, ¶ 26.
>
> With respect to their bad faith claim, as well as with all their claims, plaintiffs have offered little "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555. As the Supreme Court stated in *Twombly,* that simply will not do. *Id.* Plaintiffs' bad faith claim alleged in their second cause of action will be dismissed.

---

[2]  In addition to the issues with the general boilerplate approach, it is worth noting the indefinite language of the allegations themselves.   For instance, subparagraph (d) provides:   "refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law."   Here, Plaintiff alleges that in "some" instances Provident acted contrary to express policy provisions "and/or" Oklahoma law.   Plaintiff is not alleging what instances and whether such instances would violate policy provisions or Oklahoma law or both.   Subparagraph (j) provides:   "failing to properly evaluate any investigation that was performed."   Plaintiff is not stating that an investigation did or did not occur but only making a conditional allegation that if the investigation occurred, then it was not properly evaluated.   Such indefinite allegations cannot meet the *Twombly* requirements.

Similarly, in *Bunnell v. American Bankers Insurance Co. of Florida,* No. 12-cv-372-R, 2013 WL 9554564 (W.D. Okla. July 17, 2013)*,* Judge Russell recognized:

> Plaintiffs are in the unique position to know factual elements of their claim. Despite this position, Plaintiffs do not plead any actual facts in support of their conclusory allegations. Plaintiffs do not allege the value assigned to their claim by Defendant's adjusters, the actual extent of any property damage to the insured property, or the extent of repairs either anticipated or made to the property…Rather, Plaintiffs allege a series of conclusory statements…Accordingly, the Court finds that Plaintiffs have failed to set forth sufficient facts in support of their claim so as to comport with the current state of the law regarding the pleading of claims.

*Id* at *2.   *See also Daily v. USAA Cas. Ins. Co.*, No. CIV-14-0550-HE, 2014 WL 12729172, at *1 (W.D. Okla. Nov. 19, 2014) (granting motion to dismiss where plaintiff failed to allege specifics regarding the bad faith claim).

The Northern District of Oklahoma has similarly rejected bad faith claims like Plaintiff's that lack sufficient factual matter.   In *Hightower v. USAA Cas. Ins. Co.*, No. 16-CV-274-JED-FHM, 2017 WL 1347689 (N.D. Okla. Apr. 7, 2017), the Court determined that the plaintiff did not allege any facts other than the failure to pay the full amount – everything else was conclusory.   "Under *Twombly and Iqbal*, these allegations are insufficient to state a plausible claim for relief under the standard."   *Id.* at 3.   In *Erbe v. AAA Fire & Cas. Ins. Co.*, No. 16-CV-596-TCK-PJC, 2017 WL 489417, at *2 (N.D. Okla. Feb. 6, 2017), the Court reached the same conclusion:   "CSAA argues Plaintiff failed to allege any non-conclusory facts in support of his bad-faith claim. The Court agrees. Plaintiff's Complaint contains only conclusory allegations and does not allege any specific facts supporting a finding of unreasonable conduct by CSAA."

Both *Hightower* and *Erbe* relied on *Scheffler*, a prior case from the Northern District.   There the Court dismissed a bad faith claim when the plaintiff included "general assertions of bad faith, without any details of events leading up to the filing of the complaint."   *Id.* at *3.   The plaintiff alleged that the defendant had not paid life insurance proceeds and had failed to provide a reasonable explanation for its delay or refusal.   *Id* at *1.   The plaintiff alleged that the insurance company acted in bad faith by failing to promptly investigate the plaintiff's claim, delaying payment to the plaintiff, intentionally misreading or misconstruing the insurance policy, and imposing burdensome documentation demands not required by the facts of the claim or the policy. *Id* at *3. In rejecting the plaintiff's argument "that she cannot more specifically allege defendant's bad faith conduct because 'only the Defendant knows how it handled Plaintiff's claim,'" the court recognized that the "plaintiff should at least have knowledge of certain details that she could properly plead to satisfy the plausibility requirement."   *Id.*   Because the "[p]laintiff's bad faith claim is based solely on the fact that she was not paid the insurance proceeds under the policy ... her bad faith claim is not plausible under the *Twombly/Iqbal* standard."   *Id.* (citing *Khalik,* 671 F.3d at 1194).   *See also City of Orem v. Evanston Ins. Co.,* 12-CV-425-JNP-PMW, Dkt. No. 90 (D. Utah Oct. 27, 2017) (citing *Scheffler* in granting motion to dismiss for failure to allege sufficient facts to plausibly allege breach of covenant of good faith and fair dealing).

