# Exhibit 2

# Exhibit 2-1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELIZABETH E. ADAMS,<br><br>                                Plaintiff,<br><br>v.<br><br>CENTRAL STATES HEALTH & LIFE<br>CO. OF OMAHA, a Mutual Legal<br>Reserve Company,<br>                         Defendant. | Case No: CIV-20-68-F<br><br><br><br>**JURY TRIAL DEMANDED**<br>**ATTORNEY LIEN CLAIMED** |

## COMPLAINT

COMES NOW the Plaintiff, Elizabeth E. Adams, and for her causes of action against Defendant Central States Health & Life Co. of Omaha, a Mutual Legal Reserve Company, alleges and states as follows:

1.    Elizabeth E. Adams is a resident and citizen of Oklahoma City, Oklahoma County, State of Oklahoma.

2.    Defendant, Central States Health & Life Co. of Omaha, a Mutual Legal Reserve Company, is a foreign insurance company incorporated and with its principal place of business in Omaha, Nebraska, and doing business of insurance in Oklahoma as Central States Health & Life Co. of Omaha (hereinafter referred to as "CSO").

3.    CSO acting through its insurance agent, sold an individual long term care insurance policy to Plaintiff effective April 23, 1998.  This insurance policy was in force at all times material hereto.

4.      While insured under this policy, Plaintiff became chronically ill requiring long-term care.  Beginning in May, 2019,  Plaintiff incurred expenses for her covered long-term care and treatment and timely and properly made a claim to Defendant for policy benefits and otherwise met all conditions precedent for payment of the policy benefits.

5.      CSO breached its insurance contract with Plaintiff by refusing to properly pay full policy benefits.

6.      In its handling of Plaintiff's claim and as a matter of routine business practice and handling like claims under these policies, CSO breached the insurance policy and its duty to deal fairly and act in good faith towards the Plaintiff by:

a.      failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendant knew that they were entitled to those benefits;

b.      failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.      withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

d.      refusing to honor Plaintiff's claims for reasons contrary to the express provisions of the policy and applicable law;

e.      refusing to honor Plaintiff's claims by applying restrictions not contained in the policy;

f.      refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.      failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

h.    not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i.    forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

j.    failing to properly evaluate any investigation that was performed;

k.    handling claims and providing benefits in a manner that is inconsistent with the policy language and promises made to the insured at the time of issuance of the policy;

l.    intentionally processing claims with conduct the Defendant knows is different than the benefits, claims service, and coverage that the Defendant promises and represents to their insured;

m.    hiring and using biased consultants to purportedly evaluate the insured when in fact these consultants are used as a tool to improperly deny, delay, and underpay policy benefits; and,

n.    establishing criteria for coverage and denials of coverage that are more restrictive than the coverage provided in the policy,

all in violation of the covenant of good faith and fair dealing and resulting in financial

benefit to the Defendant.

7.    As a proximate result of Defendant's acts and omissions described

above, Plaintiff has suffered the loss of the policy coverage, physical bodily injury,

mental and emotional distress, financial hardship, and other incidental and

consequential damages.

8.    Defendant's conduct was in reckless disregard for the rights of Plaintiff

and others or has acted intentionally and with malice entitling Plaintiffs to recover

punitive damages.  Defendant conduct as set out above was and is life threatening

to humans.

**WHEREFORE**, Plaintiff prays for judgment against the Defendant, Central States Health & Life Co. of Omaha, a Mutual Legal Reserve Company in an amount in excess of the federal court jurisdictional limit for actual damages and in an amount in excess of the federal court jurisdictional limit for punitive damages together with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
**MANSELL ENGEL & COLE**
204 N. Robinson Avenue, 21st Floor
Oklahoma City, OK 73102-7001
T: (405) 232-4100 ** F: (405) 232-4140
E-mail:  mengel@meclaw.net

**ATTORNEYS FOR PLAINTIFF**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

# Exhibit 2-2



FILED IN DISTRICT COURT
OKLAHOMA COUNTY

JUL - 8 2013

TIM RHODES
COURT CLERK
33___

## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

JEFF and JAMIE BLACK, husband and wife,

                              Plaintiffs,

v.

THE MEGA LIFE AND HEALTH INSURANCE COMPANY, an Oklahoma corporation,

                              Defendant.

Case No: **CJ - 2013 - 3804**

***JURY TRIAL DEMAND***

## PETITION

COME NOW Plaintiffs, Jeff and Jamie Black, and for their causes of action against the Defendant allege and state:

1.      Plaintiffs, Jeff and Jamie Black, husband and wife, are both residents of Stillwater, Payne County, State of Oklahoma.

2.      The Defendant, The MEGA Life and Health Insurance Company ("MEGA") is an Oklahoma corporation.

3.      At all times material hereto Plaintiffs and their three children were insured under a MEGA Life and Health Insurance Company health insurance policy, policy number 00384, Certificate No. 053574186.

4.      The subject insurance policy was sold, issued, delivered and renewed in Stillwater, Oklahoma.

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

5.      Plaintiffs incurred medical and other related expenses in connection with Jeff Black's medical care and surgeries, following a vehicle accident on June 17, 2012, which

left Mr. Black a paraplegic.

6.     Plaintiffs submitted claims for the policy benefits of their family health care plan and otherwise complied with all conditions precedent to recover under the policy.

7.     Defendant breached the insurance contract by failing and refusing to properly and promptly pay policy benefits to Plaintiffs.

8.     Defendant further breached the implied covenant of good faith and fair dealing in the handling of Plaintiffs' claims, and as a matter of routine claim practice in handling similar claims by:

a.     failing and refusing payment and other policy benefits on behalf of Plaintiffs at a time when Defendant knew that they were entitled to those benefits;

b.     failing to properly investigate Plaintiffs' claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.     withholding payment of the benefits on behalf of Plaintiffs knowing that Plaintiffs' claims for those benefits were valid;

d.     refusing to honor Plaintiffs' claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e.     refusing to honor Plaintiffs' claims in some instances by applying restrictions not contained in the policy;

f.     refusing to honor Plaintiffs' claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.     failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiffs' claims;

h.     not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' claims once liability had become reasonably clear;

i.     forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

j.     failing to properly evaluate any investigation that was performed;

2

k.   knowingly construing the policy wording to restrict coverage in a manner different than the Defendant knows this policy is designed, written and marketed to promise much broader coverage under this policy language;

l.   refusing to consider coverage for payment objectively in the best interest of their insured rather than the interest of only the insurance company;

m.   intentionally failing and refusing to follow the known law of policy construction, including, but not limited to, resolving any contractual ambiguities in favor of their insured; and,

n.   imposing conditions and requirements for coverage more restrictive than the requirements of the policy.

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to the Defendant.

9.   As a direct result of Defendant' breach of contract and breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered the loss of policy benefits and emotional distress, frustration, duress, and other consequential damages.

10.   Defendant' acts and omissions in violation of the implied covenant of good faith and fair dealing were in reckless disregard for the rights of others and/or were done intentionally and with malice and therefore Plaintiffs are entitled to recover punitive damages.

**WHEREFORE**, Plaintiffs pray for judgment against the Defendant, The MEGA Life and Health Insurance Company, for their damages, in an amount in excess of $75,000.00 compensatory damages and in an amount in excess of $75,000.00 punitive damages with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

## FALSE REPRESENTATION, CONCEALMENT AND DECEIT

Plaintiffs reallege all previous allegations and further allege and state:

3

11.     The soliciting agent, Ronald Elliott, was at all times material hereto an authorized soliciting agent for the insurance company Defendant, The MEGA Life and Health Insurance Company. Ronald Elliott was the soliciting agent for the involved family health insurance policy.

12.     The factual detail and particular who, what, when, and where, associated with this cause of action is set forth in this paragraph with as much specificity as is currently known to the Plaintiffs. On or about December 16, 2002, the Defendant's agent, Ronald Elliott, solicited and sold the involved family health insurance policy to the Plaintiffs at their home in Stillwater, Oklahoma. Jeff and Jamie Black told Mr. Elliott that they were looking for a health insurance plan that provided coverage for catastrophic injuries or illnesses. Plaintiffs explained to Mr. Elliott that they were able to pay for routine office visits or other small medical expenses, but they needed a health policy that would provide coverage and protection for them in the event of a catastrophic event or illness that involved large medical expenses. Mr. Elliott indicated that he had the perfect plan for such catastrophic coverage and that this MEGA family health insurance plan was designed specifically for such catastrophic coverage. He explained that there were substantial co-insurance and other expenses that Mr. and Mrs. Black might be required to pay on smaller medical bills, but they would have 100% coverage for their medical bills up to $1 million dollars in the event of any catastrophic injury or illness. Mr. Elliott showed Mr. and Mrs. Black a Health Choice Benefit Plan brochure for this MEGA health policy and went through the brochure showing the coverage and checking the plan options that he was selecting with Mr. and Mrs. Black their policy. He showed them and promised them one of the benefits in the Health Choice Benefit Plan brochure named "Accumulated Covered Expense Benefit". He

4

told them that this benefit would provide an absolute ceiling for them for any expenses after the first $75,000 of medical expenses and that all medical expenses over $75,000 would be paid at 100%. He explained to them that this part of the policy would provide for them the exact catastrophic coverage they had requested and that in the event of a catastrophic illness or injury they would be covered at 100% after the first $75,000 of medical expenses. Mr. Elliott also showed Mr. and Mrs. Black a sample Certificate Schedule which contained a schedule of policy benefits. He showed Mr. and Mrs. Black that different medical expenses had different amounts listed and that, based on the plan options selected, some of those medical expenses would pay 100% from the first dollar up to the amount listed and others would pay 80% from the start. However, for any medical expenses past those amounts listed in the Schedule of Benefits, all the medical expenses would be covered at 80% (up to the $75,000 total accumulated expenses). He showed them at the bottom of the Schedule of Benefits where it stated "All other covered expenses not specifically listed in this Schedule of Benefits – 80%." He explained that while there was some 100% coverage on some of their medical expenses at the lower limits, eventually all the expenses would involve 80% payment until they reached a total accumulated medical expense of $75,000. Mr. Elliott explained that while the policy had some 100% coverage on some limited medical expenses early on, they would be required to pay 20% on all other medical expenses other than those specifically listed at 100% until they reached the total accumulated $75,000 catastrophic coverage. He promised them that the policy they were purchasing would cover and protect their family from any large medical expenses in the event of a catastrophic injury or illness just as they had requested. Mr. Elliott failed and omitted telling the Blacks that the accumulated covered expense benefit was applied very

restrictively in the Defendant's actual adjustment of claims and really would not provide 100% payment of all medical bills over $75,000 in the event of the need for catastrophic coverage. Mr. Elliott failed and omitted to tell Mr. and Mrs. Black that this expense benefit was not always included as a part of MEGA's health policies but, rather, specifically told them that the benefit was a key aspect of their policy coverage, as they had requested. Mr. Elliott failed and omitted telling Mr. and Mrs. Black about the manner in which MEGA actually applies and construes the language promised in the Schedule of Benefits. He failed and omitted telling Mr. and Mrs. Black that they would not get any coverage for any amounts over the specific amounts listed in the Schedule. Instead, he specifically promised that the language at the bottom of the Schedule of Benefits would provide for coverage at 80% above the specifically listed amounts – up to the $75,000 total amount. Mr. Elliott failed and refused to tell Mr. and Mrs. Black that the policy had extremely limited coverage for any medical expenses outside of the hospital or surgery.   Mr. Elliott utilized the specific language MEGA inserts into the Schedule of Benefits to market this policy to the Plaintiffs in the exact manner that the language is intended to infer that there is coverage for all other covered expenses above the individual inside limitations providing the catastrophic coverage you would expect from such a policy under such language. These intentional misrepresentations and omissions were according to the very design of these policy benefits and policy language to demonstrate and promise people that the policy provides much more extended coverage beyond the specified inside limits actually provided by the Defendant. Mr. and Mrs. Black purchased the policy from the Defendant's agent that day based up these representations and omissions. On issuance of the policy a short time afterwards, MEGA sent Mr. and Mrs. Black a policy with a Schedule of Benefits

containing the same language utilized by the agent in the sale of the policy "all other covered expenses not specifically listed in this Schedule of Benefits and not specifically excluded – 80%". Plaintiffs will immediately supplement any factual details with specificity that the Plaintiffs can identify that are not set forth above.

13.     Jeff Black suffered a catastrophic injury on June 17, 2012 incurring the exact type of medical expenses that he was promised coverage for through MEGA. Mr. and Mrs. Black learned in the months following this catastrophic accident that they did not have the catastrophic coverage that had been promised to them by the Defendant.

14.     The described representations were material and false and made at a time when Defendant knew they were false, or made as a positive assertion recklessly, without any knowledge of the truth.

15.     The described representations were made with the intention that Plaintiffs should act upon them in purchasing this policy and the Plaintiffs did rely upon them to their detriment.

16.     The described representations were words or conduct which creates an untrue or misleading impression of the actual past or present facts in the mind of the Plaintiffs.

17.     The described omissions and non-disclosure involved concealing and failing to disclose facts which Defendant had a duty to disclose.  Such facts were material and were concealed or failed to be disclosed with intent of creating a false impression of the actual facts in the mind of the Plaintiffs.

18.     Defendant concealed or failed to disclose these facts with the intention that they be acted upon by Plaintiffs and Plaintiffs did act in reliance upon it to their detriment.

7

19.   The described false representations, concealment and deceit induced the Plaintiffs to purchase this insurance policy and Plaintiffs, acting in reliance thereon, suffered injury.

20.   As a direct result of the described false representations, concealment, and deceit, Plaintiffs suffered loss of the policy coverage promised to them, emotional distress, frustration and duress and other consequential damages.

