IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD R. MORGAN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. CIV-20-180-D ) |
| PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) |

**O R D E R**

Before the Court is Defendant's Motion to Dismiss [Doc. No. 8], filed pursuant to Fed. R. Civ. P. 12(b)(6). Defendant seeks the dismissal of all claims asserted by Plaintiff in this diversity case regarding insurance coverage. Plaintiff has filed a response [Doc. No. 10] in opposition to the Motion, and Defendant has replied [Doc. No. 11]. Thus, the Motion is fully briefed and ripe for decision.

**Factual and Procedural Background**

Plaintiff, a medical doctor, brings suit to recover damages for breach of contract and breach of an insurer's duty of good faith and fair dealing based on allegations that Defendant failed to pay and failed properly to investigate and adjust his claim under a disability income insurance policy issued in July 1987, amended in 2001, and effective when he became disabled in March 2019. *See* Compl. [Doc. No. 1], ¶¶ 4-5. Plaintiff also claims Defendant's soliciting agent fraudulently misrepresented in June 1987 the coverage provided by the policy to a physician working in a recognized medical specialty

who became disabled from the specialty occupation but continued to work as a licensed physician in another practice. *Id.* ¶ 13. By its Motion, Defendant asserts that the Complaint fails to state any claim on which relief can be granted because 1) no breach of contract can be established under the unambiguous language of the insurance policy, 2) no plausible claim of insurer's bad faith is stated, and 3) no fraud claim arises from the alleged statements of Defendant's agent, which did not misrepresent any facts and were consistent with the policy. Plaintiff contends the factual allegations of the Complaint are sufficient to state claims for breach of contract, bad faith, and fraud.

## Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id.* at 679. Thus, for example, "[a] simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time." *Robbins*, 519 F.3d at 1248. However, a claim of fraud must be pleaded with particularity. *See* Fed. R. Civ. P. 9(b).

2

The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). There is a well-recognized exception, however, for "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id*. (quoting *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 2002)); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Alvarado v. KOB-TV, L.L.C*., 493 F.3d 1210, 1215 (10th Cir. 2007)). In this case, Plaintiff bases his case on an insurance policy specifically described in his Complaint but not attached to his pleading. *See* Compl. ¶ 4. Defendant has submitted a copy of the policy with its Motion. *See* Def.'s Mot., Ex. 1 [Doc. No. 8-1] (hereafter, the "Policy").[1] Because Plaintiff does not dispute the authenticity of this document, the Court may properly consider it under Rule 12(b)(6). *See GFF Corp. v. Assoc. Wholesale Grocers, Inc*., 130 F.3d 1381, 1384 (10th Cir. 1997); *see also Hampton v. Root9B Tech*., 897 F.3d 1291, 1297 (10th Cir. 2018).

---

[1] Exhibit 1 contains multiple documents that combine to constitute the Policy as provided by its "Entire Contract" provision, which states: "This policy with the application and attached papers is the entire contract between you and us. No change in this policy will be effective until approved by one of our officers." *See* Policy at 30 (ECF page numbering). For ease of reference, the Court uses the page numbers assigned by the electronic case filing system because the pages of the document are not sequentially numbered.

**Plaintiff's Allegations**

Accepting the allegations of the Complaint, Plaintiff resides in Oklahoma and was insured at all relevant times under the Policy issued by Defendant in this state on July 7, 1987.[2] Defendant marketed this type of disability income policy to physicians who wanted coverage for occupations in a recognized medical specialty. The Policy provides monthly benefits for total disability if the insured is not able to perform the material duties of his recognized specialty, even if he remains capable of performing another occupation as a licensed physician.[3] Since July 1987, Plaintiff has worked as both a specialist in emergency medicine and a clinician in another non-specialty practice. The Policy expressly covered Plaintiff's duties as an emergency room physician in that it incorporated an application executed in 2001 that identified these duties.[4]

In March 2019, Plaintiff suffered a myocardial infarction that caused him to be totally disabled from performing his specialty occupation. Plaintiff timely submitted a loss claim under the Policy. Defendant allegedly breached the insurance contract by denying the claim. Defendant also allegedly breached its duty of good faith and fair dealing by the manner in which it investigated, handled, and denied the claim.

---

[2] Under these circumstances, the parties agree that Oklahoma law governs their dispute.

[3] The language of the coverage provision is set forth *infra* in discussing the parties' arguments.

