**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RICHARD R. MORGAN,<br><br>        Plaintiff,<br><br>v.<br><br>PROVIDENT LIFE AND ACCIDENT<br>INSURANCE COMPANY, a foreign<br>corporation,<br><br>        Defendant. | <br><br>Case No: 5:20-cv-180 D<br><br><br><br>***JURY TRIAL DEMANDED***<br>***ATTORNEY LIEN CLAIMED*** |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff, Robert R. Morgan, and for his causes of action against the Defendant, Provident Life and Accident Insurance Company, alleges and states:

1. Plaintiff, Robert R. Morgan, is a resident and citizen of the State of Oklahoma and currently resides in Edmond, Oklahoma.

2. Provident Life and Accident Insurance Company, hereafter referred to as "UNUM," is a foreign corporation with its principal place of business in Chattanooga, Tennessee and can be served through its registered service agent Corporation Service Company at the following address 2908 Poston Avenue, Nashville, Tennessee, 37203-1315.

3. At all times material hereto, Plaintiff was insured under a disability insurance policy which was issued by UNUM.

4. Dr. Morgan's disability insurance policy number 52-00785976 involved in this case was issued, delivered, and renewed in the State of Oklahoma. The disability

policy was issued July 7, 1987 and amended May 17, 2001, and again on October 23, 2001.

5.     Dr. Morgan suffered a myocardial infarction on or about March 17, 2019 which caused Dr. Morgan to be unable to perform the principal duties of his occupation as an emergency room physician.  Dr. Morgan is totally disabled from his specialty as an E.R. physician from March 17, 2019 to the present.

6.     This UNUM disability product is marketed to physicians to provide coverage for their occupation in a recognized specialty.  For over thirty (30) years, Dr. Morgan worked as an E.R. physician, since July of 1987, and also worked in a day position as a clinic physician.  He had other group coverages through his employers, but always maintained and increased this disability coverage specifically to cover his duties in his specialty as an E.R. physician.

7.     Following his heart attack and subsequent treatment, Dr. Morgan's cardiologist prescribed that Dr. Morgan stop his E.R. practice due to the stress and physical demands involved with that practice and the increased risks and dangers associated with his current health condition precluding him from performing the principal duties of this E.R. practice.  Dr. Morgan's cardiologist determined that these health restrictions would exist for his lifetime.

## CONTRACT AND BAD FAITH

Plaintiff incorporates into this cause of action paragraphs 1 through 7 of the First Amended Complaint above.

8.     As a result of his disability from his occupation as an E.R. physician, Dr. Morgan has been unable to return to work as an E.R. physician since March 17, 2019 to the present and his total disability from that specialty occupation will continue for the rest of his life.  Dr. Morgan has suffered and will continue to suffer total loss of his income as an E.R. physician entitling him to the Residual Disability benefits of the policy.

9.     On November 21, 2019, UNUM determined that Dr. Morgan was unable to perform the material and substantial duties of his occupation as an Emergency Physician due to his medical condition of old myocardial infarction and ischemic cardiomyopathy. UNUM's approval of Dr. Morgan's residual disability policy benefits acknowledged his cardiologist's health restrictions in limiting the stress involved in Dr. Morgan's E.R. practice and that the cardiologist had provided these restrictions and limitations for lifetime.  Based upon its determination that Dr. Morgan was disabled from his E.R. practice, the Defendant commenced payment of the policy's monthly residual disability benefits.

10.    Just two months later, on January 24, 2020, the Defendant reversed its own determination and refused to provide Dr. Morgan any further coverage under his disability policy.  This continuing denial of any disability benefits for Dr. Morgan continues every month into the future for his lifetime.

11.    In addition to the denied residual disability benefits, the Defendant has refused to honor and provide the associated waiver of premium benefit of the policy which should have been provided in connection with his disability payments.  Further, UNUM's original determination calculated benefits commencing April 13, 2019 when

the benefits should have been provided from March 17, 2019.  Dr. Morgan further disputes the calculation of his residual disability benefit amount.

