## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD R. MORGAN,<br><br>                              Plaintiff,<br><br>v.<br><br>PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, a foreign corporation<br><br>                              Defendant. | Case No: 5:20-cv-180 D |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

### MANSELL ENGEL & COLE

Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
Zachary K. Housel, OBA #32802
204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102-7201
T: (405) 232-4100 ** F: (405) 232-4140
E-mail: mengel@meclaw.net

### ATTORNEYS FOR PLAINTIFF

Dated:  May 2, 2022

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................. 1

II. UNDISPUTED MATERIAL FACTS ...................................................................... 8

    a.  It is undisputed what the policy states ............................................................ 8

    b.  It is undisputed that Dr. Morgan was residually disabled beyond the
        elimination period  until October 20, 2019 ................................................... 9

    c.  It is undisputed that, after the elimination period had been satisfied,
        UNUM denied his residual disability benefits based upon a contention
        that Dr. Morgan was able to perform the duties of his occupation and
        his restrictions and limitations were not supported after October 21.
        2019 ........................................................................................................... 11

    d.  It is undisputed that, after October 21, 2019, Dr. Morgan continued to
        be residually disabled under this policy definition ..................................... 13

III. STANDARD OF DECISION ............................................................................. 17

IV. CONSTRUCTION OF INSURANCE CONTRACT IN DIVERSITY
      JURISDICTION ............................................................................................. 18

V.  AFTER THE ELIMINATION PERIOD HAS BEEN SATISFIED, THE
      INSURANCE COVERAGE PROVISION FOR RESIDUAL DISABILITY
      BENEFITS DOES NOT ALLOW UNUM TO CONTINUE TO REQUIRE
      THAT DR. MORGAN UNABLE TO DO BUSINESS DUTIES ......................... 21

# TABLE OF AUTHORITIES

**Cases:**

*Adler v. Wal-Mart Stores, Inc.,*
 144 F.3d 664, 670 (10th Cir. 1998) .................................................................. 18

*Bacchus Indus., Inc. v. Arvin Indus., Inc.,*
 939 F.2d 887, 891 (10th Cir. 1991) .................................................................. 18

*Birch v. Polaris Indus., Inc.*
 812 F.3d 1238, 1251 (10th Cir. 2015) .............................................................. 18

*Chavez v. County of Bernalillo,*
 3 F. Supp. 3d 936, 949 n. 4 (D.N.M. 2014)..................................................... 17

*Cranfill v. Aetna Life Ins. Co.,*
 2002 OK 26, ¶7, 49 P.3d 703, 706 ................................................................... 19

*Finstuen v. Crutcher,*
 496 F.3d 1139, 1144 (10th Cir. 2007) .............................................................. 18

*Haworth v. Jantzen,*
 2006 OK 35, ¶17, 172 P.3d 193, 197 ............................................................... 20

*Houston Gen. Ins. Co. v. Am. Fence Co., Inc.,*
 115 F.3d 805, 806 (10th Cir. 1997) .................................................................. 18

*May v. Mid-Century Ins. Co.,*
 2006 OK 100, ¶22, 151 P.3d 132, 140 ............................................................. 19

*Paclawski v. Bristol Labs., Inc.,*
 1967 OK 21, ¶24, 425 P.2d 452, 455 ............................................................... 20

*Pitco Prod. Co. v. Chaparral Energy, Inc.,*
 2003 OK 5, ¶12, 63 P.3d 541, 545 ................................................................... 20

*Salehpoor v. Shahinpoor,*
 358 F.3d 782, 786 (10th Cir. 2004) .................................................................. 18

*Shawnee Hosp. Auth. v. Dow Constr., Inc.,*
 1990 OK 137, ¶6, 812 P.2d 1351, 1353 ........................................................... 20

*Shepherd v. French,*
    1980 OK CIV APP 13, ¶10, 612 P.2d 727, 729 ............................................................. 20

*Spears v. Shelter Mut. Ins. Co.,*
    2003 OK 66, ¶5, 73 P.3d 865, 868 .................................................................. 20

*State Farm Fire and Casualty Co. v. Pettigrew,*
    180 F. Supp. 3d 925, 931 (N.D. Okla. 2016) .................................................. 18

*State Ins. Fund v. Ace Transp. Inc.,*
    195 F.3d 561, 564 (10th Cir. 1999) ................................................................. 19

*T.D. v. Patton,*
    868 F.3d 1209, 1219 (10th Cir. 2017) ............................................................. 17

*Timmons v. Royal Globe Ins.,*
    1982 OK 97, ¶20, 653 P.2d 907, 913) ............................................................. 20

*Walker v. Telex Corp.,*
    1978 OK 13, ¶7, 583 P.2d 482, 485 ................................................................ 20

## Other Authority:

Fed. R. Civ. P. 56 ........................................................................................................ 1

15 OKLA. STAT. §157 ................................................................................................ 19

*Couch on Insurance* 3d § 21:14 (1995) .................................................................. 19

# EXHIBITS

Exhibit 1    Disability Income Policy No. 6-335-785976
             **Morgan (Claim 6001) 0001-0024**

Exhibit 2    Outline of Improvements in Coverage
             **Morgan 0282-0286**

Exhibit 3    November 21, 2019 Craig Hill letter to Dr. Morgan (Approval Letter)
             **UA-CL-LTD-NL 16575171  2496-2498**

Exhibit 4    Craig Hill deposition

Exhibit 5    January 24, 2020 Craig Hill letter to Dr. Morgan (Denial Letter)
             **UA-CL-LTD-NL 16575171 2592-2599**

Exhibit 6    February 3, 2021 Shannon Cartier letter to Mark Spencer (Denial Letter)
             **UA-CL-LTD-NL 16575171 3403-3412**

Exhibit 7    Matthew Masny deposition

Exhibit 8    UNUM's Marketing Chart, at p. DBD01901

Exhibit 9    UNUM Memorandum dated July 22, 1987 at p. DBD01894

Exhibit 10   Declaration of Brian Abeles

Exhibit 11   D'Aprile, Motion for Partial Summary Judgment, Doc. 151

Exhibit 12   D'Aprile Policy

Pursuant to Fed. R. Civ. P. 56, Plaintiff, Richard R. Morgan, (hereinafter, referred to as "Dr. Morgan"), respectfully requests this Court determine, as a matter of law, the insurance policy coverage issue involved in the Defendant's denial of residual disability coverage, after the elimination period had been satisfied.  Under Oklahoma law, this Court, and not lawyers or lawyer experts, should determine the insurance coverage provided by the policy's provisions.

