## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD R. MORGAN,<br><br>                              Plaintiff,<br><br>v.<br><br>PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, a foreign corporation<br><br>                              Defendant. | Case No: 5:20-cv-180 D |

## PLAINTIFF'S TRIAL BRIEF

Plaintiff Richard R. Morgan, M.D., respectfully offers the following Trial Brief to apprise the Court of the authorities upon which he relies in support of his claims that: 1) punitive damages should be submitted to the jury; 2) the jury may return separate verdicts and separate punitive damage awards for Defendant's fraud and deceit in the sale of the policy and for the Defendant's breach of its duty of good faith and fair dealing; and, 3) Dr. Morgan must recover in this action all compensatory and consequential damages as a result of the tortious conduct. Should other issues arise, Dr. Morgan will provide Memoranda of Law as necessary and as directed by the Court.

## ARGUMENT AND AUTHORITY

### I.    PUNITIVE DAMAGES SHOULD BE SUBMITTED TO THE JURY

"A plea for punitive damages is generally considered to be an element of recovery of the underlying cause of action; it does not constitute a separate cause of action." *Rodebush By & Through Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, 867 P.2d 1241, 1247. Indeed, a plea for punitive damages is redundant since a plea for general damages is sufficient to allow a plaintiff to recover both general damages and exemplary damages. *Acton v. Culbertson*,

1913 OK 160, 132 P. 812, 816.  This is also the general rule as stated in 22 AM. JUR. 2D, DAMAGES, § 293.  *Accord, Smith v. Warehouse Mkt., Inc.*, 1978 OK 125, 586 P.2d 724, 726 ("in this state a claim for punitive damages cannot be a separate and independent cause of action, but is only incidental or collateral to the claim for actual damages").  The evidence supporting a claim for punitive damages cannot be separated from that supporting a claim for actual damages.  Both types of damages are part of one and the same claim for relief.

Oklahoma's punitive damage statute has separate subsections **specific to insurance bad faith actions** and makes it clear that in cases alleging bad faith against an insurer, punitive damages are appropriate where the jury finds by clear and convincing evidence that an insurance company either recklessly disregarded its duty to deal fairly and in good faith with its insured, or intentionally and with malice breached its duty to deal fairly and in good faith with its insured.  23 O.S. § 9.1(B)(2), (C)(2). The reasonableness of Defendants' conduct must be judged in light of the applicable law which it is deemed to know.  *Timmons,* 1982 OK 97, 653 P.2d 907, 913-914; *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 611-612 (10th Cir. 1994).

The applicable standard in considering whether to submit punitive damages to the jury is the same as that which applies to the submission of bad faith to the jury, i.e., whether there is any evidence upon which a reasonable juror could find in favor of the Plaintiff.  In bad faith cases, 23 O.S. § 9.1, specifically mandates a **jury** finding on the fact issues of recklessness and intent.  The Court's role is to make a threshold finding whether the evidence, construed most favorably to Plaintiff, shows that a prima facie case has been presented, which **could** support a jury verdict on those issues.  The Court does not weigh the evidence, but rather only looks to see if there is any competent evidence that could support a jury finding of reckless disregard or intentional conduct. The Oklahoma Supreme Court has spoken directly on this issue:

**... [In *Sides v. Cordes, Inc.,* 1999 OK 36, 981 P.2d OK 26], we … noted that previous cases provide that the trial court has a duty to submit a punitive damages question to the jury unless there is a complete lack of evidence to support an inference of the conduct required by § 9.**

Title 23 O.S. Supp.2002 § 9.1 is the current statutory vehicle that governs all claims for punitive damages.  **The current version of the statute, § 9.1, expands the factors and it is directed at the jury, and not the reviewing court**.  It allows an award of punitive damages based upon several enumerated factors such as: the seriousness, profitability, duration, concealment, and awareness of the misconduct; and the attitude and financial condition of the employer.  Categories of the defendant's conduct are created which limit punitive damages to $100,000.00 where the defendant has acted in reckless disregard to the rights of other and to $500,000.00 where the conduct is intentional and with malice….

