## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICHARD R. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-20-180-D |
| | ) | |
| PROVIDENT LIFE AND ACCIDENT | ) | |
| INSURANCE COMPANY, a foreign | ) | |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S TRIAL BRIEF

Defendant Provident Life and Accident Insurance Company respectfully submits the instant Trial Brief.  The parties in this case have very different views of what is at issue and will be the subject of the trial.  Resolving such issues will greatly affect the length of trial, the witnesses that are called and the evidence that is offered.  It will also allow the parties to meaningfully evaluate the value of Plaintiff's claim.

## BACKGROUND

Provident Life had long interpreted its individual disability policy (the "IDI Policy") issued to Plaintiff, as requiring Plaintiff to continue to establish that any loss of income suffered continued to be due to the continuing disability after the elimination period in order to qualify for residual benefits under the IDI Policy.  On March 30, 2023, this Court issued its ruling on summary judgment, finding that Provident Life had misapplied the policy provisions at issue.  Doc. 85. Contrary to Provident Life's understanding and practice, the Court determined that once Provident Life determined that Plaintiff was

1

disabled during the elimination period, the only requirement necessary thereafter to continue to recover residual disability benefits was to have lost sufficient income due to the disability and to be receiving care by a Physician which is appropriate for the condition causing the disability.  *Id.* at 14-15.

Based on the Court's ruling, Defendant can identify only three issues that remain for trial: (1) whether, and how long, Plaintiff can be awarded residual disability benefits into the future (*i.e.*, past the date of trial), specifically in light of the requirement for continued treatment by a physician; (2) if Provident Life violated its duty of good faith and fair dealing in previously terminating Plaintiff's residual disability benefits; and (3) whether Plaintiff can obtain "total" disability benefits based on the alleged fraud by the agent selling Plaintiff his policy thirty years ago.

Plaintiff, however, appears to believe that he can recover all past ***and future benefits*** under both his IDI Policy and his separate ERISA group policy (not at issue in this case), the latter as a part of his bad faith damages.  These two very different views lead to substantial variations in the scope of the trial, the witnesses to be called, the evidence to be put forward and the potential damages at issue.

## I.  Plaintiff Cannot Recover Benefits Without Meeting the Court's Definition of Residual Disability.

The Court has identified two conditions necessary for Plaintiff to qualify for residual disability benefits: "1) a loss of income in the insured's occupation as a result of the same injury or sickness and 2) continuing to receive care by a physician for the condition causing the loss of income."  Doc. 85, at 15.  As a result, Plaintiff will be required to provide

evidence at trial of both the amounts he is continuing to lose from his cessation of work as an emergency room physician and that he is continuing to make in his office practice, to ensure that the loss is sufficient to meet the residual disability threshold.  In addition, Plaintiff will be required to present evidence that he has continued to receive care by a physician for his heart attack.

### II. Plaintiff Cannot Recover Future Benefits.

In Oklahoma, it is axiomatic that an insured cannot recover future benefits under a disability policy that have not accrued, and which in the course of events might never accrue.  *See Henderson v. Nat'l Fidelity Life Ins. Co*., 257 F.2d 917, 919 (10th Cir. 1958); *Bowman v. Iowa State Travelers Mut. Assur. Co.*, 449 F. Supp. 60, 63 (E.D. Okla. 1978); *see also Buergi v. Life Ins. Co. of N. Am.*, CIV000401JCLFGACE, 2000 WL 36739565, at *1 (D.N.M. Sept. 11, 2000) (citing same).

In *Henderson*, the Tenth Circuit considered a health and accident policy where the insured was also required to continue paying the premiums.  Relying on two Oklahoma cases for substantive authority (as breach contract is an issue of state law), the court determined that when a contract is one to pay money at specified times, an insured cannot recover for future benefits that have not accrued and might not accrue.  *Id*. at 919.   The court also indicated that 23 O.S. § 22, which provides that the detriment caused by the breach of an obligation to pay money only is the amount due by the terms of the obligation. *Id.*

The *Henderson* court first examined *Mid-Continent Life Ins. Co. v. Walker*, 1926 OK 283, 260 P. 1109.  There a jury had awarded a plaintiff who was disabled under a life

insurance policy $25 per month from the date he was disabled until the time of the lawsuit, and the further sum of $25 per month into the future until the insurance company could show that plaintiff was no longer disabled. The Oklahoma Supreme Court reversed, finding that the policy contained a reasonable provision requiring the plaintiff to furnish due proof of continued disability once a year, and that if the plaintiff recovered from his injuries, the compensation must cease, "as the contract did not contemplate a permanent pension for a temporary injury." *Id.* at 1112.