The Western and Northern Districts of Oklahoma are not alone in dismissing bad faith claims like those offered by Plaintiff.   Numerous federal district courts across the country have rejected "'conclusory' or 'bare-bones allegations that an insurance company

acted in bad faith by listing a number of generalized accusations without sufficient factual support." *Wanat* v. *State Farm Mut., Auto Ins. Co.,* No. 4: 13-CV-1366, 2014 WL 220811, at *4 (M.D. Pa. Jan 21, 2014) (collecting cases); *see also Ridpath v. Progressive Adv. Auto. Ins. Co.,* No. CV 19-5871, 2020 WL 1250395, at *2–3 (E.D. Pa. Mar. 16, 2020) ("Courts in this district and circuit routinely dismiss bad faith claims which fail to allege facts of the insurer's alleged wrongdoing with specificity.   Because Ms. Ridpath's bad faith claim rests entirely on conclusory and bare-bones allegations, it does not survive a Rule 12(b)(6) challenge."); *Krantz v. Peerless Indem. Ins. Co.*, No. 18-3450, 2019 WL 1123150, at *4 (E.D. Pa. Mar. 12, 2019) (dismissing bad faith claim where plaintiff pleaded only "conclusory allegations" that the insurer failed to make a good faith offer to settle the claim, promptly tender payment of the claim, and reasonably investigate the claim); *Propitious, LLC v. Badger Mut. Ins. Co.*, No. 18 CV 1405, 2019 WL 480008, at *6 (N.D. Ill. Feb. 7, 2019) (granting dismissal where plaintiff failed to plead sufficient facts to show wrongfully and unreasonable refusal to comply with contractual obligations); *Felsenthal* v. *Travelers Prop. Cas. Ins. Co.,* No. 12 C 7402, 2013 WL 1707931, at *4 (N.D. Ill. Apr. 19, 2013) (dismissing bad faith claim under Illinois law when plaintiff "provide[d] almost no factual support for his claim" and failed to "allege some facts in support of his allegations that the defendant acted unreasonably or vexatiously in denying the claim"); *Liberty Ins. Corp.* v. *PGT Trucking, Inc.,* No. 2:11-cv-151, 2011 WL 2552531, at *4 (W.D. Pa. June 27, 2011) (dismissing a Pennsylvania bad faith claim when the pleading included "a laundry list of twenty-nine (29) generic, generalized accusations" without "any facts that describe who, what, where, when, and how the alleged bad faith conduct occurred").

At least one federal district court found that a bad faith claim failed to comply with *Twombly* despite far more factual detail than what Plaintiff has here.   In *Palmisano* v. *State Farm Fire & Casualty Co.,* the Court held these "generalized accusations [of bad faith] are insufficient without supporting facts":   State Farm acted in bad faith (a) "by failing to fairly and properly investigate the claim" and "by denying its clearly-established coverage obligations under the Policy;" (b) "by repeatedly asserting bases for denying or attempting to deny coverage that have no basis in fact or law and by ignoring information in its possession refuting the denial of coverage;" (c) "by engaging in improper, unfair, and unlawful claims handling and insurance practices;" (d) "by violating the legal requirements for proper insurance practices;" and (e) "by requiring the plaintiff to expend funds for counsel fees to obtain and/or retain coverage for which the plaintiff has already paid." Civ. No. 12-886, 2012 WL 3595276, at *12-13 (W.D. Pa. Aug. 20, 2012).   In contrast to this case, the plaintiffs in *Palmisano* actually pleaded some facts underlying their claim, including detailed factual allegations about the damage, the policy, the inspections, the engineering report, and the denial.   *See* 2012 WL 3595276, at *1-6.   It was still found "conclusory" and "insufficient."   *Id.* at *13.