21.   Defendant' acts and omissions in violation of the implied covenant of good faith and fair dealing were with reckless disregard for the rights of others and/or were done intentionally and with malice and therefore Plaintiff is entitled to recover punitive damages.

**WHEREFORE**, Plaintiffs pray for judgment against the Defendant, The MEGA Life and Health Insurance Company, for their damages, in an amount in excess of $75,000.00 compensatory damages and in an amount in excess of $75,000.00 punitive damages with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

_____
Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
**MANSELL ENGEL & COLE**
101 Park Avenue, Suite 665
Oklahoma City, OK 73102
Telephone: (405) 232-4100
Facsimile: (405) 232-4140
E-mail:  mansell-engel@coxinet.net

ATTORNEYS FOR PLAINTIFFS

**ATTORNEY LIEN CLAIMED**

8

# Exhibit 2-3

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

IN THE DISTRICT COURT OF OKLAHOMA COUNTY   SEP 1 3 2019
STATE OF OKLAHOMA

RICK WARREN
COURT CLERK

42

| | |
|---|---|
| RUBY J. DISNEY, | |
| Plaintiff, | CJ-2019-5131 |
| v. | Case No: |
| UNITED NATIONAL LIFE INSURANCE COMPANY OF AMERICA, | |
| Defendant. | JURY TRIAL DEMANDED |

## PETITION

COMES NOW, the Plaintiff, Ruby J. Disney, for her causes of action against Defendant, alleges and states as follows:

1.      Ruby J. Disney is resident and citizen of the State of Oklahoma.

2.      Defendant, United National Life Insurance Company of America ("UNL"), is a foreign corporation incorporated and domiciled in the State of Illinois.  It maintains its principal place of business in Glenview, Illinois, is authorized to transact business within the State of Oklahoma and may be served with process through its designated service agent, identified as Glen Mulready, Oklahoma Insurance Commissioner, 5 Corporate Plaza, Suite 100, 3625 NW 56th Street, Oklahoma City, Oklahoma 73112.

3.      The amount involved is in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

4.      Based on the foregoing, this Court has jurisdiction over these parties and the subject matter and venue is proper herein.

5.      At all times material here to, the Plaintiff was insured under a First Diagnosis Cancer Benefit health insurance policy, policy number: 20H0010241, effective May 17, 2011.

6.      Ms. Disney became seriously ill and incurred expenses for care and treatment of a medical condition covered by the subject insurance policy.

7.      Ms. Disney's medical condition was life-threatening.

8.      On or about December 4, 2018, Plaintiff submitted a claim to Defendant for policy benefits owed for such care and treatment. Such claim was submitted in a proper and timely manner.

9.      Plaintiff met all conditions precedent for payment of said policy benefits.

10.     Instead of paying her claim, Defendant cancelled Plaintiff's policy on or about December 10, 2018.

11.     In its handling of Plaintiff's claim, and as a matter of routine business practice in handling like claim under these policies, the Defendant breached the policy contract and breached its duty to deal fairly and act in good faith towards the Plaintiff by:

   a.    failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendant knew that she was entitled to those benefits;

   b.    failing to properly investigate Plaintiff's claim and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

   c.    withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claim for those benefits were valid;

   d.    refusing to honor Plaintiff's claim in some instances for reasons contrary to the express provisions of the policy and/or applicable law;

   e.    refusing to honor Plaintiff's claim in some instances by applying restrictions not contained in the policy;

   f.    refusing to honor Plaintiff's claim in some instances by knowingly misconstruing and misapplying provisions of the policy;

   g.    failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claim arising under these policies, to include Plaintiff's claim;

2

h.   not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim once liability had become reasonably clear;

i.   forcing Plaintiff, pursuant to its standard claim practice, to retain counsel in order to secure benefits Defendant knew were payable to Plaintiff;

j.   failing to properly evaluate any investigation that was performed;

k.   handling claim and providing benefits in a manner that is inconsistent with the policy language and promises made to the insured at the time of issuance of the policy; and,

l.   intentionally processing claims with conduct the Defendant knows is different than the benefits, claims service and coverage that Defendant promises and represents to its insureds;

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to the Defendant.

12.   As a proximate result of Defendant's unlawful acts and omissions, Plaintiff suffered the loss of policy coverage, mental and emotional distress, financial hardship, and other incidental and consequential damages.

13.   Defendant has been guilty of reckless disregard for the rights of others and/or acted intentionally and with malice thereby entitling Plaintiff to recover punitive damages.

14.   Defendant's conduct referenced above was and is life-threatening to humans.

**WHEREFORE,** Plaintiff prays for judgment against Defendant, United National Life Insurance Company of America, in an amount in excess of the jurisdictional amount set out in 28 U.S.C.A. § 1332 with interest and costs of this action, for a reasonable attorney fee, and for any further relief that is deemed appropriate.

3

MANSELL, ENGEL & COLE

By: _____

Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Keith F. Givens, OBA #16501
204 North Robinson, 21st Floor
Oklahoma City, OK 73102-7201
T: (405) 232-4100 ** F: (405) 232-4140
kgivens@meclaw.net

**ATTORNEYS FOR PLAINTIFF**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

4

# Exhibit 2-4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VICTORIA DYSINGER,<br><br>                       Plaintiff,<br><br><br>UNUM LIFE INSURANCE COMPANY<br>OF AMERICA, a foreign corporation,<br>                       Defendant. | Case No: CIV-14-1308-D<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1.     Plaintiff is an individual residing in Oklahoma County, State of Oklahoma.

2.     Defendant, Unum Life Insurance Company of America is a foreign corporation doing business in Oklahoma. Unum's principal place of business and domicile is in a state other than Oklahoma.

3.     Venue is proper in the Western District of Oklahoma pursuant to 28 U.S.C. § 1391.

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties have diverse citizenship and the amount in controversy exceeds the jurisdictional amount, exclusive of costs and interest.

5.     Ms. Dysinger was insured under a group life insurance policy issued by Unum Life Insurance Company of America through Plaintiff's employer. The insurance policy has a waiver of premium benefit in the event Ms. Dysinger became disabled.

6.   Ms. Dysinger became disabled and unable to work due to illness and therefore made a claim for the waiver of premium benefit to keep her life insurance policy in force.

7.   Plaintiff provided all information requested by Unum and complied with all conditions precedent to receiving the waiver of premium benefit in the policy.

8.   In its handling of Plaintiff's claim, and as a matter of routine business practice in handling like claims under these policies, the Defendant breached the insurance agreement and its duty to deal fairly and act in good faith towards the Plaintiff by:

a.   failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendant knew that they were entitled to those benefits;

b.   failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.   withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

d.   refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e.   refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

f.   refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.   failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

h.   not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i.    forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable; and

j.    failing to properly evaluate any investigation that was performed;

all in violation of the covenant of good faith and fair dealing and resulting in a financial benefit to the Defendant.

9.    As a direct result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered loss of policy benefits, emotional injury, anxiety, distress, worry and other incidental and other consequential damages.

10.    Defendant's actions were intentional, willful, malicious, wanton and/or reckless, for which punitive damages should be assessed against Defendants.

**WHEREFORE,** Plaintiff prays for judgment against the Defendant, UNUM Life Insurance Company of America for her damages, both compensatory damages and punitive damages, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.  The amount sought as damages in in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

MANSELL ENGEL & COLE

By:  s/Steven S. Mansell
     Steve S. Mansell, OBA #10584
     Mark A. Engel, OBA #10796
     Kenneth G. Cole, OBA #11792
     101 Park Avenue, Suite 665
     Oklahoma City, OK 73102-7203
     T: (405) 232-4100 ** F: (405) 232-4140
     Email: mansell-engel@coxinet.net
     **ATTORNEYS FOR PLAINTIFF**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

3

# Exhibit 2-5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELISSA GAMMEL and BRAD GAMMEL, <br><br> Plaintiffs, <br><br> v. <br><br> UNUM LIFE INSURANCE COMPANY OF AMERICA, a foreign corporation, <br><br> Defendant. | Case No: CIV-14-1385-HE <br><br> **JURY TRIAL DEMANDED** <br> **ATTORNEY LIEN CLAIMED** |

## COMPLAINT

COME NOW the Plaintiffs, and for their causes of action against the Defendant allege and state as follows:

1.     Earlene Forsythe had $30,000 in life insurance coverage from UNUM Life Insurance Company of America that was in full force and effect at all times material hereto.

2.     Ms. Forsythe's daughter, Melissa Gammel and her grandson, Brad Gammel, are the designated co-beneficiaries under this policy.

3.     Melissa Gammel is a resident of Oklahoma County, State of Oklahoma. Brad Gammel is a resident of Alaska.

4.     Defendant, UNUM Life Insurance Company of America is a foreign corporation incorporated and domiciled in the State of Maine.   UNUM Life Insurance Company is authorized to transact business within the State of Oklahoma and may be served with process through its   designated service   agent, identified   as   John   Doak, Oklahoma Insurance Commissioner, 5 Corporate Plaza, Suite 100, 3625 NW 56th Street, Oklahoma City, Oklahoma 73112.

5.      The amount sought as damages is in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

6.      This contract of life insurance was issued, delivered, and renewed in the State of Oklahoma

7.      On November 13, 2012, Earlene Forsythe passed away.

8.      Plaintiffs timely made a claim for policy benefits and have otherwise complied with all conditions precedent to receiving the policy benefits.

<u>**COUNT I - BAD FAITH**</u>

9.      Defendant breached the contract and the implied covenant of good faith and fair dealing in the insurance contract, and as a matter of routine business practice in the handling of similar claims, in the following respects:

a.      failing and refusing payment and other policy benefits on behalf of Plaintiffs at a time when Defendant knew that they was entitled to those benefits;

b.      failing to properly investigate Plaintiffs' claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.      withholding payment of the benefits on behalf of Plaintiffs knowing that Plaintiffs' claims for those benefits were valid;

d.      refusing to honor Plaintiffs' claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e.      refusing to honor Plaintiffs' claims in some instances by applying restrictions not contained in the policy;

f.      refusing to honor Plaintiffs' claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.      failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiffs' claims;

h.      not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' claims once liability had become reasonably clear;

i.      forcing Plaintiffs, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

j.      failing to properly evaluate any investigation that was performed;

k.      refusing to consider the reasonable expectations of the insured;

l.      failing and refusing to properly investigate and consider the insurance coverage promised to their insured;

m.      intentionally miscalculating the applicable policy amount and the benefit and misrepresenting to their insured the manner in which the benefit was calculated;

n.      failing to consider the amount of policy coverage that they know was represented and promised to their insured for life insurance coverage;

o.      preventing recovery under the policy on the basis of application information that Defendant knows was not material to their acceptance of the risk in their issuance of coverage;

p.      preventing recovery under the policy based upon application information without proper consideration of the nature of that information; and

q.      inappropriately refusing life coverage on the basis of health conditions when they know the policy was sold with promises of portability,

all in violation of the implied covenant of good faith and fair dealing and resulting in financial benefit derived to the Defendant, UNUM Life Insurance Company of America.

10.      As a direct result of the above described wrongful acts and omissions by UNUM, Plaintiffs have suffered loss of the coverage promised by UNUM, mental and emotional distress, costs to mitigate damages and other damages.

11.      Defendant's acts and omissions were willful and malicious or grossly reckless and wanton and Plaintiffs are entitled to recover punitive damages.

**WHEREFORE,** Plaintiffs pray for judgment against the Defendant, UNUM Life Insurance Company of America, for their damages, both compensatory damages and punitive

damages, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.   The amount sought as damages in in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

### COUNT II – FALSE REPRESENTATIONS, CONCEALMENT AND DECEIT

Plaintiffs reallege all previous allegations and further allege and states:

12.   The factual detail and particular who, what, when, and where, associated with this cause of action is set forth in this paragraph with as much specificity as is currently known to the Plaintiffs.  On best information and belief, since at least October 1, 2010, and probably for years before then, UNUM has attached a benefit feature to group life insurance policies and intentionally refers to the benefit feature as "Portability".  This feature was attached to the Comanche County Hospital group policy that UNUM provided for Ms. Forsythe at the time she retired from the hospital in late 2010 at the age of 65.  UNUM's group insurance policy promised Comanche County Hospital and Ms. Forsythe under the benefit feature entitled Portability that "You may elect portable coverage for yourself".  Unum also represented under the bolded capitalized heading "**Portable Insurance Coverage and Amounts Available**" (emphasis in the original) that "[T]he portable insurance coverage will be the current coverage and amounts that you were insured for under your employers group plan".  This provision and promise of coverage in the policy is consistent with the normal and reasonably expected meaning of portable life insurance coverage.  In truth, this "benefit feature" is not designed to and did not for Ms. Forsythe provide her portable insurance coverage either 1) consistent with her current coverage or 2) in that same amount.  In truth, this benefit feature is designed to [and did in Ms. Forsythe's case] 1) lower the amounts that you are insured for under your employer's group plan 2) misrepresent the amounts that you are insured for under the "portable insurance coverage" and 3) imposed new health restrictions and additional determinations for coverage not present in her

4

current coverage under her employers group plan.  On January 10, 201, in a letter from Susan

Blossom, Human Resources Representative for Comanche County Memorial Hospital, Ms.