[4] The allegation of the Complaint that the Policy expressly covered Plaintiff's specialty practice necessarily refers to the 2001 application because it contains the only statement regarding this practice and was expressly approved by an officer of the company. *See* Policy at 6-8; *see also* note 2 *supra*; Pl.'s Resp. Br. at 1-2, 16.

In support of a claim for false representation and deceit, Plaintiff alleges that Defendant's agent, Earl Chambers, personally met with Plaintiff in June 1987 at the hospital where he was completing a residency program. Mr. Chambers touted the type of policy offered by Defendant as better than other physician disability policies "because it provided coverage specifically for your duties in your specialty, if you worked in a recognized medial specialty." *See* Compl. ¶ 13. The alleged sales pitch went as follows:

> Mr. Chambers explained that many doctors may become disabled from their principal occupation in a recognized specialty, but still be able to perform some duties as an office physician. He explained that, if Dr. Morgan was working in a recognized specialty, then the Defendant would view that specialty as his occupation and he would receive the full disability benefits of the policy, even if he were able to continue working in some other duties as a physician. This policy would, in effect, provide coverage for the loss of the extra income that would be expected from his specialty occupation, even if he continued to work as a physician in some other capacity. This was explained as the principal benefit and special feature of this disability policy, as compared to competitor's [sic] products. The agent explained that as [Plaintiff's] income grew, he would be entitled to increase the monthly disability benefits and that he should increase those monthly benefits as much as he was able so that he would always have sufficient coverage in the event he became unable to work in his specialty.

*Id.* Although Plaintiff did not have a specialty practice at the time,[5] Plaintiff alleges that he relied on these representations in purchasing the Policy and later deciding to renew it:

> In reliance upon these representations, Dr. Morgan did increase his benefits in May of 2001 and in October of 2001. These applications for the increased coverage were written and made a part of his insurance policy and specify that the exact duties of his covered occupation was [sic] as an emergency room physician. In reliance upon the Defendant's promises, he maintained this disability coverage for thirty-three years in order to insure his recognized specialty as an ER physician.

---

[5] In addition to alleging that Mr. Chambers met with him while he was a resident, Plaintiff's original application in 1987 identified his duties as "usual to profession, Resident." *See* Policy at 31.

*Id.* Despite statements in the renewal applications, Plaintiff's work was not limited to practicing emergency medicine during the term of the Policy. Plaintiff "also worked a second job most of those same years with a physician team doing clinical work," and "he normally had group disability coverage through that employment for that work." *Id.*

Plaintiff alleges that Mr. Chambers "made these promises [regarding total disability payments if Plaintiff became unable to perform the duties of a specialty but continued to work] without any disclosure that [Defendant] would attempt to handle the claims in any other manner, if [Plaintiff] was working in multiple occupations." *Id.* According to Plaintiff, "[a]t the time of the original sale of the policy and the amendments of the same, no one ever disclosed anything different with regard to multiple occupations or partial disabilities. . . . The representations were always on the one-hundred percent total disability payments being tied precisely to his duties as an emergency room physician, rather than to any duties of a physician generally." *Id.*

## Discussion

Defendant contends Plaintiff's claims that he was entitled to total disability payments and that Mr. Chambers misrepresented the available coverage are defeated by the language of the Policy, which provides coverage for a physician with a specialty practice in the way Mr. Chambers described it but operates differently when a physician has a dual practice and works simultaneously in both a recognized specialty and another area or field. This contention impacts all Plaintiff's asserted theories of recovery.

6

**A.    Breach of Contract**

The Oklahoma Supreme Court has summarized the applicable legal rules as follows:

> Oklahoma law governing insurance coverage disputes is well-established. The foremost principle is that an insurance policy is a contract. Parties are at liberty to contract for insurance to cover such risks as they see fit and they are bound by terms of the contract. It necessarily follows that courts are not at liberty to rewrite the terms of an insurance contract. When addressing a dispute concerning the language of an insurance policy our first step is to determine as a matter of law whether the policy language at issue is ambiguous. If it is not ambiguous, we accept the language in its plain, ordinary and popular sense. If the language is ambiguous, we apply well-settled rules of construction to determine the meaning of the ambiguous language: we construe the policy to give a reasonable effect to all of its provisions, and we liberally construe words of inclusion in favor of the insured and strictly construe words of exclusion against the insurer.