12.    Dr. Morgan submitted a claim under the disability insurance policy with UNUM and, otherwise complied with all conditions precedent to recover under the policy.

13.    Defendant breached the insurance contract by failing and refusing to properly and promptly pay policy benefits to Plaintiff.

14.    Defendant further breached the implied covenant of good faith and fair dealing in the handling of Plaintiff's claims, and as a matter of routine claim practice in the handling of similar claims, by:

    a.    failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendant knew that they were entitled to those benefits;

    b.    failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

    c.    withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

    d.    refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

    e.    refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

    f.    refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

    g.    failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under this policy to include Plaintiff's claims;

h.        not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i.        forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable; and

j.        failing to properly evaluate any investigation that was performed;

k.        improperly delaying the payment of policy benefits for months after benefits were due such that Dr. Morgan was deprived of the disability income coverage for which the insurance was in place; and,

l.        failing and refusing to pay the proper waiver of premium benefit and improper delay in addressing and honoring this benefit in an attempt to conceal and avoid payment of the premium waiver altogether;

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to the Defendant.

15.    As a direct result of Defendant's breach of contract and breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered the loss of policy benefits, physical and emotional distress, and other consequential damages.

16.    Defendant's acts and omissions in violation of the implied covenant of good faith and fair dealing were grossly reckless and/or done intentionally and with malice and therefore Plaintiff is entitled to recover punitive damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant, Provident Life and Accident Insurance Company, in an amount in excess of the jurisdictional amount set out in 28 U.S.C A. §1332 with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

## FALSE REPRESENTATION, CONCEALMENT AND DECEIT

Plaintiff incorporates the above paragraphs of this First Amended Complaint paragraphs 1 through 16 and further alleges and states:

17.   In 1987 and since that time, the Defendant and Dr. Morgan knew that physicians would normally be provided group disability insurance through their employers in most regular physician occupations.  Defendant knew that this was the most common objection that the Defendant's agents would encounter when attempting to solicit and sell this individual disability insurance product.

18.   In 1987 and since that time, the Defendant and Dr. Morgan knew that emergency room specialists worked as contract laborers, would not typically be provided any group disability insurance in connection with their E.R. work and needed this individual disability policy to protect their income loss as an E.R. physician should they become disabled from performing this stressful, physically demanding, specialized work. Defendant's agents were trained to overcome sales objections that might involve E.R. specialty work by stressing that their policy was specifically designed to provide its total disability benefit if you could no longer do this type of specialty work, but continued as a physician in other work.

19.   In 1987 and since that time, the Defendant and Dr. Morgan were aware that performing the duties of an E.R. physician involved very stressful and specialized work that a physician, due to health, might be unable to perform, even if they were still able to continue in their occupation as a physician.

20.     Defendant trained their agents, and otherwise marketed this disability product, emphasizing this feature of the policy to overcome such common sales objections while intentionally omitting any reference to the fact that this feature would not provide the total disability benefits of the policy if the physician was already engaged in two separate occupations at the time of their disability from their specialty work.

21.     In marketing and selling this individual disability policy, the Defendant emphasized that it would pay the total disability benefit amount purchased on the loss of your income from your specialty work, even if you continued to receive income from other work as a physician.  The Defendant knew, and intentionally omitted, the fact that this was not true and that physicians would not be entitled to the total disability benefit of the policy in the event that the physician became disabled from his occupation at a time when he was already engaged in another occupation.  Defendant knew that its representations were true only in particular factual circumstances and would not be true, but be different, in other factual circumstances.  However, the representations of full payment of the total disability benefit on disability from your specialty were deceitfully promulgated without any reference to the specific factual circumstances, or any limitations at all, limiting the promised total disability amount.