## I.  INTRODUCTION

This Motion requests the Court make the legal determination of insurance policy coverage provided by the insurance policy's residual disability provision.  The policy expressly provides that the words Residual Disability or residually disabled mean one thing during the policy's six (6) month elimination period (with three (3) enumerated requirements), and these same words mean something different after the six (6) month elimination period has been satisfied (with two (2) of the enumerated requirements remaining).  The difference in whether or not a person is residually disabled, after the elimination period has already been satisfied, is that the insured is no longer required to not be able to do one or more of their business duties or be unable to do their business duties for a much time.  The policy requirement that the insured be unable to perform all of their work duties exists only during the elimination period and, if the insured remains unable to perform their work duties (and fulfills the other two (2) requirements for residual disability) for an entire six (6) months, then this requirement is removed, after satisfaction of the elimination period.  Nevertheless, after the elimination period has been satisfied, UNUM discontinued Dr. Morgan's residual disability benefits and denied further payment

of the same alleging that he was able to return to his work duties.  Now forced to acknowledge that the requirement does not exist after the elimination period has been satisfied, UNUM just argues that if he is able to do all his work duties then he <u>could have</u> hypothetically, gone out and found some replacement income from another job such that he would no longer have any covered loss of income.  UNUM's hypothetical argument, even if it were supported in the facts, has no bearing on the insurance coverage provided by the insurance policy.  Truly, the only factual dispute in the denial of Dr. Morgan's residual disability benefits is whether or not he is truly able to return to his ER work and this disputed fact is wholly immaterial because it makes no difference at all with regard to his entitlement to these residual benefits, after satisfaction of the elimination period.  This Court, for purposes of this Motion, can accept the facts argued in UNUM's denial – that the lifetime restriction from ER work imposed by Dr. Morgan's cardiologist is "unsupported", that Dr. Morgan is able to perform all of his ER duties, and that he could hypothetically go out and still secure an ER job to replace the income that he lost back when he lost his ER job following his heart attack.  Whether or not all of these factual contentions for denial are true or not, Dr. Morgan's ability to resume ER duties is simply no longer material to his entitlement to the residual disability coverage provided by his insurance policy.  UNUM had already determined that Dr. Morgan was unable to perform his ER duties for more than six (6) months, that he had satisfied the six (6) month elimination period, and even paid residual benefits for about a month recognizing that he continued to satisfy the remaining two (2) requirements of a loss of monthly income and appropriate care from a physician.  Dr. Morgan continued (and continues to this day) to

have the same loss of income from the same job that he lost following his heart attack and to receive the same appropriate care from the same cardiologist for that same heart attack and heart condition.  All of the facts that are material to the actual policy coverage are not disputable and are truly indisputable.  UNUM's hypothetical assertion for denial that Dr. Morgan is able to return to his ER duties does not change or defeat his continuing entitlement to the residual disability benefits in the policy.

Since the time Dr. Morgan was licensed as a physician on July 1, 1987, he has worked two (2) full-time jobs – a primarily wellness clinic daytime job and nights and weekends as an emergency room specialist.  On July 7, 1987, Dr. Morgan was issued this Individual Disability Insurance (IDI) policy by the Defendant (UNUM) to provide him disability insurance coverage for his work in his ER specialty.  He has always had disability insurance already through St. Anthony's for his daytime job.  The involved IDI policy that he purchased in 1987 provides total disability benefits, but also provides residual disability benefits in circumstances where the insured is not totally disabled, but has suffered a loss of income due to an injury or sickness.  The residual disability pays a percentage of the policy benefit equal to the percentage of your diminished income earnings for a term not to exceed five (5) years.     The Defendant's discontinuance and denial of the residual disability benefits of this policy is the subject of Dr. Morgan's insurance claim in this litigation, which he pursues concurrently on both a contract and bad faith theory of recovery.  Plaintiff contends that UNUM's denial of this insurance claim for residual disability benefits asserts a coverage position that is clearly contrary to the insurance

policy's provisions for residual disability benefits and that this coverage determination is a legal issue for the Court to determine as a matter of law.

On March 17, 2019, while working as an ER physician at the emergency room, Dr. Morgan had a severe heart attack and was rushed into heart surgery for multiple artery repair.   He suffered significant heart tissue damage from the heart attack and had compromised heart function following the heart attack and lower physical and exertional abilities.   Dr. Morgan's cardiologist that performed his heart surgery during the heart attack, Dr. William Collazo, indicated that Dr. Morgan must limit his exertional activity and, particularly due to the volume of high stress of the emergency room work, prescribed that Dr. Morgan not return to his work as an emergency room specialist.   He released Dr. Morgan to return to work at his day job only.   Since the time of the heart attack, per the doctor's orders, Dr. Morgan has continued to work in his daytime job at the wellness clinic and has given up his job as an ER physician.   He was not totally disabled under the policy only because he worked both jobs at the time of his disability and was still able to continue in his daytime job.   UNUM recognized that he did have a loss of income of approximately 50% of his income due to his heart attack and heart condition and acknowledged that he was entitled to the residual benefits.   Dr. Morgan's lost income was over $25,000 per month and the Defendant calculated his monthly residual disability benefit at about 50% of the policy's maximum total disability benefit of $10,200 a month, or just over $5,000 per month in benefits for residual disability for five (5) years.   The Defendant determined that he was residually disabled from his ER work and otherwise qualified for those benefits at least for the seven (7) months until October 21, 2019.   Approximately one (1) month of

4

residual disability benefits were paid after the six (6) month elimination period was satisfied based upon Dr. Morgan's continuing residual disability.  In connection with denying his benefits under a separate ERISA preempted disability policy with UNUM, UNUM took the position that Dr. Morgan was now able to return to his duties as an ER physician after October 21, 2019 and that his doctor's restrictions on his duties and time as an ER physician were no longer "supported".  UNUM denied him any further residual disability benefits.