**Nothing in the current statutory framework changes the trial court's responsibility to determine whether *any competent evidence* exists which would warrant submission the question of punitive damages to the jury.  Once this determination is made, the statute guides the jury as to the many factors of conduct to consider, the level of conduct, and the degree of proof necessary to make an award of punitive damages, if any.** [*Estrada v. Port City Properties, Inc*., 2011 OK 30, 258 P.3d 495, 502-04] [footnotes omitted; emphasis added].[1]

Once the Court has made the threshold finding that competent evidence exists which would warrant the submission of punitive damages to the jury, it is **the jury** which is charged with answering two questions at the close of the evidence to determine whether and at what level punitive damages should be awarded.  If evidence was presented sufficient to make out a prima facie case for reckless disregard or intentional conduct, the questions must be submitted to the jury.  The jury then applies the correct standard of proof, as instructed by the Court.  Subsequently,

---

[1] *See also Sides v. John Cordes, Inc.,* 1999 OK 36, ¶14, 981 P.2d 301, stating:

> When reviewing the proof's sufficiency, the question is whether a prima facie case has been presented.  A prima facie case is made out by that quantum of proof which, if unexplained or uncontradicted, is sufficient to establish a given fact and to uphold a judgment in favor of the issue which it supports, but which may be refuted by other evidence.  The evidence may be direct or it may be such as supports an inference in favor of the fact in question.  **In the context of a punitive damages award, one's successful presentation of a prima facie case gets the issue of punitive damages to the jury** [footnotes omitted; emphasis added].

in a separate proceeding, the amount of punitive damages, if any, is considered.  Clearly, according to the current statute, the issue of punitive damages is for the jury to decide.

"Punitive damages are not limited to cases where there is direct evidence of fraud, malice or gross negligence, and such damages may be allowed when there is such reckless and wanton disregard of another's rights that malice and evil intent may be inferred."  *Sunray DX Oil Co. v. Brown*, 1970 OK 183, 477 P.2d 67, 70.  *See also Slocum v. Phillips Petroleum*, 1983 OK 112, 678 P.2d 716, 719 (noting that malice may be **presumed** when a person commits willful acts in reckless disregard of another's rights or safety).  Malice may be shown by "an indifference to or conscious disregard" of the rights of another justifying an award of punitive damages.  *Alsobrook v. National Travellers Life*, 1992 OK CIV APP 168, 852 P.2d 768; *McCorkle v. Great Atlantic Ins. Co.*, 1981 OK 128, 637 P.2d 583, 586.  Malice is defined in OUJI (Civ. 2d) No. 22.5 to include doing of a wrongful act intentionally without just cause or excuse.  No "evil intent" is required for the imposition of punitive damages under Categories I and II.

Here, based upon the evidence and the reasonable inferences therefrom, a jury could reasonably so find.  Indeed, the evidence in this case shows that Dr. Morgan bought this insurance policy at the time when he was first beginning to "moonlight" as an ER physician.  He already had a full-time day job.  He knew that St. Anthonys would be providing his disability insurance for his day-time occupation and that he needed disability income insurance for his second job as an ER physician.  UNUM's agent was aware of his circumstances and insurance needs at the time of the sale of this policy.  This UNUM product was referred to as a specialty income disability policy and was marketed promising physicians that they would receive the policy's total disability benefits if they were disabled from their specialty, even if they could continue in other work as a physician.  However, this general promise is not true if the physician is working in two (2)