Similarly, in *Mid-Continent Life Ins. Co. v. Christian*, 1932 OK 280, 23 P.2d 672, the Oklahoma Supreme Court considered a health and accident policy that paid a weekly disability benefit and required the insured to pay an ongoing annual premium. The jury was instructed that if the insurance company wrongfully repudiated its contract, plaintiff could recover the present value of the future policy benefits based on his life expectancy. *Id.* at 673. The court reversed, holding that the amount of plaintiff's recovery was determined by the terms and conditions of the insurance contract and plaintiff's medical condition. The court also found that termination of the policy would not relieve the insurance company from the liability that had been incurred, but plaintiff still could not recover for future installments that were not due. *Id.* at 675.[1]

---

[1] The rule in *Walker*, *Christian*, and *Henderson* is similar to other jurisdictions. For example, in *Shyman v. Unum Life Ins. Co.*, 2002 WL 31133244 (N.D. Ill. 2002), the court, relying on *Morgan v. Aetna Life Ins. Co.*, 157 F.2d 527 (7th Cir. 1946), held that the damages available to an insured under a disability policy – if he prevails – are the amount of insurance benefits in default at the commencement of the suit. The *Shyman* court refused to issue a declaratory judgment regarding future benefits, finding that whether the plaintiff "will be entitled to future benefits depends upon certain conditions precedent—i.e.,

More recently, Judge Goodwin in this District addressed the issue of recovery of future benefits in *Allianz Life Ins. Co. of N. Am. v. Muse*, CIV-17-1361-G, 2020 WL 113357, at *2 (W.D. Okla. Jan. 9, 2020), *aff'd in part, rev'd in part (on other grounds) and remanded, Allianz Life Ins. Co. of N. Am. v. Muse*, 20-6026, 2022 WL 3701606 (10th Cir. Aug. 26, 2022):

> Allianz argues that unpaid-benefit damages that have not yet accrued cannot be recovered on Muse's breach-of-contract counterclaim. *See* Pl.'s First Mot. at 5-12. First, Allianz argues, "[u]nder Oklahoma law, breach of an insurance policy yields only those benefits that the insured should have been paid in the past and does not result in the award of future damages." *Id.* at 7-11 (citing *Mid-Continent Life Ins. Co. v. Walker*, 260 P. 1109 (Okla. 1926); *Mid-Continent Life Ins. Co. v. Christian*, 23 P.2d 672 (Okla. 1932); *Mass. Bonding & Ins. Co. v. Reeves*, 145 P.2d 381 (Okla. 1944); *Henderson v. Nat'l Fid. Life Ins. Co.*, 257 F.2d 917 (10th Cir. 1958)). Muse makes no attempt to distinguish these decisions, which do generally support the exclusion of future-damages evidence sought by Allianz here. *See, e.g., Christian*, 23 P.2d at 675 ("Under the authorities just cited, plaintiff would be entitled to recover in his cause of action for all benefits that had accrued under the [disability] insurance contract at the time of filing his suit. And could amend his petition to include such installments due up to the date of the amendment. But plaintiff could not recover for installments that were not due. The court could not determine how long said installments would continue to become due, because said matter is dependent upon the conditions of health of plaintiff and the date of his death."). Instead, Muse argues that, applying *Bourke*, Allianz's repudiation of the Policy excuses Muse from meeting its conditions in the future—e.g., being certified as Chronically Ill, receiving assistance with his Activities of Daily Living—in order to recover benefits. *See* Def.'s First Resp. at 19-20. For the same reasons noted above, the Court finds that Muse may not rely upon Allianz's anticipatory repudiation to forgo his obligations under the contract.
>
> Second, Allianz asserts that Muse's request for the present value of future Policy benefits is too speculative and contingent upon external events to comprise proper damages under Oklahoma law. *See* Pl.'s First Mot. at 11-13; Okla. Stat. tit. 23, § 21 ("No damages can be recovered for a breach of