Plaintiff's bad faith claim here is clearly insufficient under the *Twombly* standard. Plaintiff's bad faith claim – like these listed above – is a "laundry list of ... generic, generalized accusations." *Liberty Ins. Corp.,* 2011 WL 2552531, at *4.   Because Plaintiff has failed to offer any factual allegations in support, his bad faith claim should be dismissed.

**C.     The Infirmities in Plaintiff's Bad Faith Allegations are Evidenced by the Fact They are Virtually Identical to Those Used in Numerous Other Cases.**

Plaintiff's bad faith allegations are nothing more than boilerplate language used repeatedly in insured-insurer cases, further supporting dismissal under *Twombly.* Attached, for exemplification, are ***twenty (20) petitions/complaints*** filed by Plaintiff's counsel's firm containing identical (or at least virtually identical) "a" - "j" bad faith allegations. *See* Exhibit 2.   There are many others.   There is no pretext that such allegations are intended to advance sufficient factual allegations that could support a plausible claim unique to Plaintiff here.   Indeed, Plaintiff's counsel has affirmed as much in a recent court proceeding when confronted with such duplicative pleadings from cases filed a decade and a half apart.   There, Plaintiff's counsel, referring to himself, stated:

> ***The fact that their lawyer still uses the same form petition,*** jurors don't understand that ***petitions are form***. All of that legalese that's in there are standard breaches of obligations that are in Mark's pleading…the similarity is…[Plaintiff] came back to the same lawyer.   That's what's similar.

*See* Exhibit 3.   *Godfrey v. CSAA Fire & Casualty Insurance Company,* CIV-19-329-JD, U.S. District Court, Western District of Oklahoma, Transcript of Motions Hearing, Feb. 27, 2020, 12:19 - 13:1 (emphasis added).

Courts recognize that generic and form pleadings do not meet the *Twombly* pleading standard.   *See Frost v. Aurora Loan Servs., LLC,* No. 10-cv-2476-WHA, 2011 WL 3471024, at *1-2 (N.D. Cal. Aug. 5, 2011) (dismissing "a form complaint, containing entire blocks of boilerplate, nearly identical to a complaint in another case" and "devoid of any factual allegations"); *Givens v. Smith,* No. 5:12-CV-145, 2014 WL 1393181, at *5 n. 10

(N.D.W.V. Apr. 9, 2014) ("This clear example of 'cut and paste' pleading ... bolster[s] the Court's finding ... that Plaintiff utterly fails to state a claim ...."); *Brant v. Shea Mortg, Inc.,* No. 2: 10-CV-829-FKD-RJJ, 2011 WL 1300360, at *1 (D. Nev. Mar. 30, 2011) ("Even a cursory examination ... reveals that Plaintiffs have filed a cut and paste, boilerplate, form complaint which is almost completely devoid of facts, and is identical – except for party names, dates, and property address – to other Complaints ... filed with this Court."); *Brown v. U.S. Bank Nat'l Ass'n,* Civ. No. 3:14-CV-89-L, 2014 WL 3764887, at *1 n.2 (N.D. Tex. July 31, 2014) ("The court notes that Plaintiffs' claims in this case, and the theories that form the basis for those claims, are virtually identical to those filed by Plaintiffs' counsel in numerous other cases ... Accordingly, Plaintiffs' counsel ... is directed to tailor the facts and legal theories to the particular case in which she provides representation.").