Forsythe asked UNUM to forward portability forms stating that she was a former Comanche

County Memorial Hospital employee and that she was under the impression that the forms would

automatically be mailed to her once her employment ended.  UNUM failed to send Ms. Forsythe

any forms or disclose any information in connection with the state mandated conversion

coverage in her policy that would insure her life insurance coverage without regard to her health,

in the same coverage amount.  Instead, UNUM provided a form which it entitles "Life Insurance

Election of Portability Coverage".  This election form is, in truth, an election for UNUM's

special "benefit feature" which did not provide portability coverage either in terms of continued

life coverage without medical criteria or in terms of the amount of coverage.  UNUM's "Life

Insurance Election of Portability Coverage" form was provided by UNUM to Ms. Forsythe and

her daughter, Melissa Gammel on or around January 13, 2011 and these two ladies considered

the misleading representations of this form.  This form represented that "you may be eligible to

continue your life coverage".  In truth, you are entitled to continue your life coverage with the

state mandated conversion rights already in your group policy.  UNUM's election form states

that if you are not eligible to apply for portable coverage you may qualify for conversion

coverage.  In truth, you are automatically eligible for the conversion coverage required by law

and it is only this manufactured benefit feature that UNUM calls "portable coverage" that can be

affected by any medical condition – contrary to the very essence of portable coverage.  UNUM's

election form states that you can keep the same level of coverage or decrease coverage and that

you will only be subject to medical evidence of insurability if you wish to increase coverage.  In

truth, UNUM reduced their insurance coverage both in nature of the coverage (for portability)

and in the amount of the coverage immediately on Ms. Forsythe's election of their alternative product – on the basis of her medical insurability, even though she did not increase coverage. The election form discloses that UNUM might determine that Ms. Forsythe was not eligible due to a medical condition that had a material effect on life expectancy, but UNUM failed to disclose that they would never make such a determination in connection with accepting her premium, issuing her the insurance coverage, and continuing to take her continuing premiums. Instead, they would only make such a determination following her death as an excuse to, in effect, refuse her portability in her life coverage. The election form confirms her current group life amount of $50,000 which UNUM knew to be incorrect at that time and confirmed issuance for an amount of $30,000 that UNUM never intended to provide coverage for at that time. In truth, UNUM always knew that it would provide actual benefits only in 65% of that amount despite explicit numbers represented on the election form. UNUM never disclosed to Ms. Gammel that they never intended to provide any coverage under this alternative product in an amount that would exceed $19,500. UNUM, at all times relevant hereto, never disclosed to Ms. Forsythe that she was losing the portability of her life insurance by electing UNUM's special "portability coverage". UNUM never advised Ms. Forsythe that they had a special definition of sickness "for purposes of portability" that they would utilize to deny her life insurance coverage if she had any illness, disease or symptoms, which would cause a person to consult a health care provider. The policy does not define and no one disclosed to Ms. Forsythe the manner in which UNUM intended to interpret a material effect on life expectancy and how they would use any such defined "for purposes of portability" sickness to deny life insurance benefits regardless of whether the medical condition was life threatening. UNUM intentionally calculates the benefit in a manner it knows is less than what it represents. The coverage was represented to provide the

same current coverage in the same amount based on a certification to the best of the insured's knowledge that they did not have a condition material to their life expectancy. In truth, Defendant knew that they only accepted premiums on this basis. In truth, if there was actually a death, Defendant knew the person's medical history would be scrutinized on a much different basis that actually controls the life coverage provided. UNUM intentionally mischaracterized and misrepresented the very nature of their "portability" alternative product which was, in truth, specifically designed to undermine the portability of Ms. Forsythe's life insurance coverage. Plaintiffs will immediately supplement any factual details with specificity that the Plaintiffs can identify that are not set forth above.

13.     UNUM knew that Ms. Forsythe was entitled under her base group policy, as required by law, to the complete $30,000 requested of her life insurance coverage without regard to any health conditions under her conversion provisions.    Instead, they intentionally misrepresented and mischaracterized an alternative "portability coverage" that, in truth, was not portable at all. They represented to Ms. Forsythe that her current group life amount was $50,000 when they knew there was only 65% of that amount at the time. They represented that they had approved her requested $30,000 in life insurance coverage when, in fact, they only entered the policy in their records at $19,500. This manipulation was never disclosed to Ms. Forsythe. UNUM accepted premiums, determined that Ms. Forsythe was eligible, and promised her the $30,000 in life coverage based solely upon the underwriting criteria of Ms. Forsythe's representation to the best of her knowledge that she did not have a medical condition which had a material effect on life expectancy. At the time they promised this coverage in January of 2011, UNUM knew that they would evaluate and provide actual life insurance coverage on a very different basis based upon an extensive examination of her medical records and a determination

of whether she had any significant "sickness" at all.  The information criteria that was material in the issuance of the coverage was not considered at all in the determination of denying benefits. Defendant failed to honestly disclose the true nature of their alternative product and how it truly affected her life coverage.

14.     The described representations were material and false and made at a time when Defendant knew they were false, or made as a positive assertion recklessly, without any knowledge of the truth.

15.     The described representations were made with the intention that Ms. Forsythe and her daughter, Melissa Gammel, should act upon them in purchasing and renewing this policy and Ms. Forsythe and her daughter, Melissa Gammel, did rely upon them to their detriment in the purchase and renewal payments on these life policies.

16.     The described representations were words or conduct which created an untrue or misleading impression of the actual past or present facts in the mind of Ms. Forsythe and her daughter, Melissa Gammel.

17.     The described omissions and non-disclosure involved concealing and failing to disclose facts which Defendant had a duty to disclose.  Such facts were material and were concealed or failed to be disclosed with intent of creating a false impression of the actual facts in the mind of Ms. Forsythe and her daughter, Melissa Gammel.

18.     Defendant concealed or failed to disclose these facts with the intention that they be acted upon by Ms. Forsythe and her daughter, Melissa Gammel and Ms. Forsythe and her daughter, Melissa Gammel, did act in reliance upon it to their detriment.

19.     The described false representations, concealment and deceit induced Ms. Forsythe and her daughter, Melissa Gammel, to purchase these insurance policies and Ms. Forsythe and her daughter, Melissa Gammel, acting in reliance thereon, suffered injury.

20.     As a direct result of the described false representations, concealment, and deceit, Plaintiffs suffered loss of the policy coverage promised, emotional distress, frustration and duress and other consequential damages.

21.     Defendant's acts and omissions in this cause of action were with reckless disregard for the rights of others and/or were done intentionally and with malice and therefore Plaintiffs are entitled to recover punitive damages.

22.     Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs pray for judgment against the Defendant, UNUM Life Insurance Company of America, for their damages, both compensatory damages and punitive damages, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.  The amount sought as damages in in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

**MANSELL ENGEL & COLE**

By: s/Mark A. Engel
      Steven S. Mansell, OBA #10584
      Mark A. Engel, OBA #10796
      Kenneth G. Cole, OBA #11792
      101 Park Avenue, Suite 665

**JURY TRIAL DEMANDED**       Oklahoma City, Oklahoma  73102
**ATTORNEY LIEN CLAIMED**      T: (405) 232-4100   F: (405) 232-4140
      Email:  mansell-engel@coxinet.net

      **ATTORNEYS FOR PLAINTIFFS**

9

# Exhibit 2-6

*1024057956*

## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

| | | |
|---|---|---|
| BENNIE CARL GATEWOOD, | | |
| | Plaintiff, | CJ-2014-1536 |
| v. | | Case No: |
| ALLSTATE LIFE INSURANCE COMPANY, | | |
| | Defendant. | |

MAR 14 2014

TIM RHODES
COURT CLERK

43

**JURY TRIAL DEMANDED**

---

### PETITION

COMES NOW the Plaintiff and for his causes of action against the Defendant alleges and states:

1. Pauline Kay Gatewood purchased life insurance policy no. 4000645 from Allstate Life Insurance Company on or about August 29, 1959 which was issued with a policy date of September 15, 1959 and a face amount of $5,000. Ms. Gatewood paid for the policy in full by making premium payments for 20 years. This was a "paid up" policy.

2. Plaintiff, Bennie Carl Gatewood was a beneficiary under this policy.

3. On December 25, 2013, Pauline Kay Gatewood passed away.

4. Plaintiff made a claim with Allstate Life Insurance Company under this policy and has otherwise complied with all conditions precedent to receiving policy benefits.

5. Defendant breached the insurance contract and the implied covenant of good faith and fair dealing, as a matter of standard business practice, in the following respects:

   a. failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendant knew that he was entitled to those benefits;

   b. failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.  withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

d.  refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e.  refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

f.  refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.  failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

h.  not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i.  forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

j.  failing to properly evaluate any investigation that was performed;

k.  refusing to consider the reasonable expectations of the insured; and,

l.  failing and refusing to properly investigate and consider the insurance coverage promised to their insured;

all in violation of the implied covenant of good faith and fair dealing and resulting in financial benefit to the Defendant, Allstate Life Insurance Company.

6.  As a direct result of the above described wrongful acts and omissions by Allstate Life Insurance Company, Plaintiff has suffered loss of the coverage promised by Allstate and mental and emotional distress.

7.  Defendant's acts and omissions were willful and malicious or grossly reckless and wanton and Plaintiff is entitled to recover punitive damages.

2

**WHEREFORE**, Plaintiff demands judgment against this Defendant Allstate Life Insurance Company, in an amount in excess of $75,000.00 for compensatory damages and in an amount in excess of $75,000.00 for punitive damages plus interest, costs, attorney fees and all other relief which the Court deems just and equitable.

MANSELL ENGEL & COLE

By: _____

Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
101 Park Avenue, Suite 665
Oklahoma City, Oklahoma  73102
T: (405) 232-4100   F: (405) 232-4140
Email: mansell-engel@coxinet.net

ATTORNEYS FOR PLAINTIFF

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

# Exhibit 2-7



*1040161538*

## IN THE DISTRICT COURT OF PAYNE COUNTY
### STATE OF OKLAHOMA

IN THE DISTRICT COURT OF
Payne County, Oklahoma
Filed

MAY 24 2018

LORI ALLEN Court Clerk
By:_____ Deputy

| | |
|---|---|
| STEVEN HARRIS,<br><br>     Plaintiff,<br><br>v.<br><br>FARMERS NEW WORLD LIFE<br>INSURANCE COMPANY, a corporation,<br>CARPENTER INSURANCE AGENCY,<br>and JESSICA M. SAND, an individual,<br><br>     Defendants. | Case No:<br><br>CJ—2018—269<br><br><br><br>**JURY TRIAL DEMANDED** |

## PETITION

COMES NOW the Plaintiff, and for his causes of action against the Defendants allege and state:

### COUNT I

1.  Plaintiff and his wife, Gwendolyn Harris, purchased a life insurance policy from Farmers New World Life Insurance Company and made premium payments for this coverage until her death.

2.  Plaintiff, Steven Harris was the beneficiary under this policy.

3.  On January 21, 2018, Gwendolyn Harris passed away.

4.  Plaintiff timely made a claim for policy benefits with Farmers New World Life Insurance Company and has otherwise complied with all conditions precedent to receiving policy benefits.

### COUNT I - BAD FAITH

5.  This cause of action is against only the insurance company Defendant, Farmers New World Life Insurance Company.  Farmers New World breached the

contract and the implied covenant of good faith and fair dealing in the insurance contract, as a matter of standard business practice, in the following respects:

a.   failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendant knew that she was entitled to those benefits;

b.   failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.   withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

d.   refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e.   refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

f.   refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.   failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

h.   not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i.   forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

j.   failing to properly evaluate any investigation that was performed;

k.   refusing to consider the reasonable expectations of the insured;

l.   failing and refusing to properly investigate and consider the insurance coverage promised to their insured;

m.   forcing their insured to bear the consequences of Farmers New World Life Insurance Company's own error and omission rather than being

2

responsible for their own agents in indemnifying their insured and pursuing any remaining subrogation claim they may have against the agents;

n.     failing and refusing to honor their known obligation under the law for legal liability for the acts of their soliciting agent; and

all in violation of the implied covenant of good faith and fair dealing and resulting in financial benefit to the Defendant, Farmers New World Life Insurance Company.

6.     As a direct result of the above described wrongful acts and omissions by Farmers New World Life Insurance Company, Plaintiff has suffered loss of the coverage promised by Farmers New World, mental and emotional distress, costs to mitigate damages and other damages.

7.     Farmers New World's acts and omissions were willful and malicious or grossly reckless and wanton and Plaintiff is entitled to recover punitive damages.

**WHEREFORE,** Plaintiff, demands judgment against this Defendant, Farmers New World Insurance Company, in an amount in excess of $75,000.00 for compensatory damages and in an amount in excess of $75,000.00 for punitive damages plus interest, costs, attorney fees and all other relief which the Court deems just and equitable.

## COUNT II – FALSE REPRESENTATION AND DECEIT

Plaintiff realleges all previous allegations and further alleges and states:

8.     The soliciting agent, Carpenter Insurance Agency and Jessica M. Sand were at all times material hereto an authorized soliciting agent for Defendant, Farmers New World Life Insurance Company.  Jessica M. Sand was the soliciting agent for the involved life insurance policy.  This cause of action is against all Defendants in this case.