*Cranfill v. Aetna Life Ins. Co.*, 49 P.3d 703, 706 (Okla. 2002) (citations omitted); *accord BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 835-36 (Okla. 2005) (footnotes omitted); *see Phillips v. Estate of Greenfield*, 859 P.2d 1101, 1104 (Okla. 1993) ("An insurance policy is a contract. If the terms are unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intentions of the parties."). The Oklahoma Statutes codify these rules: "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Okla. Stat. tit. 15, § 154. "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." *Id.* § 160.

A court's role in resolving a contractual dispute is also well settled. "If language of a contract is clear and free of ambiguity the court is to interpret it as a matter of law,

7

giving effect to the mutual intent of the parties at the time of contracting." *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003) (footnotes omitted). Further, the question of "[w]hether a contract is ambiguous and hence requires extrinsic evidence to clarify the doubt" is a matter of law for the courts. *Id.*; *BP Am.*, 832 P.3d at 836; *Cranfill*, 49 P.3d at 706; *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991).

In this case, the coverage provision of the Policy obligates Defendant to pay a "Monthly Benefit for Total Disability." *See* Policy at 15, 19. These are defined terms.

> Total Disability or totally disabled means that due to Injuries or Sickness:
>
> 1. you are not able to perform the substantial and material duties of your occupation; and
>
> 2. you are receiving care by a Physician which is appropriate for the condition causing the disability.
>
> your occupation means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled. **If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.**

Policy at 18 (emphasis added).

Neither party contends there is any ambiguity in the Policy's definition of "Total Disability," and the Court finds it to be unambiguous.[6] Plaintiff asserts that he satisfies the definition because he was unable to perform the duties of his occupation as an emergency room physician, regardless of whether he could continue to work as a physician. Thus, the focus of Plaintiff's coverage claim is the last, emphasized sentence of the

---

[6] "A contract is ambiguous if it is reasonably susceptible to at least two different constructions." *Pitco Prod. Co.*, 63 P.3d at 545-46 (footnote omitted).

8

definition, which deems his specialty practice to be his occupation "[i]f [his] occupation is limited to a recognized specialty within the scope of [his] degree or license."

The parties, and thus the Court, assume that emergency medicine is a recognized specialty within the scope of Plaintiff's degree or license as a medical doctor. The contractual question is whether Plaintiff's occupation was limited to this specialty. The allegations of the Complaint seem to answer this question in the negative. Plaintiff states he worked simultaneously in two occupations, one as an emergency room physician and another as a clinical doctor. Plaintiff seeks to avoid this conclusion in two ways: 1) he argues that he had an oral contract with Defendant that incorporated the coverage representations of its agent (*see* Resp. Br. at 16-18); and 2) he argues the last sentence applies to him because the Policy – through incorporation of the 2001 application, *see supra* notes 2 and 5 – expressly limited his occupation to the duties of an "emergency room physician." *Id*. at 16, 19-20. The Court addresses Plaintiff's arguments in reverse order.

### 1. Contract Interpretation

Although difficult to follow, Plaintiff's contract-based argument seems to be that an insured physician's occupation "is limited to a recognized specialty" if the physician has a specialty practice when he purchases coverage or if the policy is written to cover a specialty practice through the application process. *See id*. at 19 (arguing "that the policy was sold to him as covering his recognized specialty and that it was explicitly written to cover his duties in that specialty"); *see also id*. at 1-2 (stating "the policy in force at the time of his claim expressly states that [Plaintiff's] 'occupation' is 'M.D.' with the 'exact duties' of 'Emergency Room Physician,'" quoting the 2001 application, and arguing that "his

9

occupation under this policy contract was specifically limited to a recognized specialty, that of 'Emergency Room Physician'") (emphasis omitted); *id*. at 20-21 (arguing that the word "limited" should be read "to mean limited by the policy to [Plaintiff's] specialty duties, precisely as the policy was sold to him"). Either way, Plaintiff's position views the single sentence regarding a specialty occupation in isolation and ignores the context in which it appears.

The Policy does not treat an insured's occupation as fixed or unchanging but, instead, expressly defines the insured's occupation to mean the one (or ones) in which he is regularly engaged when he becomes disabled. Thus, the key to coverage of Plaintiff's disability claim is his occupation or occupations in March 2019. The only factual allegations regarding Plaintiff's occupation in March 2019 are that he was both an emergency room physician and a clinician in another practice. Plaintiff does not explain how his occupation could possibly be "limited to a specialty practice" within the meaning of the contract under these factual circumstances.