22.     Dr. Morgan's residency was at the Oklahoma Health Sciences Center from July 1, 1986 to June 30, 1989.  He worked as an intern from July 1, 1986 to June 30, 1987.  He finished as a resident in family practice – internal medicine – working on the floor at the Health Sciences Center from July 1, 1987 to June 30, 1989.  Following his initial year as an intern, on July 1, 1987, Dr. Morgan was licensed as a physician,

including a requisite narcotics license, and was able to start his job "moonlighting" as an emergency room physician.  Dr. Morgan's first day on the job as an E.R. physician was July 2, 1987 and he has continued moonlighting as an E.R. physician in the years since that time.

23.    The involved individual disability insurance policy, effective July 7, 1987, provided his only disability coverage for his existing duties as an E.R. physician while he continued to work as a licensed resident physician during the day at the Health Sciences Center.  Dr. Morgan's occupation as an E.R. specialist, while at the same time in a dual capacity as a licensed internal medicine physician, existed prior to the effective date of this policy.  In Dr. Morgan's communications with the Defendant in purchasing this individual disability policy, including on June 15, 1987, Dr. Morgan specifically told the Defendant of his intention to moonlight as an E.R. physician as soon as he obtained his physician license on July 1, 1987 and continuing in this specialty into the unforeseen future.

24.    The policy was marketed and specifically sold to Dr. Morgan and purchased by Dr. Morgan specifically in reliance upon the promise that the policy would provide its total disability benefit should he ever become disabled from his specialty duties as a E.R. physician, even if he continued to work as a licensed physician at the Health Sciences Center to complete his residency.  At all times in the original sale of this insurance policy and in all instances in the years that followed, Dr. Morgan paid his insurance premiums to the Defendant in reliance upon this promise of the total disability benefit of the policy.  This promise was initially made and at all other times was

intentionally promised, with knowledge that Dr. Morgan moonlighted and was engaged as an E.R. physician in a dual capacity with his regular occupation as a licensed physician and the promise of the total disability benefit was extended with this knowledge and without the truth that the total disability benefit would not apply in Dr. Morgan's circumstances due to his dual occupation.

25.     The factual detail and particular who, what, when, and where, associated with this cause of action is set forth in this paragraph with as much specificity as is currently known to the Plaintiff.  On or around June 15, 1987, Defendant's soliciting agent, Earl Chambers, met personally with Richard Morgan at the hospital where he was completing his intern year of residency.  The insurance company and Mr. Chambers touted this insurance policy to be better than most physician disability coverage because it provided coverage specifically for your duties in your specialty, if you worked in a recognized medical specialty.  Mr. Chambers and Dr. Morgan discussed that Dr. Morgan was going to work "moonlighting" as an E.R. physician.  Mr. Chambers explained that many doctors may become disabled from their principal occupation in a recognized specialty, but still be able to perform some duties as an office physician.  He explained that, if Dr. Morgan was working in his recognized specialty, then the Defendant would view that specialty as his occupation and he would receive the full disability benefits of the policy, even if he were able to continue working in some other duties as a physician. At the time of issuance of this policy, and in subsequent years, Dr. Morgan was working as a family practice – internal medicine practitioner and, also, in his specialty as an E.R. physician.  This policy would, in effect, provide coverage for the loss of the extra income

that would be expected from his specialty occupation, even if he continued to work as a physician in some other capacity.  This was explained as the principal benefit and special feature of this disability policy, as compared to competitor's products.   The agent explained that, as his income grew, he would be entitled to increase the monthly disability benefits and that he should increase those monthly benefits as much as he was able so that he would always have sufficient coverage in the event he became unable to work in his specialty.  In reliance upon these representations, Dr. Morgan did increase his benefits in May of 2001 and in October of 2001.  These applications for the increased coverage were written and made a part of his insurance policy and specify that the exact duties of his covered occupation was as an emergency room physician.  In reliance upon the Defendant's promises, he paid premiums and maintained this disability coverage for thirty-three years in order to insure his recognized specialty as an ER physician.  Dr. Morgan also worked a second job most of those same years with a physician team doing clinical work and knew he normally had group disability coverage through that employment for that work.  Mr. Chambers had specifically told Dr. Morgan that he would be considered totally disabled for payment of the full policy benefit, if he became unable to perform the duties of his recognized specialty, even if he was actually continuing to work as a physician.  The Defendant and the agent made these promises without any disclosure that they would attempt to handle the claims in any other manner, if Dr. Morgan was working in multiple occupations.  In fact, their representations and contract amendments were directly to the contrary.  The materials that were shown to Dr. Morgan contained the same promises and information that were told to him and in all