The Defendant's denial of this claim for residual benefits quotes only the total disability definition from the ERISA policy and states that the denial of disability benefits under both the ERISA policy and his individual disability policy are both due to their determination that Dr. Morgan is able to perform the duties of his ER work (at least after October 21, 2019).  The denial letter completely fails to address the changed difference in policy wording for the residual disability benefits of the individual disability insurance policy, after satisfaction of the elimination period, under which Dr. Morgan was "no longer required to have a loss of duties or income".  Under the applicable residual disability provision, during the first six (6) months of the elimination period, there is a requirement that you are not able to do one or more of your substantial and material daily duties or you are not able to do your usual business duties for as much time as you would normally do them.  Therefore, in order to be initially eligible for the residual disability benefits, as UNUM determined, Dr. Morgan's loss of income from the loss of his emergency room job due to his heart condition was due to not being able to perform the duties or to perform them for as much time.  However, after the elimination period was satisfied, this

requirement regarding whether or not you are able to do your job is omitted in its entirety and you are only required to have a continuing loss of income greater than 20% and continued appropriate care of a physician. **Once an injury or sickness has caused you to lose a job due to your inability to perform the job for more than six (6) months. then you are entitled to these limited residual benefits in an amount equal to your continuing loss of earnings from the job, whether you are able to return and do the work or not.** The change in the policy requirements, after the elimination period has been satisfied, is a difference in coverage that is well known to UNUM and its adjusters handling Dr. Morgan's claim.  The coverage difference was simply never mentioned by UNUM until almost a year following the filing of this lawsuit.  UNUM admits that Dr. Morgan had already satisfied the elimination period and had even paid benefits for Dr. Morgan having met the residual disability during the elimination period and past the elimination period to October 21, 2019.  Defendant knows that it can no longer require Dr. Morgan be not able to do the duties of the ER job and that their denial was inappropriate.  In fact, we have discussed that UNUM itself refers to this Residual Disability definition as changing to an "Income Only" test, knowing that ability to work is no longer a factor re requirement.  In this litigation, Defendant still refuses the residual disability benefits only so that it can continue to feign some belief in its excuse and argue for summary judgment on the bad faith claim.  Plaintiff has discovered that UNUM's adjuster, Craig Hill, did ignore the changed definition in his normal handling of these residual disability claims and this is not an isolated instance of the coverage difference being ignored.  Mr. Hill affirmatively states

that you still have to have restrictions and limitations from performing your duties, after satisfaction of the elimination period – despite the clear change in the policy wording.

Essentially, the Defendant argues that, although the requirement for inability to perform your job duties has been removed, your continuing loss of earnings must be due to an injury or sickness. Defendant then argues that, if you are able to perform the duties of your old job, then your loss of earnings is not due to an injury or sickness because presumably and hypothetically you can go out and get the same job or a similar job and make the same amount of money. Effectively, your ability to do your prior job duties is still determinative of whether or not you are residually disabled, even though your ability to perform such duties has specifically been deleted as a requirement, because your loss of income cannot be due to an injury or sickness, if you are in fact now able to do the duties of your prior job. The Defendant should not be allowed to make this coverage argument to a jury because the coverage provided by this policy provision is a legal determination for the Court. Everyone agrees that Dr. Morgan actually has a loss of income of about 50% because he still gets his earnings from his day job only and does not receive any earnings from the ER job that he lost following his heart attack. Dr. Morgan's loss of earnings are due to his lack of any continuing earnings from his ER job which he lost following his heart attack on March 17, 2019 and those lost earnings, due to that lost job, are due to the sickness or injury the same today as it was when he originally lost the job. In fact, the changed coverage definition specifically provides for and contemplates a scenario where someone loses their job based upon the inability to perform the duties of the job for over six (6) months and then continues to have those loss of earnings, even if they are now able

7

to perform such duties.  Defendant's tortured construction of this insurance coverage is not for a jury to address.

## II.  UNDISPUTED MATERIAL FACTS

**a.    It is undisputed what the policy states.**

1.      Dr. Morgan's disability policy with UNUM defines totally disabled on p. 4 of the policy, bates-stamped Morgan (Claim 6001) 000006, attached as Ex. 1, as follows:

Total Disability or totally disabled means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and

2. you are receiving care by a Physician which is appropriate for the condition causing the disability.

2.      UNUM defines Residual disability on p. 8 of the policy, bates-stamped Morgan (Claim 6001) 000010, attached as Ex. 1, as follows:

Residual Disability or residually disabled, during the Elimination Period, means that due to Injuries or Sickness:

1. you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;

2. you have a Loss of Monthly Income in your occupation of at least 20%; and

3. you are receiving care by a Physician which is appropriate for the condition causing the disability.

After the Elimination Period has been satisfied, you are no longer required to have a loss of duties or time.  Residual Disability or residually disabled then means that due to Injuries or Sickness:

1. you have a Loss of Monthly Income in your occupation of at least 20%; and
2. you are receiving care by a Physician which is appropriate for the condition causing the disability.

3.      In April of 1990, the Defendant extended improvements in coverage that changed, verified, or clarified his residual disability policy language.  *See*, the "Outline of Improvements in Coverage" attached as Ex. 2, bates-stamped Morgan 00282-00286. The "improvements" were directly applied to Dr. Morgan's policy referencing his residual disability provision, *See*, Form 335-RES, at Morgan 00285.

4.      The definition of Residual Disability was "enhanced".  See, Morgan 00286, as follows:

**DEFINITION OF RESIDUAL DISABILITY ENHANCED**

The definition of Residual Disability has been changed so that it now reads as follows:

> After the Elimination Period has been satisfied, you are no longer required to have a loss of duties or time.  Residual Disability or residually disabled then means that as a result of the same Injuries or Sickness:
>
> 1. You have a Loss of Monthly Income in your occupation of at least 20%; and
> 2. You are receiving care by a Physician which is appropriate for the condition causing the loss of Monthly Income.

After the satisfaction of the elimination period (where you are no longer required to have a loss of time or duties), reference to a "disability" has been removed and "Loss of Monthly Income" has been substituted to clarify our intent that a continuing loss of time or duties is not required beyond the elimination period.

**b.      It is undisputed that Dr. Morgan was residually disabled beyond the elimination period until October 20, 2019.**

5.      On November 21, 2019, UNUM sent Dr. Morgan a letter approving his disability benefits through October 21, 2019, the date of his last office visit with his cardiologist, Dr. Collazo.  *See*, letter bates-stamped UA-CL-LTD-NL 16575171 2496-

2498, attached hereto as Ex. 3.  The letter states that Dr. Morgan's elimination period was satisfied on October 1, 2019.  *See*, p. 2496.  The letter states "We approved your benefits to October 21, 2019 because you were unable to perform the material and substantial duties of your occupation as an Emergency Physician due to your medical condition of old myocardial infarction and ischemic cardiomyopathy." *See*, p. 2497.  This letter was signed by the lead disability examiner, Craig Hill, and indicates that UNUM was continuing to verify and discuss support for restrictions and limitations beyond October 21, 2019.  The restrictions and limitations are those completed by Dr. Morgan's cardiologist, Dr. Collazo to discontinue physical exertion due to chest pain, back pain and shortness of breath, behavior health restrictions as limiting emotional stress. He provides these restrictions and limitations for lifetime.  *See*, the approval letter at p. 2479.  The approval letter verifies a loss of earnings greater than 20% beginning in April of 2019 and a payment of the residual disability benefit under this individual disability policy with a period beginning at the end of the elimination period on October 1, 2019 to October 13, 2019 in the amount of $2,695.13.  *See*, p. 2496.