occupations at the time of disability.  Under those circumstances, the physician would only be entitled to the policy's residual disability benefits.  This sales agent knew that he could not make this sale to this customer seeking to insure his second job, unless he lied about the coverage.    The Defendant's sales agent, knowing Dr. Morgan's circumstances, still promised him that he would receive the policy's total disability benefit any time he was disabled from his ER specialty work.  The agent concealed the fact that he would only be entitled to a residual benefit under his dual occupation circumstance.  Indeed, Dr. Morgan was not even aware that there was a residual disability benefit or any benefit in the policy other than the full total disability benefit that was promised to him by the sales agent.  The truth of these facts is almost self-evident.  Dr. Morgan was obviously purchasing the disability income protection for his second job in the emergency room.  Why would he purchase a product that penalized him if he had a second job when he knew that it was his second job?  There were other competing disability products available that would pay their total disability benefit on any disability from your specialty that did not have this same penal definition of occupation based upon dual occupations.  The sales agent would not have been able to sell this product to Dr. Morgan had he disclosed the truth of this policy's provisions relative to dual occupations.  It was certainly a deceitful and improper circumstance for the sales agent to be promising the total disability benefits on disability from the ER work without full disclosure of how that specialty feature was affected by working two (2) jobs.  Such a representation (and omission) in the context of Dr. Morgan just taking on his second job moonlighting as an ER physician was clearly intentional and without any justifiable basis – or at the very least a reasonable juror could so find.

UNUM's conduct, thirty (30) years later, in the handling of Dr. Morgan's claim was equally improper.  It is quite obvious that a 60 year old Dr. Morgan, following his massive heart

attack, should appropriately discontinue working his 36 hour shifts and 80 hours a week that resulted from his nights and weekends at the ER.  Aside from the long hours, his cardiologist described his very basic physical limitation – he would need to discontinue any physical exertion for chest pain, back pain or shortness of breath requiring him to take his nitroglycerin and sit or lie down until it subsided.  His duties in the emergency room would not allow him to discontinue in such fashion if facing a life threatening emergency.  The UNUM doctors utilized in the denials, when looking at the actual physical limitation, all agree with the cardiologist's physical limitation. When Dr. Morgan was engaged in such duties at the ER is when he suffered his heart attack and they were forced to close the emergency room as a result.  UNUM's own doctor, Dr. DiDonna, concurred that Dr. Morgan needed to discontinue his second job as an ER physician, at least "if he wanted to live a long time".  UNUM had already approved his residual disability benefits under the policy and began to make payment on them.  UNUM might still be honoring payment of those benefits today except that Dr. Morgan made a late discovery that he was also insured under an ERISA policy that was carried by an employer group that had taken over the employment of the ER physicians in recent years.  When the claim file documents first reflect recognition that there was a pending ERISA claim as well, then UNUM went to work on their review process to deny that there was a disability.  This late recognition of the ERISA claim principally caused the reprehensible conduct in the Defendant's claim denial.  UNUM knew that the claim was beyond the elimination period and that they would continue to owe the residual benefits of the policy based solely upon the doctor's continued loss of the ER income.  But, UNUM did not want to be in a position of having acknowledged Dr. Morgan's disability from his ER job, at the same time that they were denying his ERISA benefits for the same disability.  Of course, once UNUM had initiated the review for denial by the UNUM physicians, they knew they would get a report to

support denial.  The evidence is that these UNUM doctors all rubber stamp support for denial in over 95% of their reviews – literally opining that their insured's attending physicians are simply wrong in the limitations and restrictions that they prescribe on the patients that they treat 95% of the time.  These reviewing physicians aren't even asked the right question, nor provided any of the pertinent language of the insurance policy.  They are provided a standard description of light duty work without any of the considerable factual details surrounding Dr. Morgan's extended hours, stressful ER work, and simple, irrefutable limitations and restrictions from his cardiologist.  The anticipated denial reviews were secured and the denial letter reports that these physicians entered opinions on matters to which they did not opine at all.  None of these doctors disagreed with Dr. Collazo's restrictions and limitations.  None of these doctors considered or opined that Dr. Morgan could/should return to working 36 hour shifts and 75 hours a week including nights and weekends in the ER.  The denial letters claim they rendered such opinions, but they did not at all. Perhaps most importantly, the Defendant did not want to include the actual pertinent policy provision for residual disability benefits in the denial letter at all because that policy provision would reveal that Dr. Morgan was eligible based upon his loss of income alone.  Instead, the denial of the ERISA benefits was merged with the denial under this specialty income policy and the Defendant's denial letter set out only the provisions under the ERISA policy, stating that the benefits of both policies were being denied based upon what was provided in the ERISA policy.  This ploy almost worked and only a very careful review of the policy provisions could reveal UNUM's subterfuge.  Dr. Morgan's appeals were denied utilizing the same improper reviews without even having the physicians see or opine on the relevant information and provisions.  UNUM has been fined by their Oklahoma regulator and promised to discontinue these practices, but they persist.  The intentional, institutional nature of UNUM's conduct is apparent.  UNUM and its medical