---

whether he meets the terms and conditions for coverage in the future." Id. at *1. Following *Morgan*, the court held that such conditional payments cannot be enforced until due. *Id.*

contract, which are not clearly ascertainable in both their nature and origin."). The Court agrees. The Oklahoma Supreme Court has explained that the "clearly ascertainable" statutory prescription means "without ... uncertainty" and "that the damage claimed must be made sure, certain, fixed, established, determined, and settled." *Baker & Strawn v. Miller & Jones Bros.*, 235 P. 476, 478 (Okla. 1925). For Muse to be entitled to payment under the express terms of the Policy, he has to: concurrently meet several requirements, including certification as Chronically Ill; receive services covered under the Policy; and submit claims in accordance with the Policy with no applicable exclusion or limitation on those claims. *See* Policy at 13-14. Even assuming these conditions were met prior to April 22, 2017, and even considering Muse's proposed medical testimony as to the chronic and worsening nature of his condition, under the facts of this case it is improperly "contingent" and "speculative" for Muse to be awarded damages based upon these conditions being met at some point in the future (and for the remainder of the nearly 20-year life expectancy set forth by Defendants' expert). *Baker & Strawn*, 235 P. at 478.

As in *Muse, Walker*, *Christian*, and *Henderson*, the policy at issue here is a contract which requires the payment of money at specified times (monthly) contingent on evidence that Plaintiff remains disabled. Doc. 85, at 15. Oklahoma law simply does not permit recovery of future benefits not yet due (or determined to be due) under such a policy. Thus, the issue of whether Plaintiff can be awarded any future monthly payments depends on his ability to establish – in the future – sufficient lost income and continued care by the appropriate physician. This issue cannot be addressed in this trial.

### III.    Plaintiff Cannot Recover ERISA Benefits.

There is no question that Provident Life and Unum Life Insurance Company of America are two separate companies and that these two legal entities issue separate insurance policies. Nor is it in dispute that Provident Life issued the IDI policy, and that Unum Life issued a separate group policy to Plaintiff's employer (the "ERISA Policy"). However, Plaintiff has repeatedly attempted to combine the two companies, and the two

policies, together for the purposes of the instant litigation, and apparently seeks to recover unadjudicated ERISA benefits as part of his bad faith claim in this action.

As discussed above, Plaintiff cannot obtain future benefits.  This applies equally to the IDI and ERISA policies.  The ERISA Policy, attached in pertinent part, as **EXHIBIT 1,** includes the following provisions:

You are disabled when Unum determines that:

- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury;** and

- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful **occupation** for which you are reasonably fitted by education, training or experience.

You must be under the regular care of a physician in order to be considered disabled.

We may require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice. Unum will pay for this examination. We can require an examination as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Unum Representative.

**REGULAR CARE** means:

- you personally visit a physician as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care which conforms with generally accepted medical standards, for your disabling condition(s) by a physician whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

> **REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of haw the work tasks are performed for a specific employer or at a specific location.
>
> For physicians, "regular occupation" means your specialty in the practice of medicine which you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

*Id.* at UA-POL-LTD-000018, UA-POL-LTD-000036.

As is evident from these provisions, continuing disability under the ERISA Policy is a condition precedent to Unum Life's obligation to make further monthly payments. First, the Policy provides that an insured will no longer be considered disabled after 24 months of payments if the insured can return to work, *i.e*, if the insured is able to perform the duties of ***any*** gainful occupation for which he is qualified. *Id.* Second, Unum is authorized to: (a) require that an insured "send proof of continuing disability indicating you are under the regular care of a doctor," (b) obtain additional medical and non-medical information about an insured's condition, and (c) require a medical or vocational examination "as often as it is reasonable to do so." *Id.* These terms and conditions all demonstrate that, under the ERISA Policy, disability benefits do not automatically or necessarily continue into the future. This conclusion is further supported by the fact that the ERISA Policy does not employ the term "permanent" disability. Instead, every disability is subject to periodic re-evaluation under the ERISA Policy.

Moreover, as the Court is well aware, there are currently two cases involving Plaintiff and his claim to disability benefits. Plaintiff has filed a second lawsuit (CIV-22-

1043-D) arguing that that Unum Life improperly denied his claim under the ERISA Policy.