This Court should conclude that Plaintiff's generic and form bad faith claim does not meet the *Twombly* requirement, as Plaintiff's claim merely changes the names of the parties and then utilizes generic language from other bad faith pleadings filed by his counsel.  Because Plaintiff has completely failed to tailor the facts and legal theories to this particular lawsuit against Provident, his claim should be dismissed.

## IV.   Plaintiff does not State a Viable Claim for Misrepresentation based on the Agent's Purported Statements.

As a preliminary matter, Plaintiff's contentions regarding the purported statements made by Earl Chambers are simply not misstatements; thus, there can be no claim of fraud or misrepresentation.   Plaintiff admits that he met Earl Chambers while he was completing his residency.  *Complaint*, ¶ 13.   The substance of Plaintiff's claim is that Mr. Chambers

represented that "this insurance policy [was] better than most physician disability coverage because it provided coverage specifically for your duties in your specialty, if you worked in a recognized specialty." *Id.*  Plaintiff further contends that Mr. Chambers stated "if Dr. Morgan was working in a recognized specialty, then the Defendant would view that specialty as his occupation and he would receive the fully disability benefits of the policy, even if he were able to continue working in some other duties as a physician." *Id.* Similarly, Plaintiff claims that "Mr. Chambers had specifically told Dr. Morgan that he would be considered totally disabled for payment of the full policy benefit, if he became unable to perform the duties of his recognized specialty, even if he was actually continuing to work as a physician."  *Id.*[3]

Such statements, if they were, in fact, made, are wholly consistent with the Policy language which, as discussed above, provides: "If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty your occupation."   In short, assuming Plaintiff's version of the facts are correct, Mr. Chambers was simply providing his understanding of what the Policy was intended to cover and how it would work given Dr. Chamber's E.R. specialty.   At the time of Plaintiff's interactions with Mr. Chambers, if he was limiting his work to his specialty (*i.e.,*

---

[3]   Plaintiff states that "In reliance on these representations [of Earl Chambers, the agent when Plaintiff obtained the policy], Dr. Morgan did increase his benefits in May of 2001 and October of 2001."   While not a basis for a motion to dismiss, as it is outside the pleadings, a review of the claim file reveals that Plaintiff neglected to allege that he had expressly named and utilized a ***different*** "agent for all matters pertaining to my Provident Disability Income Policy" prior to increasing his benefit coverage twice in 2001.   Thus, thought Plaintiff had changed agents, he alleges he relied on the representations of Mr. Chambers for 14 years – but not his then-current agent – when increasing his coverage.

E.R. physician – he was still in residency to achieve that specialty), all of the alleged statements of Mr. Chambers were wholly accurate.   Plaintiff does not allege that Mr. Chambers told him that if he practiced his specialty and another for 30 years that being disabled from one under the Policy would entitle him to benefits.

As discussed in *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1282 (N.D. Okla. 2006):   "To be actionable, a misrepresentation "must be regarding existing facts and not ... future events."   *Id., citing Hall v. Edge,* 1989 OK 143, 782 P.2d 122, 128 n.4.   The fact that Plaintiff's "occupations" as defined by the Policy subsequently included both E.R. and clinical work, and that he was no longer "limited" to working in his specialty were not pertinent or even anticipatory facts at the time Plaintiff purchased the Policy.

Moreover, even if Plaintiff could articulate a misstatement by Mr. Chambers, he still cannot prevail on a misrepresentation claim as a matter of law.   It is undisputed that, under Oklahoma law, parties are deemed to have read their policies and are charged with knowledge of the provisions contained within their policies.   *Vickers v. Progressive N. Ins. Co.*, 353 F. Supp. 3d 1153, 1164 (N.D. Okla. 2018), *citing Nat'l Fire Ins. Co. v. McCoy*, 1951 OK 379, 239 P.2d 428, 430 (an insured is chargeable with the knowledge of the terms and legal effect of his insurance policy.).   Thus, in *Smith v. Allstate Vehicle and Property Insurance Co.,* 2014 WL 1382488 (W. D. Okla. 2014), Judge Heaton stated that under Oklahoma law, "[i]t is the duty of the insured to read and know the contents of the policy before he accepts it, and where he fails or neglects to do so he is estopped from denying knowledge of its terms and conditions, unless he alleges and proves that he was induced

19

not to read the policy by trick or fraud of the other party."   *Id.* at *3, *McCoy*, 239 P.2d at

430.   Moreover, "[a]n action for fraud may not be predicated on false statements when the

allegedly defrauded party could have ascertained the truth with reasonable diligence."