3

9.      The factual detail and particular who, what, when, and where, associated with this cause of action is set forth in this paragraph with as much specificity as is currently known to the Plaintiff. In March 2016, Plaintiff and his wife, Gwendolyn Harris, went to the office of Jessica M. Sand in Stillwater, Oklahoma, and bought the involved insurance policy. Ms. Sand solicited and sold Mr. and Mrs. Harris life insurance policies – one on the life of Mr. Harris for the benefit of Mrs. Harris and one on the life of Mrs. Harris for the benefit of Mr. Harris.   Ms. Sand explained that these life insurance coverages were necessary to provide for necessary expenses in the event of their death(s) and that they should always keep these life insurance policies in place for themselves to provide for this insurance need.   Jessica M. Sand represented to Mr. Harris that if he purchased this policy and paid premium payments, then Farmers New World Life would pay the policy benefits of $10,000 to him upon his wife's death.  Ms. Sand always maintained and ensured Mr. and Mrs Jackson that they had these life insurance policies on each other's lives to provide for them in the event of either of their deaths.   The agent repeatedly assured Mr. and Mrs. Harris that they would receive these life insurance benefits in the event that either of them died.   From April 2016 through December, 2016, Plaintiff contacted Ms. Sand requesting a copy of the life insurance policies he purchased and was advised that Defendant Sand would check into it.  In January 2017, Plaintiff contacted the Defendant requesting the copies of their life insurance policies and was advised that if he wanted copies of the policies he would have to pay $25.00 for a copy of each policy.  From April 2017 to May 2017, Plaintiff contacted the corporate office for Defendant Farmers New World Life Insurance to request copies of his policies and explained to the corporate office his difficulty in

4

obtaining copies of his policies. Plaintiff was assured that a copy of each policy would be sent to him. In October, 2017, Plaintiff again contacted Defendant Farmers New World Life's corporate offices requesting copies of his policies. Corporate apologized for the delay and assured Plaintiff a copy of each policy would be sent out immediately. Just after Christmas, December 2017, Plaintiff received a letter from the Customer Care Team with Defendant Farmers New World Life Insurance providing the name of the plan, face amount ($10,000), policy issue date, paid to date and premium amount and billing mode. No copies of the insurance policies were included. On January 18, 2018, Plaintiff received a copy of his insurance policies. On January 21, 2018, Plaintiff's wife passed away. On March 12, 2018, Farmers New World Life Insurance Company wrote a letter saying it was only paying the "Graded Death Benefit" amount of $1,689.85 due to the fact that the wife died within two years of the insurance policy being issued. This is the first time that the insured was informed that there was any amount payable less than $10,000. Mr. Harris and his wife had paid insurance premiums in reliance on the fact that they would be receiving the policy benefit amount of $10,000. Defendants failed to disclose that the policy had provisions that purport to allow the insurance company to pay less than $10,000. The Defendants knew when the policy was sold that they might not pay the $10,000 and intentionally concealed information about the policy. Plaintiff will immediately supplement any factual details with specificity that the Plaintiff can identify that are not set forth above.

10.    The described representations were material and false and made at a time when Defendants knew they were false, or made as a positive assertion recklessly, without any knowledge of the truth.

5

11.     The described representations were made with the intention that Plaintiff should act upon them in purchasing and renewing this policy and the Plaintiff did rely upon them to her detriment in the purchase and renewal payments on these life policies.

12.     The described representations were words or conduct which created an untrue or misleading impression of the actual past or present facts in the mind of the Plaintiff.

13.     The described omissions and non-disclosure involved concealing and failing to disclose facts which Defendants had a duty to disclose.  Such facts were material and were concealed or failed to be disclosed with intent of creating a false impression of the actual facts in the mind of the Plaintiff.

14.     Defendants concealed or failed to disclose these facts with the intention that they be acted upon by Plaintiff and Plaintiff did act in reliance upon it to his detriment.

15.     The described false representations, concealment and deceit induced the Plaintiff to purchase these insurance policies and Plaintiff, acting in reliance thereon, suffered injury.

16.     As a direct result of the described false representations, concealment, and deceit, Plaintiff suffered loss of the policy coverage promised, emotional distress, frustration and duress and other consequential damages.

17.     Defendants' acts and omissions in this cause of action were with reckless disregard for the rights of others and/or were done intentionally and with malice and therefore Plaintiff is entitled to recover punitive damages.

6

18.    Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, Farmers New World Life Insurance Company, Carpenter Insurance Agency, and Jessica M. Sand, in an amount in excess of $75,000.00 compensatory damages and in an amount in excess of $75,000.00 for punitive damages with interest and costs of this action, and all other relief which the Court deems just and equitable.

## THIRD CAUSE OF ACTION - NEGLIGENCE

Plaintiff realleges all previous allegations and further alleges and states:

19.    This cause of action is against all Defendants.

20.    The Defendant, Jessica M. Sand, was acting within the scope and authority of her agency and acting as the soliciting agent for the involved life insurance policy on behalf of the Defendants Farmers New World Life Insurance Company and Carpenter Insurance Agency.

21.    The Defendants had committed to provide life insurance coverage on the life of Gwendolyn Harris, for the benefit of her husband, Steven Harris.  The Defendants had a duty of reasonable care in the handling and the provision of this insurance coverage.

22.    Both Defendants negligently failed to use reasonable care to properly handle, administrate, bill for, and properly inform Mr. and Mrs. Harris with regard to this policy.

23.    The Defendants negligently made an error in explaining the benefits of the policy and otherwise negligently deprived Mr. and Mrs. Harris of the life insurance coverage which was to be provided.

7

24.     As a direct result of the acts and omissions of the Defendants, and their negligent failure to utilize ordinary care in connection with this insurance coverage, the Plaintiff has been damaged.

**WHEREFORE**, Plaintiff, demands judgment against the Defendants, Farmers New World Insurance Company, Carpenter Insurance Agency and Jessica Sand  in an amount in excess of $75,000.00 for compensatory damages and in an amount in excess of $75,000.00 for punitive damages plus interest, costs, attorney fees and all other relief which the Court deems just and equitable.

MANSELL ENGEL & COLE

By:

Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
**JURY TRIAL DEMANDED**          M. Adam Engel, OBA #32384
**ATTORNEY LIEN CLAIMED**        204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102-7001
T: (405) 232-4100 ** F: (405) 232-4140
Firm E-mail:  mec@meclaw.net

**ATTORNEYS FOR PLAINTIFF**

# Exhibit 2-8



Case 5:17-cv-01077-M   Document 1-1   Filed 10/10/17   Page 1 of 3    *CJ-17-5200*
*Davis*



FILED IN DISTRICT COURT
OKLAHOMA COUNTY

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

SEP 1 4 2017

RICK WARREN
COURT CLERK

| | |
|---|---|
| James M. Hollier,<br><br>Plaintiff,<br><br>v.<br><br>Metropolitan Life Insurance Company<br>d/b/a, MetLife<br><br>Defendant. | Case No. **CJ-2017-5200**<br><br>**JURY TRIAL DEMANDED** |

## PETITION

COMES NOW the Plaintiff, James M. Hollier, and for his causes of action against Defendant alleges and states as follows:

1.     Metropolitan Life Insurance Company d/b/a MetLife acting through its insurance agent, sold an individual long term care insurance policy to Plaintiff effective March 1, 2001. This insurance policy was in force at all times material hereto.

2.     While insured under this policy Plaintiff became chronically ill requiring long term care. Plaintiff incurred expenses for his covered long-term care and treatment and timely and properly made a claim to Defendant for policy benefits and otherwise met all conditions precedent for payment of the policy benefits by showing he was "chronically ill" as defined by the policy and that he was incurring longterm care expenses by reason of confinement in a longterm care facility.

3.     MetLife breached its insurance contract with Plaintiff by refusing to properly pay full policy benefits and by refusing to waive the premium payments. Plaintiff appealed this denial and MetLife denied the appeal.



4.      In its handling of Plaintiff's claim and as a matter of routine business practice and handling like claims under these policies, MetLife breached the insurance policy and its duty to deal fairly and act in good faith towards the Plaintiff by:

a.      failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendant knew that they were entitled to those benefits;

b.      failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.      withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

d.      refusing to honor Plaintiff's claims for reasons contrary to the express provisions of the policy and applicable law;

e.      refusing to honor Plaintiff's claims by applying restrictions not contained in the policy;

f.      refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.      failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

h.      not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i.      forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

j.      failing to properly evaluate any investigation that was performed;

k.      handling claims and providing benefits in a manner that is inconsistent with the policy language and promises made to the insured at the time of issuance of the policy; and,

l.      intentionally processing claims with conduct the Defendant knows is different than the benefits, claims service, and coverage that the Defendant promises and represents to their insured;

2



m.    hiring and using biased consultants to purportedly evaluate the insured when in fact these consultants are used as a tool to deny, delay, and underpay policy benefits.

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to the Defendant.

5.    As a proximate result of Defendant's acts and omissions described above, Plaintiff has suffered the loss of the policy coverage, physical bodily injury, mental and emotional distress, financial hardship, and other incidental and consequential damages.

6.    Defendant has been guilty of reckless disregard for the rights of others or has acted intentionally and with malice entitling Plaintiffs to recover punitive damages. Defendant conduct as set out above was and is life threatening to humans.

WHEREFORE, Plaintiff prays for judgment against the Defendant, Metropolitan Insurance Company d/b/a MetLife in an amount in excess of the federal court jurisdictional limit for actual damages and an amount in excess of the federal court jurisdictional limit for punitive damages together with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

MANSELL, ENGEL & COLE

By: _____
      Steven S. Mansell, OBA #10584
      Mark A. Engel, OBA #10796
      Kenneth G. Cole, OBA #11792
      M. Adam Engel, OBA #32384
      101 Park Avenue, Suite 665
      Oklahoma City, OK 73102-7201
      T: (405) 232-4100 ** F: (405) 232-4140
      Firm E-mail: mec@meclaw.net

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

3

# Exhibit 2-9

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

APR 2 4 2014

TIM RHODES
COURT CLERK

| | | |
|---|---|---|
| ANITA HOUCHIN, | | |
| | Plaintiff, | 30 |
| v. | | Case No: CJ - 2014 - 2365 |
| THE HARTFORD LIFE INSURANCE COMPANY, | | JURY TRIAL DEMANDED |
| | Defendant. | ATTORNEY LIEN CLAIMED |

## PETITION

COMES NOW the Plaintiff, and for her causes of action against the Defendant alleges and states:

### COUNT I - BAD FAITH

1.    Plaintiff and Plaintiff's mother, Dorothy Kendrick, purchased a $75,000 life insurance policy on the life of Dorothy Kendrick from The Hartford Life Insurance Company, policy no. 679783241.

2.    Plaintiff, Anita Houchin, was a beneficiary under this policy.

3.    On December 8, 2012, Dorothy Kendrick passed away.

4.    Plaintiff timely made a claim for policy benefits and has otherwise complied with all conditions precedent to receiving policy benefits.

5.    Defendant breached the contract and the implied covenant of good faith and fair dealing in the insurance contract, as a matter of standard business practice, in the following respects:

a.    failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendant knew that she was entitled to those benefits;

b.   failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.   withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

d.   refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e.   refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

f.   refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy; .

g.   failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

h.   not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i.   forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

j.   failing to properly evaluate any investigation that was performed;

k.   refusing to consider the reasonable expectations of the insured;

l.   failing and refusing to properly investigate and consider the insurance coverage promised to their insured; and,

all in violation of the implied covenant of good faith and fair dealing and resulting in financial benefit to the Defendant, Hartford Life Insurance Company.

6.      As a direct result of the above described wrongful acts and omissions by Hartford Life Insurance Company, Plaintiff has suffered loss of the coverage promised by Hartford Life Insurance Company, mental and emotional distress, costs to mitigate damages and other damages.

2

7.     Defendant's acts and omissions were willful and malicious or grossly reckless and wanton and Plaintiff is entitled to recover punitive damages.

**WHEREFORE**, Plaintiff, demands judgment against this Defendant, Hartford Life Insurance Company, in an amount in excess of $75,000.00 for compensatory damages and in an amount in excess of $75,000.00 for punitive damages plus interest, costs, attorney fees and all other relief which the Court deems just and equitable.

### COUNT II -- FALSE REPRESENTATION AND DECEIT

Plaintiff realleges all previous allegations and further alleges and states:

8.     The factual detail and particular who, what, when, and where, associated with this cause of action is set forth in this paragraph with as much specificity as is currently known to the Plaintiff.  On or about February 2007, the Plaintiff Anita Houchin was with her mother, Dorothy Kendrick at her mother's home in Ardmore, Oklahoma, where she lived with her husband.  Ms. Houchin and her mother had received a letter dated January 5, 2007 from The Hartford along with a rate schedule, an insurance disclosure, and an application coupon for them to fill out if they were interested in the coverage.  Based upon this information, the Plaintiff and her mother decided to buy this policy of insurance and to have it drafted from their checking account.  Anita Houchin and Dorothy Kendrick were both on this checking account.  In purchasing the insurance and maintaining the premiums, Anita Houchin and her mother, Dorothy Kendrick, relied upon the information in the letter, the accompanying page, and the policy certificate.  The letter from Hartford indicated that tragic accidents could happen to anyone at any time and that in seconds, your family's future and security could turn upside down.  The Hartford recommended increasing their accidental death and dismemberment coverage to supplement their family's financial security.  Mrs. Kendrick was already over 70 years old at the time of this letter.  The letter indicates that she could take advantage of a special enrollment period to increase her

3

coverage and that if she increased her coverage to $75,000 her monthly premium would be
$8.25. The letter urged Mrs. Kendrick and Ms. Houchin to act now to improve their family's
financial security. It indicated that this special enrollment offer allowed them to increase their
coverage emphasizing "WITH NO QUESTIONS ASKED". (Emphasis in the original). The
express language of the offer indicated that it would provide coverage for tragic accidents that
could happen to anyone. The sales information wholly fails to disclose that a person's current
health condition, current age, or susceptibility to accidental death as a result of their existing
health status would in any way affect their eligibility for coverage for such tragic accidents. The
letter indicates that benefits reduce 50% at age 70, but Mrs. Kendrick was already over 70 years
old and the letter still represented that she would increase her coverage to $75,000 by payment of
$8.25. The letter is written to express that a person was eligible for the coverage without regard
to their current health or age and yet the Defendant knows that they routinely deny life benefits
under this policy based upon pre-existing health conditions that might make a person more
susceptible to dying following an accident. The letter promises to provide added financial
security for the family and Mrs. Kendrick and Ms. Houchin decided to pay the $8.25 per month
for this coverage of $75,000. At the time that Hartford sent these solicitation materials to Mrs.
Kendrick and her family, they knew the very restricted routine practice of their company in
actually providing benefits under these life insurance policies. Hartford knew that they routinely
denied these accidental life benefits to persons that did not enjoy optimum health. Nevertheless,
they represented that the policies were sold with no questions asked, no underwriting or health
questions, and broad promises of financial security in the event of tragic accidents. Mrs.
Kendrick suffered a tragic accident on December 8, 2012 when she aspirated vomit in the
morning and died several hours later. The company's broad promises of financial security in

4

connection with any tragic accident were not accompanied by any disclosures of information that such an accidental death could be affected by someone's existent health conditions. The promises were made to a woman in her seventies. In fact, the solicitation of materials infer just the opposite. These broad representations of financial security without any other disclosure are particularly poignant in light of the manner in which Hartford actually adjusts and denies claims under these accidental life policies. Hartford's actual criteria and consideration for coverage and provision of this accidental death coverage as a routine practice in the administration of claims under these policies demonstrates the deceit involved in the solicitation materials. Hartford intentionally conveyed that even an elderly person was eligible for coverage ($75,000 of coverage) without regard to health at a time that they knew they would likely deny any accidental health claim on the basis of contributing health issues. Their sales promises are inconsistent with the manner in which they deny claims. Plaintiff will immediately supplement any factual details with specificity that the Plaintiff can identify that are not set forth above.