For these reasons, the Court rejects Plaintiff's argument that he was entitled to a monthly benefit for total disability under the Policy based on the alleged fact that "he was totally disabled from his specialty as an E.R. physician." *See* Compl. ¶ 5. The Court finds that the Plaintiff has failed to state a plausible breach of contract claim based on the written Policy.

### 2. Oral Contract

Plaintiff's primary argument seems to be that the written text of the Policy does not matter because the selling agent, Mr. Chambers, represented that the coverage would apply

10

in a particular way to a specialty occupation. *See id*. at 3 (arguing "the representations and promises of the insurance company through their [sic] authorized insurance representatives in issuing the policy **are** the contract") (emphasis in original). Plaintiff contends "the coverage representations of [Defendant's] statutory agent, [Plaintiff's] acceptance thereof, and his payment of premiums (including additional premiums for the increased coverage [in 2001] . . .) constitute, at the least, an oral contract for insurance." *Id*. at 17-18 (emphasis omitted). Plaintiff's oral contract argument relies, in part, on his claim of misrepresentation and its corollary that "[a]ny coverage of the policy is reformed to that which was mutually intended by the parties when the contract was made." *Id*. at 3.

Setting aside the question of whether Plaintiff has stated a claim of fraud or deceit, discussed *infra*, the thrust of Plaintiff's argument is that the Policy should be read in a way that conforms its coverage provisions to what Mr. Chambers said, instead of relying on the language of the written Policy.[7] Plaintiff argues that Defendant represented, and thus agreed, it would provide coverage for his specialty occupation because Mr. Chambers both promised specialty coverage and advised Plaintiff to increase the income benefit in future years if his specialty practice grew; Plaintiff allegedly acted on this advice, applied for increased coverage in 2001, and Defendant accepted his application as an "Emergency Room Physician." *See* Resp. Br. at 3-4, 5.

---

[7] As pertinent to his contract claim, Plaintiff's fraud allegations allegedly permit him to avoid an insured's duty to read the written policy and the parole evidence rule. *See* Resp. Br. at 8-10 & n.3, 11-12.

11

Upon consideration, the Court finds that Plaintiff's argument regarding an oral contract is not supported by the factual allegations of the Complaint or his cited legal authorities. Plaintiff does not allege in the Complaint the existence of an oral contract to provide disability coverage for his specialty occupation, nor does he seek reformation of the Policy to conform to such an oral contract. Plaintiff cites cases in which an agent with authority to bind the insurance company orally agreed to procure an insurance policy on specific terms but failed to do so. *See* Resp. Br. at 16-18. Plaintiff also relies on inapposite case law, such as cases where an agent misrepresented a fact material to the insured risk due to mistake, negligence, or fraud. *See*, *e.g.*, Resp. Br. at 8-10 (discussing *Bus. Interiors, Inc. v. Aetna Cas. & Sur. Co.*, 751 F.2d 361, 363 (10th Cir. 1984) (agent "represented that coverage for employee dishonesty was $30,000, not the $10,000 listed in the written policy"), and *Pac. Nat'l Fire Ins. Co. v. Smith Bros. Drilling Co.*, 162 P.2d 871, 873 (Okla. 1945) (agent delivered policy "under the mistaken belief that it contained a provision which protected the extra tools and equipment" purchased by the insured). "The rule [correcting a misstatement or misrepresentation] has been applied to a misdescription of the property insured, and to misstatements as to title or interest, encumbrances, other or additional insurance, and the value of the property insured." *Smith Bros.*, 162 P.2d at 873 (internal quotation omitted).

In contrast, Plaintiff does not allege that Mr. Chambers orally agreed to procure an insurance policy on specific terms that differ from the written Policy. Plaintiff also does not allege facts showing that Mr. Chambers orally agreed to provide disability insurance coverage for Plaintiff's specialty occupation or practice. Plaintiff was not a specialist in

12

1987 but met with Mr. Chambers as a resident (Compl. ¶ 13); Plaintiff completed an application stating he was a physician engaged in duties "usual to [the] profession." *See* Policy at 31. Plaintiff does not identify any fact material to the risk that Mr. Chambers misrepresented. Therefore, the Court finds that Plaintiff has failed to state a plausible claim for breach of an oral insurance contract.