10

respects failed to disclose anything to the contrary.   In all respects, the Defendant emphasized that this disability product was specialty occupation specific, would cover him specifically for his specialty duties if he engaged in a recognized specialty and would provide the full policy benefit on any disability from his work as an emergency room physician.  The principal selling distinction emphasized by the Defendant in the sale of the policy is that his occupation would be considered his duties as an emergency room physician, rather than as the duties of a physician generally.   Instead, the Defendant considered both his duties as an E.R. physician and his duties as a clinical physician to be his occupation.  At the time of the original sale of the policy and the amendments of the same, no one ever disclosed anything different with regard to multiple occupations or partial disabilities in any way.  Defendant made its representations of coverage generally, knowing Dr. Morgan was going to be working two jobs, and intentionally omitted that the representation would not be true in factual circumstances such as Dr. Morgan's working two jobs.  The representations of total disability benefits were made stating simply if he continued working as a physician, without disclosing that such total disability benefit would not apply unless his other continued work as a physician did not start until sometime after the time of his disability.  In fact, the words continue and continued, in the context of Dr. Morgan's dual employment, promised a benefit Defendant knew would not be applicable to his circumstances, affecting payment of the promised coverage for payment of the policy total disability benefit.  The representations were always on the one-hundred percent total disability payments being tied precisely to his duties as an emergency room physician, rather than to any duties of a physician

generally. Instead, the Defendant conditioned the total disability coverage on the duties of both of his jobs as a physician. Plaintiff will immediately supplement any factual details with specificity that the Plaintiff can identify that are not set forth above.

26. The described representations were material and false and made at a time when Defendant knew they were false, or made as a positive assertion recklessly, without any knowledge of the truth.

27. The described representations were made with the intention that Plaintiff should act upon them in purchasing this policy and the Plaintiff did rely upon this to his detriment.

28. The described representations were words or conduct which created an untrue or misleading impression of the actual past or present facts in the mind of the Plaintiff.

29. The described omissions and non-disclosure involved concealing and failing to disclose facts which Defendant had a duty to disclose. Such facts were material and were concealed or failed to be disclosed with intent of creating a false impression of the actual facts in the mind of the Plaintiff.

30. Defendant concealed or failed to disclose these facts with the intention that they be acted upon by Plaintiff and Plaintiff did act in reliance upon it to his detriment.

31. The described false representations, concealment and deceit induced the Plaintiff to purchase these insurance policies and Plaintiff, acting in reliance thereon, suffered injury.

32.     As a direct result of the described false representations, concealment, and deceit, Plaintiff suffered loss of the total disability benefit, waiver of premium and other policy coverage promised to him, emotional distress, frustration and duress and other consequential damages.

33.     Defendant's acts and omissions in this cause of action were with reckless disregard for the rights of others and/or were done intentionally and with malice and therefore Plaintiff is entitled to recover punitive damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant, Provident Life and Accident Insurance Company, in an amount in excess of the jurisdictional amount set out in 28 U.S.C A. §1332 with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

**MANSELL ENGEL & COLE**

By:     s/Mark A. Engel_____
        Steven S. Mansell, OBA #10584
        Mark A. Engel, OBA #10796
        Kenneth G. Cole, OBA #11792
**JURY TRIAL DEMANDED**          204 North Robinson, 21st Floor
**ATTORNEY LIEN CLAIMED**        Oklahoma City, OK 73102-7201
        T: (405) 232-4100 ** F: (405) 232-4140
        E-mail:  mengel@meclaw.net

**ATTORNEYS FOR PLAINTIFF**