6.     Craig Hill's deposition testimony confirmed UNUM's determination that Dr. Morgan was residually disabled beyond the elimination period until October 20, 2019.  Dr. Morgan was disabled for work according to UNUM for eight (8) months which led to one month of payment and UNUM said that he was disabled from working as an ER physician past the elimination period. *See id.*, Ex. 4, deposition of Craig Hill, p. 237, l. 18 - p. 238, l. 8.

7.      Dr. Morgan's loss of income was due to his heart attack and heart condition because he no longer worked as an emergency room physician because his doctor told him not to go back to work in the ER.  *See*, Ex. 4., p. 237 ll. 1-14.

8.      UNUM determined that Dr. Morgan loss of income was greater than 20%, about 50%, and that the loss of income was due to his heart attack which caused him to be unable to work as an ER physician to at least October 21, 2019.  *See id.*, p. 238, ll. 5-17.

9.      The loss of income that Dr. Morgan had was due to his injury or sickness and UNUM determined that or they would not have paid Dr. Morgan his benefits.  *See id.*, p. 238, l. 18 - p. 239, l. 6.

**c.      It is undisputed that, after the elimination period had been satisfied, UNUM denied Dr. Morgan's residual disability benefits based upon a contention that Dr. Morgan was able to perform the duties of his occupation and his restrictions and limitations were not supported after October 21, 2019.**

10.      On January 24, 2020, UNUM issued its denial letter, attached as Ex. 5, bates-stamped UA-CL-LTD-NL 16575171 002592 – 002599, stating "We have determined that you are able to able to perform the duties of your occupation and your restrictions and limitations are not supported after October 21, 2019."  *See id.*, p. 2593. Mr. Hill verifies again that in their initial medical review, they had found support for his restrictions and limitations through October 20, 2019 and sets forth those restrictions and limitations from Dr. Morgan's cardiologist, Dr. Collazo.  *See id.*, p. 2593.

11.      Dr. Collazo states Dr. Morgan's restrictions and limitations as to discontinued physical exertion for chest pain, back pain and/or shortness of breath, limiting emotional stress that has been shown to prevent recurrent heart attacks, stress that increases

blood pressure, heart rate and vascular tone which can disrupt a vulnerable atherosclerosis plaque. Dr. Collazo recommends these restrictions and limitations from the date of disability on March 17, 2019 for the duration of Dr. Morgan's lifetime. Dr. Collazo's restrictions are that Dr. Morgan stop his ER practice due to the stress involved and to resume his office practice which is less stressful. Hill then notes that their physician had completed a review of the file and determined that the medical evidence does not support restrictions and limitations. *See id.*, p. 2594. Hill also then notes a review by a second physician who agreed with the conclusion of their first physician that Dr. Morgan's ongoing restrictions and limitations were not supported. *See id.*, p. 2595.

12.     The denial letter explanation concludes stating: "Based on our review, the information in your claim file indicates you are able to perform the duties of your own occupation and your Long Term Disability claim and Individual Disability claim have been closed effective January 24, 2020". *See id.*, p. 2595.

13.     UNUM's examiner, Mr. Hill, was aware of the change in the policy definition of residually disabled, after the elimination period has been satisfied, which drops the first requirement, numbered 1., that states, "you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them". *See*, Hill depo, Ex. 4, p. 232, l. 8-p. 233, l.6. Dr. Morgan had been disabled all the way through the elimination period and UNUM was addressing his eligibility for benefits after the elimination period. *See id.*, Ex. 4, p. 233, ll. 7-11. However, in consideration of the changed definition for residual disability, after the elimination period has been satisfied,

Mr. Hill still believed there had to be more than a loss of income - "He still needs to have restrictions and limitations and be treated by a physician".

14.    At UNUM, even after the elimination period, a person is still required to have restrictions and limitations from their job duties.  *See*, p. 233, ll. 12-18, also, p. 234, l. 22-p. 235, l. 20, also, p. 236, l. 17 - p. 237, l. 3.

**d.    It is undisputed that, after October 21, 2019, Dr. Morgan continued to be residually disabled under this policy definition.**

15.    The residual disability provision of the policy, after the elimination period has been satisfied, does **not** continue to require restrictions and limitations from your work duties, like UNUM did in denying this claim.  *See*, the policy provision above in ¶2.  In fact, the change in the definition of residually disabled, after the elimination period has been satisfied, is the deletion of the requirement that "you are not able to do one or more of your substantial and material daily business duties or you are not able to do you usual daily business duties for as much time as it would normally take you to do them" – the other two requirements remain the same.  *See*, the policy provision above at ¶2.  In fact, the residually disabled definition specifically provides that "After the elimination period has been satisfied, you are no longer required to have a loss of duties or time".  *See*, the policy provision above at ¶2.

16.    UNUM's adjuster knew and verifies what the policy says about residual disability, verifies that Dr. Morgan was after the elimination period and knows that Dr. Morgan was no longer required to have a loss of duties or time.  *See*, Hill depo, Ex. 4, p.

240, l. 2-p. 241, l. 18.  Hill knows that after October 21ˢᵗ, Dr. Morgan wasn't working as an ER physician anymore.  *See*, Ex. 4, p. 239, ll.7-13.

17.     Hill knows that Dr. Morgan's loss of income was due to his heart condition and heart attack but still believed Dr. Morgan had to meet restrictions and limitations.  *See*, Ex. 4, p. 236, l. 17-p. 237, l. 5.  *See, also* ¶14.