consultants completely ignored Dr. Morgan's stressed based disability claim, even when one of the medical reviewers suggested that he was not qualified to address such claims and that UNUM should seek a specialist to review the same.  UNUM persisted in its improper denial of the residual disability benefits, only in an attempt to escape its obligations under a much larger ERISA disability benefit.  None of this conduct is claimed to have been a mistake, but rather was intentional actions without any justifiable cause or excuse.

"Where there is evidence that would 'support an inference of gross negligence or reckless disregard/indifference for the safety of others ... the Trial Court [is] not free to refuse to submit and instruct on the issue of punitive damages.'"  *Hightower v. Kansas City S. Ry. Co.*, 2003 OK 45, 70 P.3d 835, 850 fn. 28 (citing *Shuman v. Laverne Farmers Coop.,* 1991 OK CIV APP 2, 809 P.2d 76, 79).  Because there is evidence of both recklessness and intentional conduct,  Dr, Morgan respectfully submits that the issue of punitive damages must be submitted to the jury as to both Dr. Morgan's claim of fraud and deceit and as to his claim for breach of the Defendant's duty of good faith and fair dealing.

## II.    THE JURY MAY RETURN SEPARATE VERDICTS AND SEPARATE  PUNITIVE DAMAGE AWARDS FOR DEFENDANT'S FRAUD AND DECEIT IN THE SALE OF THE POLICY AND FOR THE DEFENDANT'S BREACH OF ITS DUTY OF GOOD FAITH AND FAIR DEALING

Dr. Morgan's fraud claims and his bad faith claim are not alternative theories which seek to recover damages for the same tortious conduct.  Rather, Dr. Morgan's claims are based upon different tortious conduct by the Defendant which occurred at different times 30 years apart – first in the solicitation and sale of the policy in 1987, and second, years later, in the handling of his claim for disability benefits under the policy.  There is no prohibition against awarding damages to compensate Dr. Morgan for harm caused by both courses/types of tortious conduct. Nor is there any prohibition against punishing Defendant for both types of tortious conduct by imposition of

separate punitive damage awards. Two separate awards, based upon different harm caused by different conduct which occurred at different time, do not constitute a "double recovery."

Under Oklahoma law, both compensatory and punitive damages may be recovered for fraud and deceit. *See*, *e.g.*, 76 O.S. § 2 ("One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers); *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308 (10th Cir. 1998) (under Oklahoma law, submission of punitive damages to jury was appropriate where jury found defendant liable for torts of fraud and deceit and not solely for breach of contract). Compensatory and punitive damages may also be recovered for an insurer's breach of its duty of good faith and fair dealing. *E.g.*, *Christian v. Am. Home Assur. Co.*, 1977 OK 141, 577 P.2d 899, 904 ("We approve and adopt the rule that an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought.."). In this case, Dr. Morgan has asserted a claim against UNUM for its fraud and deceit arising from the **solicitation and sale** of the policy and a claim against UNUM for breach of the duty of good faith and fair dealing arising from its later **handling** of his claim for disability benefits. The two claims are based upon **separate conduct** occurring at **separate times**, and each type of conduct would independently support an award of compensatory and punitive damages.