ERISA was enacted by Congress and has its own pre-emptive remedial scheme:

> Congress enacted ERISA to "protect ... the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid [e] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, see ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).
>
> ERISA's "comprehensive legislative scheme" includes "an integrated system of procedures for enforcement." *Russell,* 473 U.S., at 147, 105 S.Ct. 3085 (internal quotation marks omitted). This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans. As the Court said in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987): "[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. 'The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.,* at 54, 107 S.Ct. 1549 (quoting *Russell, supra,* at 146, 105 S.Ct. 3085).
>
> Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted. See 481 U.S., at 54–56, 107 S.Ct. 1549; see also *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 143–145, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

The pre-emptive force of ERISA § 502(a) is still stronger. In *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Court determined that the similarity of the language used in the Labor Management Relations Act, 1947 (LMRA), and ERISA, combined with the "clear intention" of Congress "to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA," established that ERISA § 502(a)(1)(B)'s pre-emptive force mirrored the pre-emptive force of LMRA § 301. Since LMRA § 301 converts state causes of action into federal ones for purposes of determining the propriety of removal, see *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), so too does ERISA § 502(a)(1)(B). Thus, the ERISA civil enforcement mechanism is one of those provisions with such "extraordinary pre-emptive power" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life,* 481 U.S., at 65–66, 107 S.Ct. 1542. Hence, "causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court." *Id.,* at 66, 107 S.Ct. 1542.

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 208–09, 124 S. Ct. 2488, 2495–96, 159 L. Ed. 2d 312 (2004).

While Oklahoma allows for bad faith damages in certain circumstances, ERISA and its corresponding body of federal common law do not.

Oklahoma's law allows plan participants to obtain consequential and, in a proper case, punitive, damages for breach of good faith and fair dealing by an insurer. *Nowhere does the Employee Retirement Income Security Act allow consequential or punitive damages.* Damages are limited to the recovery of "benefits due ... under the terms of the plan." *See* 29 U.S.C. § 1132(a)(1)(B). Oklahoma's bad faith law therefore allows plan participants to obtain remedies ... that Congress rejected in the Act.

*Allison v. UNUM Life Ins. Co. Of Am.*, 381 F.3d 1015, 1025 (10th Cir. 2004), quoting

*Conover v. Aetna U.S. Health Care, Inc.,* 320 F.3d 1076 (10th Cir.2003).

As acknowledged by Plaintiff, the group policy is subject to ERISA procedures (*i.e.,* a determination by this Court of entitlement to benefits based on a review of the record

with limited supplementation in certain cases). *See, e.g., Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201-1202 (10th Cir. 2002); *Robison v. Reliance Standard Life Ins. Co.*, CIV-14-1262-D, 2017 WL 972126, at *3 (W.D. Okla. Mar. 10, 2017). Plaintiff cannot offer any authority – in this action premised on the IDI Policy – to circumvent the governing ERISA law to obtain benefits under the ERISA Policy at issue in a separate lawsuit.

In addition, the ERISA litigation, and much of the underlying claims handling, did not occur until well after the instant litigation was filed. A bad faith claim arises from the breach of an insurer's duties to perform under a contract of insurance. Absent some non-action (*i.e.*, a delay), the breach occurs when the decision not to perform under the contract is made (*i.e.*, an adverse determination). "The decisive question is whether the insurer had a "good faith belief, <u>at the time its performance was requested</u>, that it had justifiable reason for withholding payment under the policy." *Buzzard v. Farmers Ins. Co.*, 1991 OK 127, ¶14, 824 P.2d 1105, 1109 [Citation and punctuation omitted; <u>Emphasis</u> added]. *Accord, Stewart v. Bhd. Mut. Ins. Co.*, 2018 U.S. Dist. LEXIS 218664, *18-19 (N.D. Okla. July 10, 2018) (Judge Dowdell). *See also Cantrell v. Amica Mut. Ins. Co.*, 2009 U.S. Dist. LEXIS 88997, *16-17, 2009 WL 3157338 (N.D. Okla., September 25, 2009) (Judge Eagan). In short, a claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient. The decisive question is whether the insurer had a good faith belief, at the time its performance was requested, that there was a justifiable reason for withholding payment under the policy. To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances.

If the insurer fails to conduct an adequate investigation of a claim, its belief that the claim is insufficient may not be reasonable. *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 611-12 (10th Cir. 1994); *see also Skinner v. John Deere Ins. Co.*, 2000 OK 18, ¶ 16, 998 P.2d 1219, 1223 ("Because withholding payment is a necessary element of a claim for bad faith in refusing to pay a legitimate claim, the actions of an insurer after payment is made cannot be the basis of the bad faith claim."). This is not controversial - the insurer's duty of good faith focuses on the "good faith belief at the time its performance was requested." !

As Oklahoma law has repeatedly provided, an insurer cannot be penalized for relying on a court to determine the validity of its position under the contract.