*Bankers Trust Co. v. Brown,* 2004 OK CIV APP 1, 107 P.3d 609, 614, *quoting Silver v.*

*Slusher,* 1988 OK 53, 770 P.2d 878, 881.   Thus, it would "strain[] credulity that Plaintiff

would expect a certain type of coverage without even requesting the policy to read its

terms." *PWB Dev., L.L.C. v. Acadia Ins. Co.*, No. CIV-17-387-R, 2018 WL 4088793, at *7

(W.D. Okla. Aug. 27, 2018).

      Here, Plaintiff was given an opportunity to review the Policy and determine it met

his needs:

> We want you to be fully satisfied with your policy.   If you are not satisfied
> for any reason, you may return the policy to us, or to the agent through whom
> it was purchased, within 10 days of its receipt.   We will refund any
> premiums you have paid within 10 days after we receive your notice of
> cancellation and the policy."

Policy, at PLA-POL-000011.   The Policy also specifically provides that there can be no

reliance on the agent's statements:   "No change in this policy will be effective until

approved by one of our officers.   This approval must be noted on or attached to this policy.

***No agent may change this policy or waive any of its provisions***." Policy at PLA-POL-

000028 (emphasis added).

      Plaintiff simply cannot articulate that it was reasonable to rely on any purported

misstatement of Mr. Chambers given the opportunity and duty to review the policy.   Two

additional factors also play into such a determination.   First, Plaintiff had approximately

33 years to read the Policy after the purported misrepresentations.   This is not a case where

a plaintiff simply did not have the opportunity to review and thus relied on what the representative stated; rather, he had decades to do so.   As acknowledged by Plaintiff, he chose to increase the amount of coverage on two occasions; he makes no suggestion that he was unable to review the terms of the Policy prior to making such determinations. Second, Plaintiff was a sophisticated insured – both an E.R. doctor and a clinical physician. The sophistication of the insured is relevant to a determination of the reasonableness of the reliance of the insured on alleged statements of the agent.   *Fisher v. Aetna Life Ins. & Annuity Co.*, 39 F. Supp. 2d 508 (M.D. Pa. 1998), aff'd. 176 F.3d 472 (3d Cir. 1999) (considering the "respective intelligence and experience of the parties" to determine real estate broker with master's degree could not justifiably rely on purported misrepresentations), *citing Wittekamp v. Gulf & Western, Inc.,* 991 F.2d 1137, 1144 (3d Cir. 1993).

## CONCLUSION

Plaintiff simply cannot point to any term within the Policy which Provident has breached.   His bad faith allegations are nothing more than a recycled version of allegations that are used in numerous other proceedings, with no factual enhancements as required by *Twombly.*   The purported misrepresentations were made some 33 years ago, from an agent to a medical professional, who had decades to review the Policy and inform himself of its terms.

For the reasons set forth in this Motion and Brief in Support, Provident respectfully requests this Court dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).

21

Respectfully Submitted,


*s/Matthew C. Kane*
PHILLIP G. WHALEY, OBA No. 13371
MATTHEW C. KANE, OBA No. 19502
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK   73104
Telephone:    (405) 239-6040
Facsimile:      (405) 239-6766
pwhaley@ryanwhaley.com
mkane@ryanwhaley.com

ATTORNEYS FOR DEFENDANT
PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY


## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of April 2020, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to the following:

Steven S. Mansell
Mark A. Engel
Kenneth G. Cole


*s/Matthew C. Kane*
MATTHEW C. KANE