9.      The described representations were material and false and made at a time when Defendants knew they were false, or made as a positive assertion recklessly, without any knowledge of the truth.

10.      The described representations were made with the intention that Plaintiff should act upon them in purchasing and renewing this policy and the Plaintiff did rely upon them to her detriment in the purchase and renewal payments on these life policies.

11.      The described representations were words or conduct which created an untrue or misleading impression of the actual past or present facts in the mind of the Plaintiff.

12.      The described omissions and non-disclosure involved concealing and failing to disclose facts which Defendants had a duty to disclose. Such facts were material and were

5

concealed or failed to be disclosed with intent of creating a false impression of the actual facts in the mind of the Plaintiff.

13.    Defendants concealed or failed to disclose these facts with the intention that they be acted upon by Plaintiff and Plaintiff did act in reliance upon it to his detriment.

14.    The described false representations, concealment and deceit induced the Plaintiff to purchase these insurance policies and Plaintiff, acting in reliance thereon, suffered injury.

15.    As a direct result of the described false representations, concealment, and deceit, Plaintiff suffered loss of the policy coverage promised, emotional distress, frustration and duress and other consequential damages.

16.    Defendants' acts and omissions in this cause of action were with reckless disregard for the rights of others and/or were done intentionally and with malice and therefore Plaintiff is entitled to recover punitive damages.

17.    Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff prays for judgment against the Defendant, The Hartford Insurance Company for her damages, in an amount in excess of $75,000.00 compensatory damages and in an amount in excess of $75,000.00 punitive damages with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

MANSELL ENGEL & COLE

By: _____
Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
101 Park Avenue, Suite 665
Oklahoma City, Oklahoma  73102
T: (405) 232-4100    F: (405) 232-4140
Email:  mansell-engel@coxinet.net
ATTORNEYS FOR PLAINTIFF

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

6

# Exhibit 2-10

**FILED IN DISTRICT COURT**
IN THE DISTRICT COURT OF OKLAHOMA COUNTY OKLAHOMA COUNTY
STATE OF OKLAHOMA

JAN 2 4 2020

| | | |
|---|---|---|
| DREW HOWIE, | | **RICK WARREN** |
| | Plaintiff, | **COURT CLERK** |
| | | 40 |
| v. | | Case No: |
| | | CJ-2020-458 |
| AMERICAN   RISK   INSURANCE COMPANY, | | |
| | Defendants. | **JURY TRIAL DEMANDED** |
| | | **ATTORNEY LIEN CLAIMED** |

## PETITION

COMES NOW Plaintiff, Drew Howie ("Plaintiff"), and for his causes of action against Defendant, American Risk Insurance Company ("ARI" or "Defendant ARI"), and alleges and states:

1.      At all times material hereto, Plaintiff insured his home and contents under a policy of insurance with ARI, policy number OKHO074781-01. The policy was in full force and effect at all material times hereto.

2.      Defendant ARI is licensed in the state of Oklahoma as a property and casualty insurer.

3.      On August 25, 2019, Plaintiff's home and property sustained a covered loss when it was struck by lightning during a storm.

4.      Plaintiff gave timely notice of this insurance loss and claim to Defendant ARI and otherwise complied with all terms and conditions of the policy in order to receive policy benefits.

5.      The acts and occurrences that are the subject of this lawsuit occurred within the state of Oklahoma and occurred within Oklahoma County, Oklahoma.  Therefore, jurisdiction and venue are proper within Oklahoma County, Oklahoma.

    6.     ARI breached the subject insurance policy by failing and refusing to pay the proper amounts due under the policy for the covered damage to the Plaintiff's home.

    7.     In its handling of Plaintiff's claims, Defendant breached the insurance contract and the implied covenant of good faith and fair dealing, as a matter of standard business practice, in the following respects:

a.    failing and refusing payment and other policy benefits for the covered damage to Plaintiff's home at a time when Defendant knew that it was entitled to those benefits;

b.    failing to properly investigate Plaintiff's claim and to obtain additional information both in connection with the original refusal and following the receipt of additional information after reinspection of the home at request of Plaintiff's representatives;

c.    refusing to honor Plaintiff's claim in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

d.    refusing to honor Plaintiff's claim in some instances by applying restrictions not contained in the policy;

e.    refusing to honor Plaintiff's claim in some instances by knowingly misconstruing and misapplying provisions of the policy;

f.    failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claim arising under these policies, to include Plaintiff's claim;

g.    not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim once liability had become reasonably clear;

h.    forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

i.    failing to properly evaluate any investigation that was performed;

j.    refusing to consider the reasonable expectations of the insured;

k.    failing and refusing to properly investigate and consider the insurance coverage Defendant and its agent promised to their insured;

l.    forcing the insured to hire an attorney to obtain proper payment of property claims;

m.    delaying payment of certain benefits;

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to Defendant.

8.       Defendant acted unreasonably and in bad faith in delaying, denying and underpaying Plaintiff's claims.

9.       As a direct and proximate result of Defendant's breach of contract and breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered financial loss, physical bodily injury, embarrassment, anxiety, frustration and mental and emotional distress and other incidental damages.

10.      Defendant recklessly disregarded and/or intentionally and with malice breached its duty to deal fairly and act in good faith entitling Plaintiff to recover punitive damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant, American Risk Insurance Company, both for compensatory damages and punitive damages, with interest and costs of this action, for a reasonable attorney fee and for such other relief as may be appropriate.  The amount sought as damages exceeds the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

MANSELL ENGEL & COLE

By: _____

Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
Zachary K. Housel, OBA #32802
204 North Robinson Avenue, 21st Floor
Oklahoma City, Oklahoma 73102
T: (405) 232-4100 ** F: (405) 232-4140
Email:  zhousel@meclaw.net

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

**ATTORNEYS FOR PLAINTIFF**

# Exhibit 2-11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIE LOU MAYS,<br><br>Plaintiff,<br><br>v.<br><br>LINCOLN NATIONAL LIFE<br>INSURANCE COMPANY, a foreign<br>corporation, and TRUSTMARK<br>INSURANCE COMPANY, a foreign<br>corporation,<br><br>Defendants. | Case No: CIV-15-763-M<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW the Plaintiff, Jennie Lou Mays, and for her causes of action against the Defendants alleges and states:

1.    Plaintiff, Jennie Lou Mays, is a resident of Pottawatomie County, State of Oklahoma.

2.    Defendant, Lincoln National Life Insurance Company, is a foreign corporation incorporated, domiciled and maintains its principal place of business in Boston, Massachusetts. Lincoln National Life Insurance Company is authorized to transact business within the State of Oklahoma and may be served with process through its designated service agent, identified as John Doak, Oklahoma Insurance Commissioner, 5 Corporate Plaza, Suite 100, 3625 NW 56th Street, Oklahoma City, Oklahoma 73112.

3.    Defendant, Trustmark Insurance Company, is a foreign corporation incorporated, domiciled and maintains its principal place of business in Fort Wayne,

Indiana. Trustmark Insurance Company is authorized to transact business within the State of Oklahoma and may be served with process through its designated service agent, identified as John Doak, Oklahoma Insurance Commissioner, 5 Corporate Plaza, Suite 100, 3625 NW 56th Street, Oklahoma City, Oklahoma 73112.

4.      The amount in controversy is in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

5.      Based on the foregoing, this Court has jurisdiction over these parties and this subject matter and venue is proper herein.

6.      The involved long term care insurance policy, Policy No. TX3339, was in full force and effect at all times pertinent hereto.

7.      Plaintiff, Jennie Lou May, purchased a long term care insurance policy from Lincoln National Life Insurance Company/Trustmark Life Insurance Company and made premium payments for this coverage.

8.      Plaintiff timely made a claim for policy benefits with Lincoln National Life Insurance Company/Trustmark Life Insurance Company and has otherwise complied with all conditions precedent to receiving policy benefits.

9.      Defendants breached the contract and the implied covenant of good faith and fair dealing in the insurance contract, as a matter of standard business practice, in the following respects:

 a. failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendants knew that she was entitled to those benefits;

 b. failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

2

c.     withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

d.     refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e.     refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

f.     refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.     failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

h.     not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i.     forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendants knew were payable;

j.     failing to properly evaluate any investigation that was performed;

k.     refusing to consider the reasonable expectations of the insured;

l.     failing and refusing to properly investigate and consider the insurance coverage promised to their insured;

m.     intentionally manipulating the policy language to support an unjustifiable denial;

n.     handling claims and providing benefits in a manner that is inconsistent with the policy language and promises made to the insured at the time of issuance of the policy;

o.     intentionally processing claims with conduct the Defendant knows is different than the benefits, claims service, and coverage that the Defendant promises and represents to their insured; and,

p.     improperly refusing coverage for mental conditions,

all in violation of the implied covenant of good faith and fair dealing and resulting in financial benefit to the Defendants.

10.     As a direct result of the above described wrongful acts and omissions by Defendants, Plaintiff has suffered loss of the coverage promised by Defendants, mental and emotional distress, costs to mitigate damages and other damages.

11.     Defendants' acts and omissions were life threatening to humans or intentional and unjustifiable or grossly reckless and wanton and Plaintiff is entitled to recover punitive damages.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants Lincoln National Life Insurance Company and Trustmark Insurance Company for her damages, both compensatory damages and punitive damages, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate. The amount sought as damages in in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

MANSELL ENGEL & COLE

By: s/Mark A. Engel
    Steven S. Mansell, OBA #10584
    Mark A. Engel, OBA #10796
    Kenneth G. Cole, OBA #11792
    101 Park Avenue, Suite 665
    Oklahoma City, OK 73102
    T: (405) 232-4100 ** F: (405) 232-4140
    E-mail: mansell-engel@coxinet.net
    ATTORNEYS FOR PLAINTIFF

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

# Exhibit 2-12

STATE OF OKLAHOMA
Comanche County
FILED in the
Office of the Court Clerk

JUN 3 0 2017

By_____
Deputy

## IN THE DISTRICT COURT OF COMANCHE COUNTY
## STATE OF OKLAHOMA

ROBERT L. McDANIEL and JOYCE L.
McDANIEL,

        Plaintiffs,

v.

CONTINENTAL CASUALTY CO., a
corporation; and MAX CLARK, an
individual,

        Defendants.

Case No: CJ-2017-484

**JURY TRIAL DEMANDED**

## PETITION

COME NOW, the Plaintiffs, Robert L. McDaniel and Joyce L. McDaniel, and for their causes of action against Defendants allege and state as follows:

### COUNT I

1.  CCC acting through its insurance agent Max Clark, sold an individual long term care insurance policy to Robert and Joyce McDaniel effective April 1, 2013. This insurance policy was in force at all times material hereto.

2.  Defendant Max Clark was the licensed agent and producer for CNA and CCC on this policy.

3.  While insured under this policy Joyce McDaniel became chronically ill requiring long term care. Robert McDaniel incurred expenses for her care and treatment. Mr. McDaniel timely and properly made a claim to Defendants for policy benefits and otherwise met all conditions precedent for payment of the policy benefits.

4.  CCC breached its insurance contract with Plaintiffs by refusing to properly pay full policy benefits and by improperly asserting exclusions from coverage.

5.    In its handling of Plaintiffs' claims and as a matter of routine business practice and handling like claims under these policies, CCC breached the insurance policy and its duty to deal fairly and act in good faith towards the Plaintiffs by:

a.    failing and refusing payment and other policy benefits on behalf of Plaintiffs at a time when Defendant knew that they were entitled to those benefits;

b.    failing to properly investigate Plaintiffs' claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.    withholding payment of the benefits on behalf of Plaintiffs knowing that Plaintiffs' claims for those benefits were valid;

d.    refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or applicable law;

e.    refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

f.    refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.    failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

h.    not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i.    forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

j.    failing to properly evaluate any investigation that was performed;

k.    handling claims and providing benefits in a manner that is inconsistent with the policy language and promises made to the insured at the time of issuance of the policy; and,

l.    intentionally processing claims with conduct the Defendant knows is different than the benefits, claims service, and coverage that the Defendant promises and represents to their insured;

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to the Defendant.

6.     As a proximate result of Defendant CCC's acts and omissions described above, Plaintiffs have suffered the loss of the policy coverage, physical bodily injury, mental and emotional distress, financial hardship, and other incidental and consequential damages.

7.     Defendant CCC has been guilty of reckless disregard for the rights of others or has acted intentionally and with malice entitling Plaintiffs to recover punitive damages. Defendant CCC's conduct as set out above was and is life threatening to humans.

**WHEREFORE**, Plaintiffs pray for judgment against the Defendant, Continental Casualty Company in an amount in excess of $75,000.00 actual damages and an amount in excess of $75,000.00 punitive damages together with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

**COUNT II**

Plaintiffs incorporate all previous allegations and further allege and state:

8.     The following is Plaintiffs' best and most complete current knowledge and information regarding the false representations, discussions and conversations with Defendant at the present time. As discovery progresses additional facts may become known and will be supplemented as required by the Court's Scheduling Order or the pleading code and/or discovery code.