### B. Bad Faith

To establish a breach of Defendant's duty of good faith and fair dealing with its insured, Plaintiff must show that Defendant breached the insurance contract and, in so doing, acted in a manner constituting bad faith. *See Brown v. Patel*, 157 P.3d 117, 121 (Okla. 2007); *see also Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (2009) (essential element of bad faith claim for nonpayment of first-party coverage is "the claimant was entitled to coverage under the insurance policy"); *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (per curiam) (essential element of bad faith claim is coverage under the policy). According to the Oklahoma Supreme Court, "a determination of liability under the contract is a prerequisite to a recovery for bad faith breach of the insurance contract." *Davis v. GHS Health Maint. Org., Inc.*, 22 P.3d 1204, 1210 (Okla. 2001); *see Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1249 (10th Cir. 2010) (where court finds an insurer did not breach the insurance contract by denying coverage, it necessarily follows that insurer's denial of coverage was not unreasonable) (applying Oklahoma law).

In this case, the Court has found that Plaintiff fails to allege facts showing a right to total disability benefits under the Policy and thus showing Defendant breached the Policy by failing to pay his insurance claim. Defendant's denial was not unreasonable or done

in bad faith if Defendant had no liability to Plaintiff under the Policy. Plaintiff's only disagreement with Defendant's position regarding bad faith is to assert that he has sufficiently stated a claim for breach of contract. *See* Resp. Br. at 20-21. Having rejected this assertion, the Court finds that the Complaint also fails to state a claim of insurer's bad faith.[8]

## C.    Fraud or Deceit

Plaintiff's claim of fraud rests on allegations, discussed *supra*, that Mr. Chambers misled Plaintiff concerning the availability of monthly income benefits for total disability if he worked in a recognized medical specialty and became unable to perform the duties of the specialty practice but continued to work as a physician. *See* Resp. Br. at 4-6. Plaintiff allegedly relied on Mr. Chambers' representations by purchasing the policy, maintaining it for 33 years, and increasing his coverage in 2001. *Id*. at 5. Plaintiff also seems to assert a claim of fraud by omission, arguing that Mr. Chambers did not disclose (that is, they never discussed) a different coverage situation if a physician worked in more than one practice or had multiple occupations. *Id*. at 6. Plaintiff asserts that the Complaint "states a claim for false representation, deceit and concealment." *Id*. at 7. Defendant's position is that Plaintiff's allegations do not show a misrepresentation of fact or reasonable reliance on any misstatement that was made.

---

[8] Plaintiff makes other arguments in response to Defendant's alternate contention that, even if a contract claim is stated, the Complaint fails to state a plausible bad faith claim because it contains only conclusory "boilerplate" allegations. Some of Plaintiff's arguments concern "residual disability benefits" and a waiver of premium benefit, and appear to rely on factual allegations outside his pleading; the Complaint is not cited in his brief. *See* Resp. Br. at 24-25. Therefore, these arguments are disregarded.

Plaintiff appears to base his tort claim on two alternate theories – one requires a false statement of fact, and the other requires a suppression of true facts by a person with a duty of disclosure. *See* Resp. Br. at 12-13 (citing Okla. Stat. tit. 15, § 58; Okla. Stat. tit. 76, § 3). In his argument, however, Plaintiff fails to identify a statement of fact that Mr. Chambers made or omitted. Mr. Chambers allegedly misstated how Defendant's policy would apply to future events, that is, if Plaintiff had a specialty practice or occupation and if Plaintiff became unable to work in the specialty but could continue to work as a physician. Even viewed as a factual description of the coverage provided by the Policy, Mr. Chambers' statement was accurate if Plaintiff limited his work to a specialty practice, as discussed *infra*. Mr. Chambers' statement was only inaccurate in the circumstances that developed, where Plaintiff decided to engage in dual occupations and to perform non-specialty work before becoming disabled from his specialty practice.