18.     UNUM denied Dr. Morgan's appeals on February 3, 2021, almost one year after this lawsuit had been initiated.  *See*, Ex. 6, February 3, 2021 Shannon Cartier letter to Mark Spencer, bates-stamped UA-CL-LTD-NL 16575171 3403-3413.   There UNUM stated: "Although your client continues to work full-time as an internal medicine physician and is incurring a 20% Loss of Monthly Income, the medical data reviewed supports your client has the functional capacity to also work as an ER physician in the same capacity as he was prior to disability if he chose to do so. Based on this, your client's Loss of Monthly Earnings is not due to injuries or sickness as required by the Individual Disability policy and he would therefore have the ability to earn income consistent with his Prior Earnings". Even in the context of the lawsuit, UNUM does not and cannot contest that Dr. Morgan continues incurring at least a 20% loss of monthly income (actually approximately 50%) due to the loss of his ER physician job following his heart attack.  Such facts are not in dispute and, again, UNUM's position is clearly that, if they determine Dr. Morgan is able to return to work at the ER, without any restrictions on his duties or time, then he is not residually disabled whether he actually has a loss of income from the ER of at least 20% or not.

19.     The policy only requires that you residually still have a loss of income as a result of a heart attack and contains no continuing criteria as to your ability to do the job, ability to find a replacement for the job or return to the job, any restriction or limitation on duties or time or other criteria imposed by UNUM.  *See*, the policy provision in ¶2.

20.     The residually disabled definition, after the elimination period,  has been satisfied, does still have a requirement for receiving appropriate care by a physician.  There is no contention in either denial letter, nor anywhere else, that Dr. Morgan was not receiving appropriate care from his cardiologist at any time for his heart attack and residual heart condition.  *See*, the denial letters at Ex. 5 and Ex. 6.  In fact, the Defendant continually ordered and received the updated medical records from Dr. Morgan's cardiologist, Dr. Collazo, and those ongoing treatments in 2019 and 2020 are noted in the final denial letter.  *See*, Ex. 6, p. 3406-3407.

21.     UNUM does not dispute that the enhancement provisions are now a part of Dr. Morgan's policy.  *See*, Ex. 2.  *See*, Ex. 7, deposition of the corporate representative, Matthew Masny at p. 101, ll. 10-15.  *Also id.*, p. 97, ll. 10-16, p. 98, l. 8-p.99, l. 7.

22.     Dr. Morgan's loss of income from his ER job was the result of his March 2019 heart attack.  *See*, ¶¶8, 9 and 17 above and the evidence attached thereto.

23.     UNUM's testimony confirmed that appropriate treatment from his cardiologist is not a basis for denial.  Matthew Masny, Defendant's 30(B)(6) representative and the claims manager that supervised Craig Hill and corresponded with Dr. Morgan in the handling of this disability claim, testified that Dr. Morgan continued to receive treatment with his attending physician and that there had never been an issue in the denial

15

of this claim with regard to him receiving care by a physician. *See*, Ex. 7, Matthew Masny depo, p. 75, l. 15-p. 76, l. 3. The physician care requirement was never an issue in the denial of this claim. *Id.*

24.     Similarly, UNUM readily admits that Dr. Morgan also had a loss of income greater than 20% at all times and that he continued to have the required loss of earnings. *See id.*, Ex. 7, p. 76, ll. 4-19. UNUM just argues that that loss of earnings was not due to an injury or sickness – even though it was from the ER job that he lost following his heart attack. UNUM argues that the admitted loss of income is due to Dr. Morgan not going to get himself another emergency room job and hypothetically replacing the income lost. It simply ignores the actual existing loss of income from the job that was actually lost following the heart attack.

25.     At UNUM, even after the elimination period someone would still need to have ongoing restrictions and limitations as a result of an injury or sickness in order to be considered residually disabled. *See id.*, Ex. 7, p. 84, ll. 8-18. This is the precise coverage issue presented by this denial that Plaintiff contends is incorrect as a matter of law and directly contrary to the insurance policy provision. UNUM unequivocally maintains that, even after the elimination period has been satisfied, the insured would still need to continue to have supported medical restrictions and limitations, which would be the injury or sickness that continues to cause the loss of income and the requirement for ongoing physician care. *See*, Ex. 7, p. 94, l. 11-p. 95, l. 16.

26.     The policy provision does not address replacing lost income, returning to work or ability to work, after the elimination period. As a residual disability benefit, it

provides a partial benefit based on residual lost income from the original event, even for people who actually do work (like Dr. Morgan).  See the provision in ¶2.

27.    UNUM's own Description of Enhancements describes this Residual Disability Definition as the "Income Only" test for Residual Disability after Elimination Period is satisfied.  *See*, Defendant's marketing chart sent to its own individual disability producers on November 1, 1991, Ex. 8 at p. DBD01901.  UNUM's memorandum dated July 22, 1987 to its field managers specifically states "The residual definition is used to determine if a person is disabled during the Elimination Period. Once the Elimination Period is satisfied, we only require a loss of income to collect the proportionate benefit." *See*, Ex. 9 at p. DBD01894. UNUM knows good and well that a "Income Only" test applies to this Residual Disability definition, after the Elimination Period has been satisfied, but continues in this improper denial and testimony in this case for the purposes of feigning some other belief in their summary judgment motion that will be filed today.

### III.  STANDARD OF DECISION

Rule 56(a), Federal Rules of Civil Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Court views the material undisputed[1] facts in light most favorable to the non-moving party.  *T.D. v. Patton*, 868 F.3d 1209, 1219 (10th Cir. 2017).  The Court's function at the summary judgment stage

---

[1] To determine which facts are not in genuine dispute, the Court must disregard any unsupported allegations, legal conclusions, or legal arguments couched as facts that appear in either party's statement of material facts or response thereto. *See, e.g., Chavez v. County of Bernalillo,* 3 F. Supp. 3d 936, 949 n. 4 (D.N.M. 2014).

is not to weigh the evidence and determine the truth of the matter asserted, but to determine whether there is a genuine issue for trial. *Birch v. Polaris Indus., Inc.,* 812 F.3d 1238, 1251 (10th Cir. 2015). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.*

Once the moving party has met its burden, the burden shifts to the nonmoving party to present sufficient evidence in specific, factual form to establish a genuine factual dispute. *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest upon the mere allegations or denials of its pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor v. Shahinpoor,* 358 F.3d 782, 786 (10th Cir. 2004). Unsupported conclusory allegations do not create an issue of fact. *Finstuen v. Crutcher,* 496 F.3d 1139, 1144 (10th Cir. 2007).