Because the two types of conduct arise from different conduct which occurred at different times, the jury is entitled to return: 1) a verdict which awards compensatory damages against the defendant on Dr. Morgan's fraud/deceit claim; 2) a verdict which awards compensatory damages for defendant's breach of the duty of good faith and fair dealing; 3) a verdict awarding punitive damages against the defendant on Dr. Morgan's fraud/deceit claim and 4) another verdict which

awards punitive damages against the Defendant on Dr. Morgan's bad faith claim.  In cases such as this, where two or more types of tortious conduct occurring at different times are alleged, multiple punitive damage awards are not duplicative and are permissible.  *See*, *e.g.*, *Mason v. Oklahoma Tpk. Auth.*, 115 F.3d 1442, 1460 (10th Cir. 1997), *overruled on other grounds, TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011) stating "[i]n some cases, **multiple punitive damage awards on overlapping theories of recovery may** not be duplicative at all, but may instead **represent the jury's proper effort to punish and deter *all* the improper conduct underlying the verdict**" (italics in original; other emphasis added).[2]  In support of its statement, the *Mason* Court cited *Robertson Oil Co. v. Phillips Petroleum Co.,* 14 F.3d 373, 383 (8th Cir.1993), *overruled on other grounds*, *Cottier v. City of Martin*, 604 F.3d 553 (8th Cir. 2009). There, the Eighth Circuit affirmed separate punitive damage awards, each in the amount of $4,000,000, on overlapping tortious interference and fraud claims where it found that the "nature, extent, and enormity of the wrong, [and] the intent of the party committing it" differed with respect to each of the awards.  14 F.3d at 382.  *See also*, *Atchley v. Nordam Group, Inc.,* 180 F.3d 1143, 1151-52 (10th Cir.1999) (permitting the recovery of both punitive damages under Title VII and liquidated damages under the Family and Medical Leave Act); *Goodrich v. International Bhd. of Elec. Workers,* 712 F.2d 1488, 1490 n. 2 (D.C.Cir.1983) ("A plaintiff may be awarded monetary relief under both [the Equal Pay Act and Title VII of the Civil Rights Act] provided that each is satisfied and the plaintiff does not recover for the same wrong under both provisions"); *Davis v.*

---

[2] As the *Mason* Court further stated" it is clear the jury found the discharge was motivated by two distinct, illegal factors: (1) political discrimination; and (2) retaliation for Mason's refusal to violate state law. One motivation violated Mason's constitutional rights, while the other violated Oklahoma public policy.  **Society has an interest in punishing Scott for *both* illegitimate intents**. In other words, while punitive damage awards on both a section 1983 and wrongful discharge claim may, in some cases, constitute double recovery, such awards are not duplicative *per se.*  115 F.3d at 1460 (bold added; other emphasis in original) .

*Holsman*, 695 N.W.2d 41, 2004 WL 2388079 (Iowa Ct. App. 2004) ("We conclude the liquidated and punitive damages awarded in this case address two separate and distinct wrongs and do not constitute double recovery.  Holsman violated the Iowa Wage Payment Collection Law by failing to pay Davis the wages he was entitled to receive under the one-year employment contract.  In contrast, Holsman committed retaliatory discharge when he terminated Davis in violation of public policy for demanding those wages.  While both claims arise out of the same set of operative facts, they do not merely represent alternative theories of recovery.  Rather, the claims are separate and distinct wrongs, and Davis is entitled to recover for each of those wrongs … Because the wrongs underlying both of Davis's claims are different, the award of both liquidated and punitive damages did not constitute an impermissible double recovery").