> We first recognized tortious conduct stemming from an insurer's breach of the implicit duty to act in good faith and deal fairly with its insured in the case of *Christian v. American Home Assurance Co.,* 1977 OK 141, ¶ 25, 577 P.2d 899, 905. By adopting this new legal tenet, however, this Court did not eliminate the insurer's right to resolve disputes in a judicial forum. Since Christian, our decisions have consistently recognized an insurer's right to resist payment or resort to a judicial forum to resolve a legitimate dispute. *See Brown v. Patel,* 2007 OK 16, ¶ 26, 157 P.3d 117, 126–127; *Skinner v. John Deere Ins. Co.,* 2000 OK 18, ¶ 16, 998 P.2d 1219, 1223; *Manis v. Hartford Fire Ins. Co.,* 1984 OK 25, ¶ 14, 681 P.2d 760, 762.

*Gov't Employees Ins. Co. v. Quine*, 2011 OK 88, ¶ 15, 264 P.3d 1245, 1249.

Here, Provident Life made a final determination of Plaintiff's IDI Policy claim on January 24, 2020. Plaintiff's lawsuit is plainly predicated on that determination, made "at the time its performance was requested." There was no further investigation, evaluation or other conduct which could give rise to a bad faith claim after that date. *Klintworth v. Valley Forge Ins. Co.*, 20-CV-0178-CVE-CDL, 2021 WL 816730, at *19 (N.D. Okla. Mar. 3, 2021), provides:

Plaintiff argues that defendant disregarded its continuing duty to investigate plaintiff's claims during the pendency of this litigation in a manner that demonstrates bad faith. Dkt. # 107, at 35-36. However, under Oklahoma law "[o]nce a court ... proceeding is commenced seeking insurance benefits, normal claim handling is superseded by the litigation proceeding." *Andres v. Oklahoma Farm Bureau Mut. Ins. Co.*, 290 P.3d 15, 17 (Okla. Civ. App. 2012) (quoting Allan D. Windt, 2 Insurance Claims and Disputes 5th: Representation of Insurance Companies & Insureds, § 9:28 (March 2012)). Accordingly, "[a]n insurer cannot be guilty of bad faith because it does not conduct its own investigation, but instead relie[s] upon its counsel to conduct an investigation that is appropriate in a litigation context." *Id.*

See also *Sims v. Travelers Ins. Co.*, 2000 OK CIV APP 145, ¶¶ 9–12, 16 P.3d 468, 471–72; *Roesler v. TIG Ins. Co.,* 251 Fed.Appx. 489, 498 (10th Cir.2007); *Timberlake Const. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 340 (10th Cir. 1995); *Parker v. S. Farm Bureau Cas. Ins. Co.*, 326 Ark. 1073, 1085, 935 S.W.2d 556, 562 (1996) ("It is…well-established that a cause of action must exist and be complete at the time the action is commenced…The subsequent occurrence of a material fact cannot aid in maintaining it.").

The role of the insured-insurer changes once litigation is filed. Public policy has given rise to the tort of the breach of the duty of good faith and fair dealing because of the significantly different positions of the insured and the insurer.  *Christian v. Am. Home Assur. Co.,* 1977 OK 141, 577 P.2d 899, 902 ("the [insurance] industry has a quasi-public nature, that it involves the public interest…this special relationship and these special duties take cognizance of the great disparity in the economic situations and bargaining abilities of the insurer and the insured…"). However, once litigation is initiated, the insured becomes a plaintiff, typically represented by counsel, and afforded all the protections of the judicial system to ensure they are treated fairly. *Sims,* 16 P.3d at 471; *Timberlake,* 71 F.3d at 340-341. In addition, the insurer plainly has the right to defend itself and the

introduction of post-litigation evidence inhibits that right. *Id.*  Once Plaintiff files litigation, its evaluation is no longer simply about the amount Plaintiff should be paid under the policy, which counsel may or may not share with the client, but also about the cost of defense, the potential for extracontractual and exemplary damages, and any attorney fees and costs, among other considerations.

Plaintiff simply cannot present here a claim for damages that includes the potential benefits available under the ERISA policy (and which are the subject of a separate action).

Respectfully Submitted,

*s/Matthew C. Kane*
PHILLIP G. WHALEY, OBA No. 13371
MATTHEW C. KANE, OBA No. 19502
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK  73104
Telephone:    (405) 239-6040
Facsimile:     (405) 239-6766
pwhaley@ryanwhaley.com
mkane@ryanwhaley.com

ATTORNEYS FOR DEFENDANT
PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of July 2023, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to the following:

Steven S. Mansell
Mark A. Engel
Zachary K. Housel

*s/Matthew C. Kane*
MATTHEW C. KANE