9.     CNA Financial Corporation does business as CNA. CNA is a registered service mark of CNA Financial Corporation. CNA was at the time of the sale of this

3

policy the fourth largest commercial insurance company, the ninth largest property-casualty company and the 40th largest life insurance company in the country.  CNA solicits and sells life and health insurance, including long term care insurance, in Oklahoma.  CNA determines which of its subsidiary companies underwrite the various different kinds of insurance that it sells.  For long term care insurance CNA has arranged for Continental Casualty Company (CCC) to underwrite and issue the policy. CNA controls all operations of CCC including the marketing and sale of insurance, the handling of claims, the division of premiums and responsibility for claim payments.

10.    In early 2003, Defendant's agent, Max Clark, advertised in the Lawton newspaper that he would be holding a free estate planning and insurance seminar in Lawton.  Robert McDaniel attended the seminar and met Mr. Clark.  Mr. Clark presented long term care insurance coverage to Mr. McDaniel as a way to protect assets and a good estate planning strategy.  This was in January or February 2003.  Mr. Clark stated the long term care coverage he offered was with CNA, a very reputable and financially sound insurance company and that Mr. McDaniel could buy this insurance on himself and his wife to cover long term care expenses if either became frail and were unable to take care of themselves or if either of them were stricken with Alzheimer's.  Mr. McDaniel agreed that Mr. Clark could come to his home to further discuss this coverage with him and his wife, Joyce.  Mr. Clark came to their home and again explained and represented that the insurance would be with CNA, that the company was financially sound and very conscientious and prompt in handling claims, that people in their age bracket should have this coverage, that it was affordable, and that it was very valuable protection for long term care expenses which were likely as they aged.  Mr. Clark specifically explained that this policy would pay benefits for care at

4

home or in a facility if either of them needed help with their daily activities or if they became disabled with Alzheimer's.  Private nurses or home health care workers are needed on a daily basis, he explained, and the $80.00 per day in benefits would cover most or all of the needed care for home health care providers who have to come to the home to help provide care.  He didn't say there was a requirement about who the person worked for.  He that he represented the claim process was easy and the policy protection was simple because all they had to show is they had physical or mental problems or incapacities that prevent one or both from taking care of themselves and CNA would then start paying and they would not have to keep paying premiums.  Mr. Clark said CNA may want to have its own nurse or doctor verify that care was needed then CNA would start paying $80.00 per day for the necessary care, either at home or in a nursing home or other long term care facility.  Mr. Clark did not say or explain there were any loopholes in the coverage.  Getting the benefits when one of them got so old that they needed help at home was described as simply, easy, and straight forward. CNA, he said, would start paying $80.00 a day if either of them were diagnosed with Alzheimer's or needed help with the daily life activities and there would be a waiver of the premiums so he wouldn't have to keep paying for the insurance once the insurance company started paying benefits.

11.    These material representations were false.

12.    Clark made these representations when he knew they were false or made them as a positive assertion recklessly without any knowledge of its truth.

13.    Defendant made the representations with the intention it should be acted upon by Plaintiffs.

14.    Plaintiffs acted in reliance upon these representations.

15.     Plaintiffs thereby suffered injury.

16.     Defendant concealed or failed to disclose a past or present fact which he/she had a duty to disclose.

17.     The fact that was concealed or not disclosed was material.

18.     Defendant concealed or failed to disclose this material fact with the intent of creating a false impression of the actual facts in the mind of Plaintiffs.

19.     Defendant concealed or failed to disclose this material fact with the intention that should be acted upon by Plaintiffs.

20.     Plaintiffs acted in reliance upon this concealment or failure to disclose.

21.     Plaintiffs thereby suffered injury in the form of emotional distress, loss of the promised benefits and other financial loss.

**WHEREFORE**, Plaintiffs pray for judgment against the Defendant, Continental Casualty Company and Defendant, Max Clark in an amount in excess of $75,000.00 actual damages and an amount in excess of $75,000.00 punitive damages together with interest and costs of this action, and for such other relief as may be appropriate.

MANSELL, ENGEL & COLE

Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
M. Adam Engel, OBA #32384
101 Park Avenue, Suite 665
Oklahoma City, OK 73102-7201
T: (405) 232-4100 ** F: (405) 232-4140
Firm E-mail: mec@meclaw.net

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

**ATTORNEYS FOR PLAINTIFFS**

6

# Exhibit 2-13

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR 26 2019

RICK WARREN
COURT CLERK

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA**

42

| | | |
|---|---|---|
| NEWVIEW OKLAHOMA, INC. | | |
| | Plaintiff, | **CJ-2019-2351** |
| v. | | Case No: |
| BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY, | | |
| | Defendant. | **JURY TRIAL DEMANDED** |

### PETITION

COMES NOW, the Plaintiff, NewView Oklahoma, Inc., and for its causes of action against the Defendant, Berkshire Hathaway Specialty Insurance Company, alleges and states as follows:

1.    Plaintiff, NewView Oklahoma, Inc., is a corporation organized under the laws of the State of Oklahoma with its principle place of business in Oklahoma City, Oklahoma County, Oklahoma.

2.    Defendant, Berkshire Hathaway Specialty Insurance Company (hereinafter "Berkshire Hathaway") is a foreign corporation, incorporated and domiciled in a state other than Oklahoma and maintains its principal place of business in Boston, Massachusetts.  Berkshire Hathaway is authorized to transact business within the State of Oklahoma and may be served with process through its designated service agent, identified as Glen Mulready, Oklahoma Insurance Commissioner, 5 Corporate Plaza, Suite 100, 3625 NW 56th Street, Oklahoma City, Oklahoma 73112.

3.    Plaintiff owns the involved commercial building, located in Oklahoma City, at 501 North Douglas Avenue, Oklahoma City, OK, and was insured by Berkshire

Hathaway, Policy No. 47-SPK-148097-02, effective October 1, 2016 to October 1, 2017. The subject policy was in full force and effect at all times pertinent hereto.

4.      This insured commercial building was damaged and suffered a covered loss during this policy period.

5.      Plaintiff gave proper and timely notice of this claim, cooperated in the claim, and otherwise complied with all conditions precedent for recovery under the subject insurance policy.

6.      Defendant denied Plaintiff's claim.

7.      In its handling of Plaintiff's claims, Defendant breached the insurance contract and breached the implied covenant of good faith and fair dealing in the insurance contract, as a matter of routine business practice in handling such claims, in the following respects:

a.      failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendant knew that it was entitled to those benefits;

b.      failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.      withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

d.      refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e.      refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

f.      refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.      failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

2

h.    not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i.    utilizing pre-determined positions to support denial rather than searching out objective information and evidence to evaluate the claim;

j.    forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

k.    failing to properly evaluate any investigation that was performed;

l.    attempting to shift to their insured the duties to fully investigate, properly evaluate, and promptly pay policy benefits;

m.    refusing to honor the full replacement cost coverage that it knows was promised to its insured; and,

n.    unreasonably delaying payment in order to force a lowball settlement of the claim;

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to the Defendant.

8.    As a result of Defendant's delays and refusal to honor the policy, Plaintiff has been damaged in loss of the policy benefits, time and expense in connection with Defendant's actions, loss of use of the building, interest and other consequential damages.

9.    Defendant's actions have been intentional and unjustifiable or in reckless disregard and Plaintiff is entitled to recover punitive damages.

**WHEREFORE**, Plaintiff, NewView Oklahoma, Inc., demands judgment against Defendant, Berkshire Hathaway Specialty Insurance Company, in an amount in excess of the jurisdictional amount in 28 U.S.C.A. §1332, plus interest, costs, attorney fees and all other relief which the Court deems just and equitable.

3

**MANSELL ENGEL & COLE**

By: _____

Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
M. Adam Engel, OBA #32384
204 North Robinson, 21st Floor
Oklahoma City, OK 73102-7201
T: (405) 232-4100 ** F: (405) 232-4140
Firm E-mail:  mec@meclaw.net

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

4

# Exhibit 2-14



**IN THE DISTRICT COURT OF PAYNE COUNTY**
**STATE OF OKLAHOMA**

IN THE DISTRICT COURT OF
Payne County, Oklahoma

**DEC 1 0 2014**

LISA LAMBERT, Court Clerk
Deputy

| | |
|---|---|
| ANTONIO ROBERTS, TAYNA ROBERTS, and JAMES ROBERTS, | |
| Plaintiffs, | |
| v. | Case No: |
| OXFORD LIFE INSURANCE COMPANY, a foreign corporation, and JACKIE RAE WILSON, individually, | CJ – 2014 – 514 |
| Defendants. | |

## PETITION

1.     Plaintiffs are the grown children of Mary Roberts, deceased.

2.     Plaintiffs were equal beneficiaries of a life insurance policy Mary Roberts purchased from Defendant, Jackie Rae Wilson as agent for Oxford Life Insurance Company, the issuer of the policy, insuring the life of Mary Roberts.

3.     Plaintiffs' mother, Mary Roberts departed this life June 20, 2014.

### FIRST CAUSE OF ACTION – INSURANCE BAD FAITH AND BREACH OF CONTRACT (AGAINST OXFORD)

4.     In its handling of Plaintiffs' claim, and as a matter of routine business practice in handling like claims under these policies, the Defendant Oxford Life breached the insurance agreement and its duty to deal fairly and act in good faith towards the Plaintiffs by:

    a.     failing and refusing payment and other policy benefits on behalf of Plaintiffs at a time when Defendant knew that they were entitled to those benefits;

    b.     failing to properly investigate Plaintiffs' claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

    c.     withholding payment of the benefits on behalf of Plaintiffs knowing that Plaintiffs' claims for those benefits were valid;

d.      refusing to honor Plaintiffs' claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e.      refusing to honor Plaintiffs' claims in some instances by applying restrictions not contained in the policy;

refusing to honor Plaintiffs' claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

f.      failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiffs' claims;

h.      not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' claims once liability had become reasonably clear;

i.      forcing Plaintiffs, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

j.      failing to properly evaluate any investigation that was performed; and

k.      improperly rescinding the policy as part of an abusive rescission practice;

all in violation of the covenant of good faith and fair dealing and resulting in a financial benefit to the Defendant.

5.      As a proximate result of Oxford's breach of contract and breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered the loss of the policy coverage, mental and emotional distress, embarrassment and other incidental damages.

6.      Oxford Life Insurance Company has been guilty of reckless disregard for the rights of Plaintiffs and has acted intentionally and with malice entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiffs pray for judgment against the Defendant, Oxford Life Insurance Company, for their damages, both compensatory damages and punitive damages, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate. The amount sought as damages is in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

2

## SECOND CAUSE OF ACTION – FALSE REPRESENTATION AND DECEIT
### (AGAINST OXFORD AND WILSON)

Plaintiffs incorporate all previous allegations and further allege and state:

7.      Defendant Jackie Rae Wilson was at all times material hereto an insurance agent authorized to represent Oxford Life Insurance Company in the solicitation and sale of life insurance policies in Oklahoma.

8.      Defendant Jackie Rae Wilson had previously sold a life insurance policy to Mary Roberts, policy number 7194814 issued by International Order of Foresters with offices in Buffalo, New York.

9.      On or about February 27, 2013, Defendant Jackie Rae Wilson went to Mary Roberts' home in Stillwater, Oklahoma for the purpose of selling her another insurance policy and thereby replacing the Foresters life insurance policy Mary Roberts already had in place.

10.      On February 27, 2013, Wilson induced Mary Roberts to purchase this Oxford Life Insurance Policy by falsely representing that her current life insurer, Foresters, had "gone under" and therefore she needed a new life insurance policy to replace this insurance.    This policy was in force and would have paid benefits for the death of Mary Roberts.

11.      Mary Roberts reasonably relied upon the representations of Defendant Wilson.

12.      In order to provide further inducement for Mary Roberts to replace her life insurance, Wilson further concealed from Mary Roberts the fact that she would now be subject to a new contestability waiting period.

13.      As a direct and proximate result of the false representations and deceit of Defendants Wilson and Oxford, Plaintiffs have suffered the loss of policy coverage, emotional distress, embarrassment and other incidental and consequential damages.

14.     The actions of Wilson and Oxford were willful and malicious or wanton and reckless and Plaintiffs are entitled to punitive damages.

WHEREFORE, Plaintiffs pray for judgment against the Defendants, Oxford Life Insurance Company and Jackie Rae Wilson, for their damages, both compensatory damages and punitive damages, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate. The amount sought as damages in in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

## THIRD CAUSE OF ACTION – NEGLIGENCE (AGAINST WILSON)

Plaintiffs incorporate all previous allegations and further allege and state:

15.     Oxford says it rescinded Mary Roberts's policy because of an answer on the application regarding her height and weight that Oxford contends was incorrect.

16.     Jackie Rae Wilson was familiar with Mary Roberts and had previously sold insurance to her. Wilson knew that Mary Roberts relied upon Wilson to properly advise her on insurance.

17.     If Mary Roberts's height and weight were an underwriting concern, Wilson should have explained this to Mary Roberts. Instead, Wilson concealed this information from Mary Roberts either intentionally or negligently.

18.     Defendant Wilson failed to use reasonable care in the solicitation and sale of this insurance policy to Mrs. Roberts.

19.     As a direct and proximate result of Defendant Wilson's negligence, Plaintiffs have suffered the loss of policy coverage, emotional distress, embarrassment and other incidental and consequential damages.

WHEREFORE, Plaintiffs pray for judgment against the Defendant, Jackie Rae Wilson, for their damages, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.  The amount sought as damages in in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

MANSELL & ENGEL, P.C.