Plaintiff's position regarding Mr. Chambers' failure to anticipate this development, and thus render a more accurate description of the coverage provided by the Policy, relies on "an exception to the general rule of non-liability for misrepresentations concerning future events" or statements of opinion where a speaker has special or superior knowledge of the facts or the subject matter. *See* Resp. Br. at 13-15. Plaintiff argues that this case presents such circumstances because he did not have "the same knowledge as did the Defendant or [Mr. Chambers] as to how its disability policies worked, what the coverage requirements were, or how the policy addressed the situation when a physician was no longer able to perform the duties of [his] recognized specialty . . . but could continue in a less stressful clinical practice." *Id*. at 15.

15

The primary case cited by Plaintiff for his argument regarding superior knowledge is *Hall v. Edge*, 782 P.2d 122, 127 (Okla. 1989), which involved a claim of fraud by an investor in limited partnerships. The investor claimed that an accountant for the limited partnerships induced him to invest by misrepresenting the quality of the investment. The Oklahoma Supreme Court held that the accountant's representations were sufficient to constitute actionable fraud and reversed a summary judgment in the accountant's favor. In so doing, the supreme court reasoned that Oklahoma law recognizes "[r]eliance on an opponent's knowledgeable opinion as an element of fraud," that the accountant "was represented to [the investor] as having superior knowledge of the financial worth of [the limited] partnerships," and that his "opinion as an accountant might be found to 'become in effect an assertion summarizing his knowledge.'" *Id.* at 127-28 (quoting W. Keeton and W. Prosser, *Prosser and Keeton on the Law of Torts*, § 109 at 760-61 (5th ed. 1984)).

As applied here, Plaintiff argues, in effect, that Mr. Chambers presented himself as having superior knowledge of the disability income coverage provided by Defendant's policy for physicians with a recognized specialty and that Mr. Chambers' representations regarding the unique benefit provided by the policy should be considered an assertion summarizing his knowledge. Defendant makes no reply to this argument. Upon consideration, the Court finds that Plaintiff's allegations, viewed in the light most favorable to him as required by Rule 12(b)(6), are minimally sufficient to state a plausible fraud claim under this theory.

An element of Plaintiff's fraud theory also requires facts to show he acted in reasonable reliance on Mr. Chambers' false representation or omission regarding the

16

specialty coverage provided by the Policy. *See Varney v. Maloney*, 516 P.2d 1328, 1332 (Okla. 1973). Defendant contends Plaintiff could not have reasonably relied on any misstatement by Mr. Chambers "given the opportunity and duty to review the policy" and the fact that Plaintiff purchased additional income benefits under the Policy in 2001. *See* Def.'s Mot. at 20-21.[9] Defendant concedes, however, that Oklahoma case law supports Plaintiff's position that allegations of fraud may overcome an insured's duty to read his policy and discover a discrepancy between it and the agent's representation. *See* Reply Br. at 2; *see also* Resp. Br. at 8-10. The Court finds that Plaintiff's factual allegations, viewed in the light most favorable to him, provide a sufficient basis for a finding of reasonable reliance.[10] Therefore, the Complaint states a plausible fraud claim.

## Conclusion

For these reasons, the Court finds that the Complaint fails to state claims for breach of contract or bad faith and that these claims should be dismissed. The Court further finds that Plaintiff need not be granted leave to amend his Complaint at this time.[11]

---

[9] Defendant also argues that Plaintiff was a "sophisticated insured" by virtue of his level of education and profession, and thus could not reasonably rely on Mr. Chambers' statements. *Id*. at 21. Defendant provides no persuasive legal authority for this contention.

[10] Plaintiff specifically alleges that he increased his coverage in 2001 in reliance on Mr. Chambers' advice. Defendant's argument that Plaintiff could not reasonably have relied on Mr. Chambers' statements at that time depends on facts not alleged in the Complaint.

[11] In a footnote on the last page of his brief, Plaintiff makes a conclusory request for leave to amend his pleading if the Court finds a deficiency. *See* Resp. Br. at 25, n.10. The court of appeals has held that such bare requests, which fail to comply with Fed. R. Civ. P. 15(a) and LCvR15.1, "do not rise to the status of a motion and do not put the issue before the district court." *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021). Under *Brooks*, a district court need "not recognize Plaintiffs' single sentence as a cognizable motion" and does "not

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss [Doc. No. 8] is GRANTED in part and DENIED in part. This action shall proceed only on Plaintiff's claim of false representation or omission.

IT IS SO ORDERED this 26th day of March, 2021.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

abuse its discretion in denying that request." *Id.* Here, the Court declines to consider Plaintiff's single-sentence footnote as a motion to amend.