### IV.  CONSTRUCTION OF INSURANCE CONTRACT IN DIVERSITY JURISDICTION

Subject matter jurisdiction for this action is predicated upon diversity of citizenship. *See*, Second Amended Complaint, ¶¶1-2 [Doc. No. 29]. Therefore, the issues before the Court require consideration of Oklahoma law, as well as the Policy language. *State Farm Fire and Casualty Co. v. Pettigrew,* 180 F. Supp. 3d 925, 931 (N.D. Okla. 2016) ("The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state.") (quoting *Houston Gen. Ins. Co. v. Am. Fence Co., Inc.,*

115 F.3d 805, 806 (10th Cir. 1997)).[2] Under Oklahoma law, interpretation of an insurance policy, like any written contract, presents a question of law. *May v. Mid-Century Ins. Co.,* 2006 OK 100, ¶22, 151 P.3d 132, 140.

Oklahoma's rules of construction for insurance policies are the same as those for other contracts:

> An insurance policy is a contract. The rules of construction and analysis applicable to contracts govern equally insurance policies. The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made. In arriving at the parties' intent, the terms of the instrument are to be given their plain and ordinary meaning. Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect. A contract should receive a construction that makes it reasonable, lawful, definite and capable of being carried into effect if it can be done without violating the intent of the parties.

*May,* 151 P.3d at 140 (citations omitted); *State Ins. Fund v. Ace Transp. Inc.,* 195 F.3d 561, 564 (10th Cir. 1999) (applying Oklahoma law); *see also* 15 OKLA. STAT. §157 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others.").

"[I]nsurance contracts are contracts of adhesion because of the uneven bargaining position of the parties. Consequently, in the event of ambiguity[3] or conflict in the policy

---

[2] Neither party questions that the Policy here is to be interpreted under Oklahoma law.

[3] The absence of an express definition of a word or phrase within the policy does not necessarily render it ambiguous. Rather, the test to be applied in determining whether a word or phrase is ambiguous is whether the term is reasonably susceptible to two interpretations on its face. *Cranfill v. Aetna Life Ins. Co.,* 2002 OK 26, ¶7, 49 P.3d 703, 706. "This test for ambiguity is applied from the standpoint of a reasonably prudent layperson, not from that of a lawyer." *See id.* (citing *Couch on Insurance* 3d § 21:14 (1995)).

provisions, a policy of insurance is to be construed strictly against the insurer and in favor of the insured." *Spears v. Shelter Mut. Ins. Co.,* 2003 OK 66, ¶5, 73 P.3d 865, 868. In such an event, exclusionary provisions are narrowly construed against the insurer and words of inclusion are construed in favor of the insured. *See id.; Orthopedic Resources, Inc. v. Nautilus Ins. Co.,* 654 F. Supp. 2d 1307, 1313 (N.D. Okla. 2009) ("Under Oklahoma law, exclusionary provisions in an insurance contract are narrowly construed and 'words of exclusion are construed against the insurer and words of inclusion are construed in favor of the insured.'") (quoting *Timmons v. Royal Globe Ins.,* 1982 OK 97, ¶20, 653 P.2d 907, 913). The Court should not focus on a particular clause or take language out of context. *Shawnee Hosp. Auth. v. Dow Constr., Inc.,* 1990 OK 137, ¶6, 812 P.2d 1351, 1353.  If an insurance policy contains no ambiguity, the Court must construe its language in accordance with the plain, ordinary meaning of its terms. *Haworth v. Jantzen,* 2006 OK 35, ¶17, 172 P.3d 193, 197. Here, neither party argues that the applicable Policy provisions are ambiguous, but the parties advance divergent views regarding the scope of coverage based on that Policy language. The mere fact that the parties disagree or press for a different construction does not make a contract ambiguous.  *Pitco Prod. Co. v. Chaparral Energy, Inc.,* 2003 OK 5, ¶12, 63 P.3d 541, 545.[4]

---

[4] Even where an ambiguity is found, if the ambiguity results from the words used (a patent ambiguity), as opposed to some extrinsic fact (a latent ambiguity), the construction of the contract remains a question of law for the Court. *Walker v. Telex Corp.,* 1978 OK 13, ¶7, 583 P.2d 482, 485; *Paclawski v. Bristol Labs., Inc.,* 1967 OK 21, ¶24, 425 P.2d 452, 455; *Shepherd v. French,* 1980 OK CIV APP 13, ¶10, 612 P.2d 727, 729.

Whether this Policy provides coverage for residual disability, after the elimination period has been satisfied, irrespective of whether or not the insured is able to perform the duties of his occupation is a legal issue for the Court to decide. *Automax Hyundai South, L.L.C. v. Zurich Am. Ins. Co.,* 720 F.3d 798, 804 (10th Cir. 2013) (citing *Dodson v. St. Paul Ins. Co.,* 1991 OK24, ¶12, 812 P.2d 372, 376).

**V.   AFTER THE ELIMINATION PERIOD HAS BEEN SATISFIED, THE INSURANCE COVERAGE PROVISION FOR RESIDUAL DISABILITY BENEFITS DOES NOT ALLOW UNUM TO CONTINUE TO REQUIRE THAT DR. MORGAN BE UNABLE TO DO BUSINESS DUTIES**

Under Oklahoma law, it is a legal determination for the Court to determine the coverage provided by the insurance policy's terms, no doubt to prevent fabrications such as that presented by the Defendant in this case. The policy definition of residual disability very clearly drops the first requirement that the insured be not able to do one or more of their substantial and material daily business duties or not able to do the duties for as much time. The definition changes to drop this requirement and then specifically states that you are no longer required to have a loss of duties or time. The changed definition of residual disability, after the elimination period has been satisfied, only maintains the two requirements that you continue to have a loss of monthly income in your occupation and to receive appropriate care by a physician. Even UNUM describes this definition as "Income Only" test, after satisfaction of the Elimination Period. With a relatively absurd audacity, UNUM unequivocally maintains that they can still require the insured to continue to have "supported medical restrictions and limitations" on their duties or time – the same as must be demonstrated during the elimination period and continues to be required by

21

UNUM after the elimination period.  For that reason, the requirement that is dropped in the coverage definition really does not affect/change the coverage determination at all because UNUM can still use the "due to injuries or sickness" language to still impose the precise requirement that has changed and is deleted in the changed policy definition.  This position directly ignores a primary rule of insurance policy construction that the words must be interpreted to have had some meaning and effect.  The whole of a contract is to be taken together, so as to give effect to every part.  12 Okla. Stat. §157.