This is not a case where two alternative legal theories seek to recover damages for the same wrongful conduct committed by UNUM.  Rather, this is a case in which UNUM committed two separate torts, at two different times, each of which is independently compensable and deserving of censure.  It committed fraud and deceit in the solicitation and sale of the policy and, later, breached its duty of good faith and fair dealing in the handling and denial of the claim here at issue.  Dr. Morgan is entitled to be compensated for the harm occasioned by both types of conduct and, as in *Mason*, society has an interest in punishing and deterring both types of wrongful conduct.  Dr. Morgan respectfully submits that the jury may properly return separate compensatory and punitive damage verdicts on his fraud/deceit and insurance bad faith claims.

## III.   DR. MORGAN MUST RECOVER ALL OF HIS DAMAGES, INCLUDING LOSS OF BENEFIT COVERAGE AFTER THE TRIAL

In the Final Pretrial Report, Defendant has included a contention that Dr. Morgan can only recover currently due policy benefits and may not recover "future benefits."  UNUM, obviously, would have faced this issue on a number of occasions and should not have asserted such

contentions given the involved claims of tortious conduct.  UNUM should be prevented from presenting such improper contentions to the jury.  Dr. Morgan will turn 65 in 2024 and the remaining residual disability benefits to which he might be entitled terminate under the policy at that time and are relatively inconsequential.  However, Dr. Morgan should be allowed to recover all of the loss of policy benefits that he suffered as a result of Defendant's bad faith denial.  Dr. Morgan's fraud claim involves a promise that he would be entitled to the policy's total disability benefits, if he ever had to discontinue working as an ER physician, and those benefits are payable for his lifetime.  As damages for the fraud in the sale of this policy, Dr. Morgan seeks the loss of these total disability benefits and his other consequential damages.  Obviously, Dr. Morgan can only bring this fraud action once and will not ever have another opportunity to recover any of his damages from this fraud claim.  He must recover for all of his loss of the promised total disability benefits, whether it was the benefits between the time of his disability and the time of the trial or total disability benefits that might reasonably be expected between the time of the trial and the remainder of his lifetime.

This issue should not even be contested in this case as a result of the involved fraud claim. Obviously, UNUM has addressed it in other cases.  See, i.e., *Wright v. UNUM Life Ins. Co.,* 2001 WL 34907077 (D. S.C. 2001).  However, in cases that involve ongoing policy benefits, it is common for the Defendant to attempt to restrict the Plaintiff's recovery at trial to only those policy benefits that would have accrued to the date of the trial.   Defendant has such a contention in their Final Pretrial Report contentions.  Such contentions are routinely rejected by the Courts because the insurance company has already repudiated their obligations under the contract and there is no assurance the insurer would honor such obligations in the future to prevent the need for recurring litigation.  More importantly, Dr. Morgan has just this one lawsuit to recover his damages for

Defendant's wrongful conduct and must recover all those damages in this case.

This case presents an excellent example. Dr. Morgan purchased and was promised a $10,200 a month income benefit for Total Disability that is payable for the remainder of his life. In fact, this Total Disability Benefit in the amount of $10,200 a month is the only benefit that Dr. Morgan realized existed in this insurance policy at all. This Court has determined that Dr. Morgan is only entitled under the insurance policy to its Residual Disability Benefit, which is about half that amount. The residual benefit is restricted to below age 65 and he will be 65 in 2024. Dr. Morgan's only right to recover the full total disability benefits that were promised to him on his disability from his ER work is through his fraud claim presented by this case. Dr. Morgan could never bring another fraud case based upon his purchase of this insurance policy from the Defendant in the future and Defendant would have no obligation to pay him such benefits in the future. Dr. Morgan must recover, in this case, all damage that he suffered as a result of this tortious conduct and that includes loss of this total disability payment in the amount of $10,200 a month for his lifetime.

In a fraud case, the Plaintiff may recover "any damage which he thereby suffers". 76 O.S. §2. The OUJI instruction for this cause of action is in accord stating that the Defendant "is liable for any injury which (Plaintiff) thereby suffers". *See*, OUJI 18.12. The authority with respect to the bad faith action is similar.