By: _____
Steven S. Mansell, OBA# 10584
Mark A. Engel, OBA# 10796
Kenneth G. Cole, OBA#11792
101 Park Avenue, Suite 665
Oklahoma City, OK  73102
T:  (405) 232-4100 ** F: (405) 232-4140
ATTORNEYS FOR PLAINTIFF

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

# Exhibit 2-15

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| WALTER ROSS, an Individual,<br><br>                              Plaintiff,<br><br>v.<br><br>JOHN HANCOCK LIFE<br>INSURANCE COMPANY (USA), a<br>foreign insurance corporation,<br><br>                              Defendant. | Case No:      CIV-18-850-M<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1.      Walter Ross is a resident and citizen of El Reno, Canadian County, Oklahoma.

2.      Defendant, John Hancock Life Insurance Company (USA) is a foreign insurance company incorporated and with its principle place of business in the State of Massachusetts and doing business of insurance in Oklahoma utilizing the trade name "John Hancock Financial Services".

3.      Defendant sold an individual long-term care insurance policy to Walter Ross effective October 8, 2002.  Mr. Ross paid premiums and this insurance policy was in force since that date and at all times material hereto.

4.      Plaintiff Walter Ross needs long-term care assistance and timely and properly made claim to Defendant for policy benefits and met all conditions precedent for payment of the policy benefits.

5.      In its handling of Mr. Ross' claims, and as a matter of routine business practice in handling like claims under these policies, the Defendant breached the policy contract and breached its duty to deal fairly and act in good faith towards the Plaintiff by:

a.      failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendant knew that she was entitled to those benefits;

b.      failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.      withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

d.      refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e.      refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

f.      refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.      failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

h.      not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i.      forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

j.      failing to properly evaluate any investigation that was performed;

k.   handling claims and providing benefits in a manner that is inconsistent with the policy language and promises made to the insured at the time of issuance of the policy;

l.   intentionally processing claims with conduct the Defendant knows is different than the benefits, claims service, and coverage that the Defendant promises and represents to their insured; and,

m.   improperly refusing or failing to pay the waiver of premium benefit;

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to the Defendant.

6.   As a proximate result of Defendant's acts and omissions described above, Mr. Ross has suffered the loss of the policy coverage, interference with proper long-term care, physical bodily injury, mental and emotional distress, financial hardship, and other incidental and consequential damages.

7.   Defendant has been guilty of reckless disregard for the rights of others and/or has acted intentionally and with malice entitling Plaintiff to recover punitive damages. Defendant's conduct as set out above was and is life threatening to humans.

**WHEREFORE**, Plaintiff prays for judgment against the Defendant, John Hancock Life Insurance Company (USA), for his damages, both compensatory damages and punitive damages, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate. The amount sought as damages is in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

MANSELL, ENGEL & COLE

s/Mark A. Engel
Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
M. Adam Engel, OBA #32384
204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102-7100
Telephone: (405) 232-4100
Facsimile: (405) 232-4140
E-mail:  mec@meclaw.net

ATTORNEYS FOR PLAINTIFF

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIM

# Exhibit 2-16

*1018781728*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

JUL 2 2 2013

TIM RHODES
COURT CLERK

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

ROBERT SCHMIDT,

                              Plaintiff,

v.

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY, a foreign
corporation, SUNNY HOPPE, an
Individual, and KEVIN DIVELBISS, an
individual,

                              Defendants.

Case No:

## CJ-2013-4090

*JURY TRIAL DEMANDED*
*ATTORNEY LIEN CLAIMED*

## PETITION

COMES NOW Plaintiff, Robert Schmidt, and for his causes of action against the

Defendants alleges and states:

1.      At all times material hereto Plaintiff was insured under disability insurance

policies which were issued by The Northwestern Mutual Life Insurance Company.  Dr.

Schmidt's disability coverage through Northwestern was sold to him under several different

policy numbers and amendments thereto during the 1990s.

2.      Dr. Schmidt's disability insurance policies with Northwestern were all issued,

delivered, and/or renewed in the State of Oklahoma.

3.      Dr. Schmidt has a disability to his knee which, on or about January 2010,

caused Dr. Schmidt to be unable to perform the principal duties of his occupation. Dr.

Schmidt's regular occupation was a medical specialty for ERCP. Dr. Schmidt, at this time,

was unable to perform the normal principal duties of his ERCP occupation and was forced

to close his medical practice in Norman, Oklahoma and to change occupations.

## BREACH OF CONTRACT AND BREACH OF THE IMPLIED
## COVENANT OF GOOD FAITH AND FAIR DEALING

4.      Dr. Schmidt submitted a claim under the disability insurance policies with Northwestern and, otherwise complied with all conditions precedent to recover under the policies. This cause of action is against the Northwestern Mutual Life Insurance Company only.

5.      Defendants breached the insurance contract by failing and refusing to properly and promptly pay policy benefits to Plaintiff.

6.      Defendants further breached the implied covenant of good faith and fair dealing in the handling of Plaintiff's claims, and as a matter of routine claim practice in the handling of similar claims, by:

    a.      failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendants knew that they were entitled to those benefits;

    b.      failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

    c.      withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

    d.      refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

    e.      refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

    f.      refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

    g.      failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

    h.      not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i.      forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendants knew were payable;

j.      failing to properly evaluate any investigation that was performed; and

k.      manipulating the onset date of the disability in order to avoid Defendants' obligation under the disability policies rather than applying the facts to the policy coverage in a manner to support payment;

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to the Defendants.

6.      As a direct result of Defendant's breach of contract and breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered the loss of policy benefits, physical and emotional distress, and other consequential damages.

7.      Defendant's acts and omissions in violation of the implied covenant of good faith and fair dealing were grossly reckless and wanton and done intentionally and with malice and therefore Plaintiff is entitled to recover punitive damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant The Northwestern Mutual Life Insurance Company in an amount in excess of $75,000.00 compensatory damages and in an amount in excess of $75,000.00 punitive damages with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

## **FALSE REPRESENTATION, CONCEALMENT AND DECEIT**

Plaintiff realleges all previous allegations and further alleges and states:

8.      The soliciting agents, Sunny Hoppe and Kevin Divelbiss, were at all times material hereto authorized soliciting agents for the insurance company Defendant, The Northwestern Mutual Life Insurance Company.  Sunny Hoppe and Kevin Divelbiss were

the soliciting agents for the involved disability insurance policies.  This cause of action is against all three Defendants in this case.

9.      The factual detail and particular who, what, when, and where, associated with this cause of action is set forth in this paragraph with as much specificity as is currently known to the Plaintiff.  On or about January 12, 1992, Sunny Hoppe met with Dr. Schmidt in his medical office at Baylor Hospital in Dallas, Texas to sell him this disability coverage through the Defendant, Northwestern.  Dr. Schmidt was, at the time, in a two year fellowship at Baylor to become an ERCP specialist.  Ms. Hoppe explained that under this policy, Dr. Schmidt's ERCP specialty would be considered his occupation.  Ms. Hoppe represented that Dr. Schmidt would be considered disabled at any time that he could not perform the normal duties of his ERCP specialty.  She told Dr. Schmidt that the total disability income benefit amount of the policy would be payable as 100% disabled if he could not perform his normal duties of this specialty, even, for example, if he went back to work as an internal medicine practitioner.  Dr. Schmidt was considering a disability policy from New York Life Insurance Company at that time and Ms. Hoppe made a direct comparison to that policy.  Ms. Hoppe explained that the Northwestern disability policy would consider him 100% disabled if he could not do his ERCP specialty even if he continued doing diagnostic work or other work as a general gastroenterologist.  Dr. Schmidt relied upon these representations as the principal advantage and basis for his selection and purchase of this Northwestern Mutual disability coverage and in his continued purchases of upgraded amounts of further disability coverage from Northwestern.  On or about January 13, 1993, Dr. Schmidt met with Sunny Hoppe at the same Baylor Medical Offices and purchased an amendment to the disability coverage with Northwestern

significantly increasing the amount of the monthly disability payment. Ms. Hoppe again emphasized at that meeting that these greatly increased disability income benefits were available to him as an ERCP specialist because of his increased earning capacity as a specialist and that the full monthly amount would be paid, not only if he became totally disabled from being able to work at all, but at any time he suffered any disability that prevented him from continuing normally as a ERCP specialist. On or about December 18, 1993, Dr. Schmidt met with Sunny Hoppe at his medical office in Norman, Oklahoma and sold him additional extensions and increases of his disability coverage with Northwestern Mutual. Ms. Hoppe told Dr. Schmidt at that time that these disability policies had the same coverage as the rest of his disability insurance with Northwestern, but simply increased the monthly amount that he would be paid if he was ever unable to perform any of the regular duties involved in his ERCP specialty. At that time, she specifically told him that he was eligible for these increased monthly disability amounts because of his increased earnings capacity as an ERCP specialist and his earnings therefrom. At this occasion, Ms. Hoppe specifically asked Dr. Schmidt which procedure was the principal procedure for his specialty and the one that generated the principal income for him as a specialist and Dr. Schmidt confirmed it was ERCP. Ms. Hoppe reiterated that his specialty, ERCP was then considered his occupation under these policies and that he was insured 100% as an ERCP specialist. If he was unable to perform this specialty as a normal duty and part of such an ERCP specialist practice, then he would be entitled to these full monthly benefits – even if he was still able to work as a gastroenterologist physician in some other capacity. On or about August 28, 1997, Kevin Divelbiss met with Dr. Schmidt at his medical office in Norman, Oklahoma to solicit and sell the final increase in Dr. Schmidt's disability coverage

with Northwestern. It was just following Dr. Schmidt's birthday and Ms. Divelbiss explained that he was eligible for the increase monthly disability benefit based upon his increased age and his specialization. Mr. Divelbiss explained that he was just making sure that Dr. Schmidt maintained the maximum monthly benefit amount that would be applicable for him. Mr. Divelbiss specifically confirmed that Dr. Schmidt would be considered 100% disabled if he were unable to do his ERCP specialty. Mr. Divelbiss, like Ms. Hoppe, emphasized that under these policies, Dr. Schmidt's ERCP specialty was his occupation and the full stated disability benefit of the policy would be payable if he was ever unable to perform any regular, normal duties of such an ERCP specialist. Dr. Schmidt explained to Mr. Divelbliss that this particular aspect of the policy for his particular specialization was always the basis for him choosing and maintaining this disability coverage with Northwestern. Mr. Divelbiss indicated that he understood and could see why and that the disability coverage was excellent since Dr. Schmidt could continue as a practicing gastroenterologist while still receiving the full policy benefit because of losing his ability to perform his specialty, which, of course, would mean a loss of income. On all of the above described occasions, both of the Northwestern Mutual agents wholly omitted and failed to disclose anything with regard to partial disability or any type of partial disability or coverage under these policies. Their emphasis was always on the 100% disability payments tied precisely to his ERCP specialty and they never mentioned or disclosed anything relative to partial disability or any distinction between it and the total disability they described payable as the full monthly benefit under these policies. Neither agent discussed any partial payments based upon a decrease in earnings from leaving his specialty but, instead, specifically represented that a change from his specialty would be considered a 100%

disability with full payment of the monthly amounts.    The agents omitted and failed to disclose anything regarding the difference between an initial period and any subsequent time periods, but, instead, specifically represented that the total monthly benefits would continue in the event of any disability from his ERCP specialty for the life of the policies. Plaintiff will immediately supplement any factual details with specificity that the Plaintiff can identify that are not set forth above.

10.    The described representations were material and false and made at a time when Defendants knew they were false, or made as a positive assertion recklessly, without any knowledge of the truth.

11.    The described representations were made with the intention that Plaintiff should act upon them in purchasing this policy and the Plaintiff did rely upon them to his detriment.

12.    The described representations were words or conduct which created an untrue or misleading impression of the actual past or present facts in the mind of the Plaintiff.

13.    The described omissions and non-disclosure involved concealing and failing to disclose facts which Defendants had a duty to disclose.  Such facts were material and were concealed or failed to be disclosed with intent of creating a false impression of the actual facts in the mind of the Plaintiff.

14.    Defendants concealed or failed to disclose these facts with the intention that they be acted upon by Plaintiff and Plaintiff did act in reliance upon it to his detriment.

15.     The described false representations, concealment and deceit induced the Plaintiff to purchase these insurance policies and Plaintiff, acting in reliance thereon, suffered injury.

16.     As a direct result of the described false representations, concealment, and deceit, Plaintiff suffered loss of the policy coverage promised to him, emotional distress, frustration and duress and other consequential damages.

17.     Defendants' acts and omissions in this cause of action were with reckless disregard for the rights of others and/or were done intentionally and with malice and therefore Plaintiff is entitled to recover punitive damages.

18.     Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff pray for judgment against the Defendant, Northwestern Mutual Life Insurance Company, Sunny Hoppe and Kevin Divelbiss, for his damages, in an amount in excess of $75,000.00 compensatory damages and in an amount in excess of $75,000.00 punitive damages with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
**MANSELL ENGEL & COLE**
101 Park Avenue, Suite 665
Oklahoma City, OK 73102
Telephone: (405) 232-4100
Facsimile: (405) 232-4140
E-mail:  mansell-engel@coxinet.net

ATTORNEYS FOR PLAINTIFFS

*JURY TRIAL DEMANDED*
*ATTORNEY LIEN CLAIMED*

# Exhibit 2-17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CATHERINE D. SPENCER,<br><br>                             Plaintiff,<br><br>v.<br><br>GENWORTH FINANCIAL<br>ASSURANCE CORPORATION,<br><br>                             Defendant. | Case No:   CIV-16-1451-F<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, the Plaintiff, Catherine D. Spencer, and for her cause of action against Defendant alleges and states:

1.      Catherine D. Spencer is a resident of Oklahoma City, Oklahoma.

2.      Defendant, Genworth Financial Assurance Corporation, formerly known as General Electric Capital Assurance Company, is a foreign insurance company incorporated and with its principle place of business in the State of Virginia and doing business of insurance in Oklahoma.