In trying to argue that they can still require an insured prove that they are unable to do the business duties (the same after the satisfaction of the elimination period as before), the Defendant cannot even make their argument utilizing the actual words of the policy.  In fact, when UNUM explains what they are doing, they explain exactly why it is not supported by the policy language.  UNUM's Vice President Team Leader, and 30B6 representative testified: "**If he is able to go back to work and either cannot find a job or chooses not to, that doesn't necessarily mean that he is continuing to be disabled due to a sickness.  And it doesn't necessarily mean that his loss of monthly income is due to a disability, but due to other factors, perhaps choice, available employment, something like that.**"  *See*, Ex. 7, p. 94, ll. 3-10.  UNUM ignores that the changed definition of residual disability does not require that the insured continue to be <u>disabled</u> due to a sickness – nor does the policy provision require that his loss of monthly income be due to a <u>disability</u>.  It is only UNUM, in their denial of coverage, that continues to consider whether Dr. Morgan is able to go back to work or not – the policy definition no longer has that requirement.

In fact, the changes to the policy in 1990 to "clarify our intent", appear aimed at avoiding the precise misconstruction advanced by the Defendant in its argument.  The definition of residual disability, after the elimination period has been satisfied, had already omitted the first requirement that the insured continued to be disabled from one or more of his duties due to an injury or sickness.  The remaining requirement of a loss of monthly income is never characterized as being due to a disability, but the other remaining requirement of physician care did state "for the condition causing the disability".  This language was changed in 1990 to specify appropriate physician care "for the condition causing the loss of monthly income".  UNUM specifically stated that the "reference to a "disability' has been removed" and "loss of monthly income" has been substituted to clear up our intent that a continuing loss of time or duties is not required beyond the elimination period".  This "Enhancement" was in connection with UNUM's utilization of the "Income Only" test with their IDI policies.  It is the continuing loss of income that triggers coverage, not any continuing "disability" from performing the work duties.  If there was ever any question as to the intent, there should be none remaining after 1990.  The condition causing the loss of monthly income is Dr. Morgan's heart condition of a heart attack with residual heart complications that caused his lost ER job.  The only other change in the 1990 clarifications of intent was a change to the words "as a result of the same injuries or sickness" in place of "due to injuries or sickness".  Again, the clarified intent explains that, if Dr. Morgan suffered a loss of monthly income and received appropriate care due to this heart condition (that cause him to be unable to do his business duties during the elimination period), then he would continue to be considered residually disabled after the elimination

period had been satisfied "as the result of this same" heart attack and heart condition so long as he continued to still have that loss of monthly income and appropriate physician care. The changes only emphasize the intent that is already abundantly clear in the policy language stating "you are no longer required to have a loss of duties or time". Mr. Masny gives his explanation based upon continuing disability, when continuing disability from being able to perform your work duties is simply no longer a requirement under the policy definition of residual disability, after the elimination period has been satisfied.

Mr. Masny's explanation does describe what they do in denying coverage under the residual disability policy provision. There was no consideration of whether Dr. Morgan could find a job or had even tried to find a job or the availability of employment – whether some emergency room would actually hire a 62-year old physician to work 12-hr night shifts, as a second job up against back-to-back day shifts, when his cardiologist had prescribed that he not do such work at all for a lifetime. Such considerations and factors are certainly not addressed by the policy and Mr. Masny is explaining that they don't matter to UNUM if the insured is "able to go back to work". Again, the same requirement that the policy provision specifically drops after you have been disabled for six (6) months is the dispositive requirement still imposed by UNUM. UNUM just says that if you are able to go back to work, then you are not residually disabled because your loss of monthly income is not due to sickness or "as a result of the same injury or sickness". In every instance, if you are able to work your old job duties, your loss of income is not due to an injury or sickness (or the result of the same injury or sickness). It has to be the result of something else, because the sickness is no longer preventing you from performing such

24

duties.  Although the requirements that you are unable to perform your work duties is deleted, it always still applies because, if you are able to do the duties, then your loss of income has to be caused by something other than the sickness.  It's ridiculous.  Someone who loses a job because they are unable to do the work for six (6) months <u>can</u> have a residual loss of income from that job loss, even after they are able to return to work.

The contention is particularly nonsensical in light of the admitted facts in Dr. Morgan's case.  UNUM repeatedly and unequivocally admits that Dr. Morgan's heart attack and whatever compromised function of his heart is what "did cause his loss of monthly income while he met the provision of residual disability, meaning that he had supported restrictions and limitations up to that October 2019 timeframe".   *See*, Ex. 7, p. 102, ll. 11-17 and UMF Nos 5-9. UNUM repeatedly and unequivocally admits that "in Dr. Morgan's case, for example, the condition that he is receiving care for still is his heart attack and his compromised heart function.  *See*, Ex. 7, p. 101, l. 24-p.102, l. 4 and UMF Nos. 7 and 23.  UNUM does not and has not ever disputed that Dr. Morgan continues to receive appropriate physician care from his cardiologist as a result of the same injury or sickness – his heart attack and his compromised heart function.  UNUM admits, determined and paid benefits beyond the elimination period acknowledging that the only other requirement, his loss of monthly income, was the result of the same injury or sickness.  But, after October 2019, a month after the elimination period had been satisfied, UNUM determined that Dr. Morgan's lifetime restrictions from work duties were not supported and that he was able to return to work and therefore, no longer residually disabled – although the residual disability definition no longer required that Dr. Morgan not be able

to do his work duties.  It doesn't even make sense.  The lost monthly income is the same earnings from the same emergency room job that Dr. Morgan lost months ago during the elimination period as a result of the same injury or sickness – the same lost job that UNUM already admitted was loss of income as a result of this same sickness.  He continues to have those same lost earnings from that same lost emergency room job as a result of the same heart attack and heart complications while being cared for by the same cardiologist – exactly as required by the definition for residual disability, after the elimination period has been satisfied.  But UNUM says that that lost income from his long lost emergency room job is not the result of the same sickness which forced him out of that job – it is due to his failure or inability to have gone out and pursued and successfully achieved replacement income – since he is able to do so.  There are no policy words, or arguable intent, even addressing such considerations.  This is simply an excuse for continuing to apply a requirement that the person actually continue to be disabled and continue to be unable to work, when that requirement has been specifically removed and is no longer applicable because it was already satisfied for the six (6) months as required under the residual benefits. These residual benefits are only for 50% of the policy benefit to match his 50% actual reduction in income and he would be paid about $5,000 per month after losing over $25,000 per month in ER income and for only a limited five year period.  There is nothing in the policy that requires anyone to go seek replacement income, to demonstrate the replacement income is no longer available to them in their profession or to otherwise address the issue of their reemployment.  Instead, the actual coverage provision specifically deletes ability to return to work as a requirement to qualify as residually disabled.  The

policy cannot both delete this requirement, intending some change, and still always apply if you are able to work now.  If you continue to have a loss of income, relative to your pre-disability earnings, due to the same job loss, your ability to hypothetically replace that income with a new job is irrelevant.  If you continue to have reduced income relative to your pre-disability earnings, then you get residual benefits based on your actual lower income.