Oklahoma adopted its insurance bad faith jurisprudence from California. *See Christian v. American Home Assur. Co.,* 1977 OK 141,577 P.2d 899,904 (citing *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 510 P.2d 1032 (1973)). California has long held that damages for future benefits are recoverable as a consequential damage in a tort action for breach of an insurer's duty of good faith and fair dealing. *See, Egan v. Mut. of Omaha Ins. Co.,* 24 Cal. 3d 809, 824, 620 P.2d 141, 149

(1979), *cert. denied and appeal dismissed,* 445 U.S. 912 (1980), stating:

> Mutual also contends that the compensatory damage award should be reversed because the trial court permitted the jury to award future policy benefits .... We have never held ... that future policy benefits may not be recovered in a valid tort cause of action for breach of the implied covenant of good faith and fair dealing.... Thus, **in applying to these facts the general rule for fixing tort damages (Civ. Code, s 3333), the jury may include in the compensatory damage award future policy benefits that they reasonably conclude, after examination of the policy's provisions and other evidence, the policy holder would have been entitled to receive had the contract been honored by the insurer** [emphasis added].

*See, also Wright v. UNUM Life Ins. Co.,* 2001 WL 34907077, at *11-12 (D. S.C. 2001) (denying defendant's motion for summary judgment on the issue of plaintiffs ability to recover future policy benefits as part of tot consequential compensatory damages in bad faith case, noting that South Carolina had adopted its bad faith law from California); *Greenberg v. Paul Revere Life ins. Co.,* 91 F. App'x 539, 541 (9th Cir.2004) (noting that under Arizona law, an award of future damages is consistent with tort requirement of "direct and proximate" causation "where there is evidence that (1) the insured will continue to be 'entitled' to disability benefits, and (2) the insurer will continue to deny those benefits") (footnote call numbers omitted); *DeChant v. Monarch Life Ins. Co.,* 554 N.W.2d 225, 228 (Wis. Ct. App. 1996) (jury's factual conclusion that defendant breached disability policy in bad faith equated to a legal determination that the defendant had repudiated the policy and authorized it to award future disability benefits as a lump sum; ); *McGregor v. Paul Revere Life Ins. Co.,* 92 Fed. App'x 412 (91h Cir. 2004) (noting that an insured who proves bad faith may recover both accrued and future policy benefits); *Hangarter* v. *Provident Life & Acc. Ins. Co.,* 373 F.3d 998 (9th Cir. 2004)(same); *Pistorius* v. *Prudential Ins. Co. of America,* 123 Cal.App.3d 541 (Cal. Ct. App. 1981) (same).

An insurer that has breached its obligations under the policy should not at the same time be allowed to enforce conditions precedent or other provisions under the same policy it has breached.  Rather, the insured must recover all damages he would have been entitled to but for the

insurer's breach.   The damages available in Oklahoma for the **tort** of bad faith include "consequential and, in a proper case, punitive damages .... " *Christian,* 577 P .2d at 904. In a fraud case, the Plaintiff may recover "any damage which he thereby suffers." 76 O.S. § 2. Dr. Morgan may bring his fraud and bad faith action for deceiving him in the sale of the policy and exercising bad faith in the handling of his claim only once, and he **must** therefore recover all available damages in that one action. Because foreseeable consequential damages in the form of the loss of policy benefits in later years due to Defendant's tortious conduct are available for both fraud and bad faith, Defendant's contentions to the contrary should not be allowed before the jury.

**MANSELL & ENGEL**

By:   s/Mark A. Engel
         Mark A. Engel, OBA #10796
         Zachary K. Housel, OBA #32802
         204 North Robinson Avenue, 21st Floor
         Oklahoma City, OK 73102-7201
         T: (405) 232-4100 ** F: (405) 232-4140
         E-mail: mengel@meclaw.net
                    zhousel@meclaw.net

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2023, I filed the attached document with the Clerk of Court. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

s/Mark A. Engel