3.      Venue is correct in the Western District and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the parties have diverse citizenship and the amount in controversy exceeds $75,000.00.

4.      Defendant, Genworth Financial Assurance Corporation sold an individual long term care insurance policy to Catherine D. Spencer effective

February 13, 2002.   This insurance policy was in force at all times material hereto.

5.     Plaintiff Catherine D. Spencer became chronically ill and incurred expenses for care and treatment and timely and properly made claim to Defendant for policy benefits and met all conditions precedent for payment of the policy benefits.

6.     Defendant breached its contract with Plaintiff by refusing to pay policy benefits and by improperly asserting exclusions from coverage.

7.     In its handling of Plaintiff's claims, and as a matter of routine business practice in handling like claims under these policies, the Defendant breached the policy contract and breached its duty to deal fairly and act in good faith towards the Plaintiff by:

a.     failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendant knew that she was entitled to those benefits;

b.     failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.     withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

d.     refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e.     refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

f.      refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.      failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

h.      not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i.      forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

j.      failing to properly evaluate any investigation that was performed;

k.      handling claims and providing benefits in a manner that is inconsistent with the policy language and promises made to the insured at the time of issuance of the policy;

l.      intentionally processing claims with conduct the Defendant knows is different than the benefits, claims service, and coverage that the Defendant promises and represents to their insured;

m.      trying to refuse payment of benefits by ignoring communications from insureds; and,

n.      refusing to correspond with insureds to avoid payment of claim;

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to the Defendant.

8.      As a proximate result of Defendant's acts and omissions described above, Plaintiff has suffered the loss of the policy coverage, physical bodily injury, mental and emotional distress, financial hardship, and other incidental and consequential damages.

9.      Defendant has been guilty of reckless disregard for the rights of others or has acted intentionally and with malice entitling Plaintiff to recover

3

punitive damages.   Defendant's conduct as set out above was and is life threatening to humans.

**WHEREFORE**, Plaintiff prays for judgment against the Defendant, Genworth Financial Assurance Company, in an amount in excess of $75,000.00 actual damages and an amount in excess of $75,000.00 punitive damages with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

MANSELL, ENGEL & COLE

s/Adam Engel
Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
Adam Engel, OBA #32384
101 Park Avenue, Suite 665
Oklahoma City, OK 73102
T: (405) 232-4100 ** F: (405) 232-4140
E-mail: mec@meclaw.net

ATTORNEYS FOR PLAINTIFF

# Exhibit 2-18

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA**

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

AUG 1 3 2019

RICK WARREN
COURT CLERK

41

| | |
|---|---|
| TRINA STOKES and LADONNA BROWN, | |
| Plaintiffs, | Case No. CJ-2019-4500 |
| v | |
| GLOBE LIFE AND ACCIDENT INSURANCE COMPANY, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## PETITION

COME NOW the Plaintiffs, Trina Stokes and LaDonna Brown, and for their cause of action against the Defendant, Globe Life and Accident Insurance Company, allege and state:

1.      Plaintiff, Trina Stokes, is a resident of Becker, Sherburn County, Minnesota, and citizen of the State of Minnesota.

2.      Plaintiff, LaDonna Brown, is a resident of Muskogee, Muskogee County, and a citizen of the State of Oklahoma.

1.      Defendant, Globe Life and Accident Insurance Company ("Globe Life") Defendant, Globe Life and Accident Insurance Company, ("Globe") is a foreign corporation incorporated and domiciled in a state other than Oklahoma.  Globe Life is authorized to transact business within the State of Oklahoma and may be served with process through their designated service agent, identified as Glen Mulready, Oklahoma Insurance Commissioner, 5 Corporate Plaza, Suite 100, 3625 NW 56th Street, Oklahoma City, Oklahoma 73112.

3.     Plaintiffs, Trina Stokes and LaDonna Brown are the beneficiaries of a life insurance policy issued by Defendant Globe Life on the life of Dawn E. Crawford. Plaintiff, Trina Stokes is the niece of the decedent and LaDonna Brown is the sister of the decedent.

4.     Ms. Crawford died on May 13, 2018 while this life insurance policy was in force.

5.     Plaintiffs submitted a claim and proper proof of loss to Defendant and met all conditions precedent for payment of the life insurance policy benefit.

6.     Defendant wrongfully denied this claim and refused payment of policy benefits.

7.     In their handling of Plaintiffs' claim, and as a matter of routine business practice in handling like claims under these policies, the Defendant intentionally breached the insurance contract and the implied covenant of good faith and fair dealing by:

    a.    failing and refusing payment and other policy benefits on behalf of Plaintiffs at a time when Defendant knew that they were entitled to those benefits;

    b.    failing to properly investigate Plaintiffs' claim and to obtain additional information both in connection with the refusal and following the receipt of additional information;

    c.    withholding payment of the benefits on behalf of Plaintiffs knowing that Plaintiffs' claim for those benefits was valid;

    d.    refusing to honor Plaintiffs' claim in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

    e.    refusing to honor Plaintiffs' claim in some instances by applying restrictions not contained in the policy;

2

f.  refusing to honor Plaintiffs' claim in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.  failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiffs' claim;

h.  not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' claim once liability had become reasonably clear;

i.  forcing Plaintiffs, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable; and,

j.  failing to properly evaluate any investigation that was performed,

all in violation of the covenant of good faith and fair dealing and resulting in a financial benefit to the Defendant.

8.  As a proximate result of the Defendant's breach of contract and the implied covenant of good faith and fair dealing, Plaintiffs have suffered the loss of the policy benefits, anxiety, worry, embarrassment, mental and emotional distress, and other incidental damages.

9.  Defendant has acted intentionally and with malice towards Plaintiffs or have been guilty of reckless disregard for the rights of Plaintiffs entitling Plaintiffs to punitive damages.

**WHEREFORE**, Plaintiffs pray for judgment against the Defendant, Globe Life and Accident Insurance Company, for their damages, in an amount in excess of the jurisdictional amount required for diversity jurisdiction pursuant to 28 U.S.C. §1332, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

3

MANSELL ENGEL & COLE

By:_____
Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
M. Adam Engel, Oba #32384
204 N. Robinson Avenue, 21st Floor
Oklahoma City, OK 73102-7001
T: (405) 232-4100 ** F: (405) 232-4140
Firm E-mail:  mec@meclaw.net

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**

**ATTORNEYS FOR PLAINTIFFS**

4

# Exhibit 2-19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BETTY TURNEY,<br><br>                                    Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE<br>COMPANY,<br><br>                                    Defendant. | Case No:  CIV-17-285-R<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, the Plaintiff, Betty Turney, and for her cause of action against Defendant, Metropolitan Life Insurance Company, alleges and states as follows:

1.     Betty Turney is a resident of Tulsa, Tulsa County, Oklahoma.  Ms. Turney is a citizen of the State of Oklahoma.

2.     Defendant, Mid-Continent Casualty Company, (hereinafter "Mid-Continent") is a foreign corporation incorporated and domiciled in the State of Ohio.  It maintains its principal place of business in Tulsa, Oklahoma, is authorized to transact business within the State of Oklahoma and may be served with process through its designated service agent, identified as John Doak, Oklahoma Insurance Commissioner, 5 Corporate Plaza, Suite 100, 3625 NW 56th Street, Oklahoma City, Oklahoma 73112.

3.     The amount involved is in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

4.     Based on the foregoing, this Court has jurisdiction over these parties and the subject matter and venue is proper herein.

5.     At all times material hereto the Plaintiff was insured under a MetLife Long-Term Care insurance policy, policy number 999580077.

6.     Defendant, Metropolitan Life Insurance Company sold an individual long term care insurance policy to Betty Turney effective February 13, 2002. This insurance policy was in force at all times material hereto.

7.     Plaintiff Betty Turney became chronically ill and incurred expenses for care and treatment and timely and properly made claim to Defendant for policy benefits and met all conditions precedent for payment of the policy benefits.

8.     Defendant breached its contract with Plaintiff by refusing to pay policy benefits and by improperly asserting exclusions from coverage.

9.     In its handling of Plaintiff's claims, and as a matter of routine business practice in handling like claims under these policies, the Defendant breached the policy contract and breached its duty to deal fairly and act in good faith towards the Plaintiff by:

a.     failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendant knew that she was entitled to those benefits;

b.     failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.   withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

d.   refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or applicable law;

e.   refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

f.   refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.   failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

h.   not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i.   forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

j.   failing to properly evaluate any investigation that was performed;

k.   handling claims and providing benefits in a manner that is inconsistent with the policy language and promises made to the insured at the time of issuance of the policy; and,

l.   intentionally processing claims with conduct the Defendant knows is different than the benefits, claims service, and coverage that the Defendant promises and represents to their insured;

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to the Defendant.

10.   As a proximate result of Defendant's acts and omissions described above, Plaintiff has suffered the loss of the policy coverage, physical bodily

injury, mental and emotional distress, financial hardship, and other incidental and consequential damages.

11.    Defendant has been guilty of reckless disregard for the rights of others or has acted intentionally and with malice entitling Plaintiff to recover punitive damages.   Defendant's conduct as set out above was and is life threatening to humans.

**WHEREFORE**, Plaintiff prays for judgment against the Defendant, Metropolitan Life Insurance Company, in an amount in excess of $75,000.00 actual damages and an amount in excess of $75,000.00 punitive damages with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

**MANSELL, ENGEL & COLE**

s/Mark A. Engel_____
Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
M. Adam Engel, OBA #32384
101 Park Avenue, Suite 665
Oklahoma City, OK 73102
T: (405) 232-4100 ** F: (405) 232-4140
E-mail:  mec@meclaw.net

ATTORNEYS FOR PLAINTIFF

# Exhibit 2-20

FILED
GARFIELD COUNTY, OKLA

**IN THE DISTRICT COURT OF GARFIELD COUNTY**
**STATE OF OKLAHOMA**

JAN 2 3 2017

JANELLE M SHARP
COURT CLERK
BY_____
DEPUTY COURT CLERK

| | |
|---|---|
| WESLEY M. WHITMAN, | |
| Plaintiff, | Case No: CJ-2017-25-02 |
| v. | |
| HUMANA INSURANCE COMPANY, a foreign corporation, | *JURY TRIAL DEMAND* |
| Defendant. | |

## PETITION

COMES NOW Plaintiff, Wesley M. Whitman, and for his causes of action against the Defendant allege and state:

1.    Plaintiff, Wesley M. Whitman is a resident of Enid, Garfield County, Oklahoma. Wesley M. Whitman is a citizen of the State of Oklahoma.

2.    Defendant, Humana Insurance Company, ("Humana") is a foreign corporation, incorporated and domiciled in the State of Wisconsin and maintains its principal place of business in a state other than Oklahoma. Humana is authorized to transact business within the State of Oklahoma and may be served with process through its designated service agent, identified as John Doak, Oklahoma Insurance Commissioner, 5 Corporate Plaza, Suite 100, 3625 NW 56th Street, Oklahoma City, Oklahoma 73112.

3.    At all times material hereto Plaintiff was insured under a cancer and specified disease expense policy, certificate number 1041589.

4.    The subject insurance policy was sold, issued and delivered in Garfield County, State of Oklahoma.

5.      The acts and omissions pertinent in this case occurred in Enid, Oklahoma.

6.      Plaintiff's claims against the Defendant are in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

7.      Based on the foregoing, this Court has jurisdiction over these parties and this subject matter and venue is proper herein.

8.      In 2015, Plaintiff incurred medical and other related expenses in connection with his medical care and treatment, including treatment at Bass Baptist Hospital.

9.      Plaintiff submitted claims to the Defendant for the policy benefits of his cancer and specified disease expense policy and, otherwise, complied with all conditions precedent to recover under the policy.

10.     Defendant breached the insurance contract and breached the implied covenant of good faith and fair dealing in the handling of Plaintiff's claims, and as a matter of routine claim practice in the handling of similar claims by:

a.      failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendant knew that he was entitled to those benefits;

b.      failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.      withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

d.      refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e.      refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

2

    f.      refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

    g.      failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

    h.      not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

    i.      forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendants knew were payable;

    j.      failing to properly evaluate any investigation that was performed;

    k.      adjusting claims based upon their own medical determinations rather than the determinations of treating physicians as provided in the policy;

    l.      refusing to consider coverage for payment objectively in the best interest of their insured rather than the interest of only the insurance company;

    m.      intentionally failing and refusing to follow the known law of policy construction, including, but not limited to, resolving any contractual ambiguities in favor of their insured;

    n.      imposing conditions and requirements for coverage more restrictive than the requirements of the policy; and,

    o.      asserting and endorsing opinions of medical professionals that Defendant knows are biased, predetermined, unreasonable, unjust and/or incorrect,

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to the Defendant.

11.    As a direct result of Defendant's breach of contract and breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered the loss of policy benefits and emotional distress, frustration, duress, and other consequential damages.

12.    Defendant's acts and omissions in violation of the implied covenant of good faith and fair dealing were grossly reckless and wanton and/or done intentionally

and with malice and/or were life threatening to humans and, therefore, punitive damages are appropriate.

WHEREFORE, Plaintiff prays for judgment against the Defendant, Humana Insurance Company, for his damages, both compensatory damages and punitive damages, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate. The amount sought as damages is in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

MANSELL ENGEL & COLE

By: _____
Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
M. Adam Engel, OBA #32384
101 Park Avenue, Suite 665
Oklahoma City, OK 73102
T: (405) 232-4100 ** F: (405) 232-4140
E-mail: mec@meclaw.net

**ATTORNEYS FOR PLAINTIFF**

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMAND**

4