We asked all of their representatives over and over and the undisputed facts pertaining to this disability claim are not in dispute at all.  It is simply a matter of whether or not UNUM can take the position that, if you are able to go back to work, then your loss of income is not a result of your same sickness that cost you your job and, therefore, they can still reject your claim based upon your ability to perform your work duties even though that requirement is already satisfied and removed after the elimination period.  The Defendant should not be allowed to argue this coverage position to the jury.

Plaintiff had already completed this Motion for Partial Summary Judgment based upon the clear language of this residual disability definition in this policy and was looking for authority realizing that it would have to come directly from UNUM since it was their unique definition. Fortunately, we discovered the case of *Denise B. D'Aprile v. UNUM Life Insurance Company, United States District Court for the Middle District of Florida, Ft. Myers Division, Case No: 2:09-cv-270 CEH-SPC* where the truth of this residual disability definition (and UNUM's clear knowledge of the same) is wholly revealed.  A former UNUM insurance agent revealed the truth and identified UNUM's own documents in this case.  *See*, the Declaration of Brian Abeles, [Doc. 151-34], Ex. 10.  Ms. D'Aprile, a lawyer

that bought an IDI policy from UNUM, addressed the "Income Only" test that the Defendant had pronounced when it wrote and sold these IDI products with this definition and enhancements of other policy definitions.  See, Plaintiff's Motion for Partial Summary Judgment, [Doc. 151] attached as Ex. 11.  Page 6 of that Motion explains that UNUM policies issued before and after the 1986-1994 time period require proof of partial impairment (i.e., a loss of time or duties) as a criterion for residual disability benefits.  *See,* the entire explanation at p. 6 to p. 8, [Doc. 151].  Because this case involved an attorney, the form number is P90 and her IDI policy is attached as Ex. 12 so that the Court can see on p. 7 of her policy that it contains this residual disability definition that has an "Income Only" test after the Elimination Period has been satisfied.  Also attached as Ex. 9, is the UNUM Memorandum dated July 22,1987 (just 14 days after the issuance of Dr. Morgan's policy) to all field managers and administration heads describing the "enhancements" that were based upon this new definition that had been on the street for over a year and seen sales that were beginning to meet expectations.  The enhancements were touted to bring greatly increased sales and the Memo on p. 4, BDB01894, Ex. 9, states the Residual Definition is used to determine if a person is disabled during the Elimination Period.  **Once the Elimination Period is satisfied, we only require a loss of income to collect the proportionate benefit.**  Of course,  the Court has seen that these same "Enhancements" were extended to the owners of Dr. Morgan's policy forms as well by a letter addressed to Dr. Morgan in April 1990, Ex. 2. at MORGAN 0282 and MORGAN 0286.  A subsequent letter dated November 1, 1991 attached as Ex. 8, to all of UNUM's individual disability producers contains a chart at DBD01901 where UNUM describes these Residual Disability

28

definitions by their feature of "Income Only" test for Residual Disability after Elimination Period is satisfied. As explained to Dr. Morgan in the letter to him, UNUM introduced a new policy series very similar to his but with several important coverage improvements and extended those provisions to his policy. See, Ex. 2 at. p. 282. UNUM has refused to produce such documentation in this case to date, but apparently the truth came out in the Florida case since they found a former UNUM IDI producer. It is clear that UNUM's IDI products during this time frame included this "Income Only" test in the Residual Disability definition, that it was a very profitable marketing tool for UNUM in those years, and that they know that only an income requirement remains, after the Elimination Period is satisfied, despite their improper denial and improper arguments in their testimony in this case.

In our attempts to elicit any other argument with any support from the policy, the 30B6 witness came up with one additional argument which also falls flat under the actual wording. UNUM cited to the loss of monthly income definition in the residual disability benefits which states that the loss of monthly income means the difference between prior monthly income and current monthly income. That is the over $25,000 per month that Dr. Morgan lost when he lost his emergency room job as a result of this same heart attack and heart condition. The definition then states "Loss of Monthly Income must be caused by the Residual Disability for which the claim is made". This policy language was tendered with the continuing argument that the insured must still be able to prove that they continue to be disabled and unable to work the ER job. It is a circular problem, but is simply UNUM continuing to include in the words Residual Disability a requirement that you are unable to

do the work.  This sentence and the loss of monthly income definition uses the capitalized words Residual Disability that are the words defined in the coverage definition at issue. The words mean two different things before and after the Elimination Period.  UNUM has already admitted and does not dispute that Dr. Morgan's loss of monthly income was caused by the residual disability for which the claim was made for a period of time extending beyond the elimination period.  His claim for disability beyond that time would involve a definition of residual disability that no longer had a requirement addressing whether or not he was able to perform his work duties or time.  The loss of monthly income after the elimination period has been satisfied must be caused by something that no longer is required to have a loss of duties or time – like the loss of an emergency room job income months ago as a result of the same heart attack and heart condition that was the cause of the loss of income all along.  There is simply no argument under the policy's coverage language that UNUM can consider someone to not be residually disabled based upon some alleged ability to return to work, after the elimination period has been satisfied and the definition of residual disability has changed.  This Court must determine as a matter of law that Dr. Morgan's claim for residual disability benefits was inappropriately denied for that reason.

MANSELL ENGEL & COLE

By:  s/Mark A. Engel
　　　Mark A. Engel, OBA #10796
　　　Kenneth G. Cole, OBA #11792
　　　Zachary K. Housel, OBA #32802
　　　204 North Robinson Avenue, 21st Floor
　　　Oklahoma City, OK 73102-7201
　　　T: (405) 232-4100 ** F: (405) 232-4140

30

E-mail: mengel@meclaw.net

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

     I hereby certify that on May 2, 2022, I filed the attached document with the Clerk of Court. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

                       s/Mark A. Engel