IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD R. MORGAN,<br><br>            Plaintiff,<br><br>v.<br><br>PROVIDENT LIFE AND ACCIDENT<br>INSURANCE COMPANY,<br><br>            Defendant. | Case No. CIV-20-180-D |

**O R D E R**

Before the Court are Plaintiff's Motions in Limine [Doc. No. 96] and Defendant's Motions in Limine [Doc. No. 100], which are fully briefed and at issue.[1]

This case concerns coverage under a disability income insurance policy. Plaintiff claims 1) Defendant breached the insurance contract by terminating Plaintiff's residual disability benefits despite a loss of income from his former occupation as an emergency room physician, 2) Defendant acted in bad faith by denying continued residual disability benefits, and 3) Defendant's sales agent fraudulently misrepresented to Plaintiff in 1987 the coverage provided by the policy. Defendant was unsuccessful in obtaining summary judgment on any claim. *See* 3/30/23 Order [Doc. No. 85]. Both parties seek pretrial rulings on issues that may arise during the jury trial set on the Court's February 13, 2024 docket. Upon consideration of the arguments presented in the Motions and briefs, the Court makes the following determinations.

---

[1] Each party timely responded to the other's motion. *See* Def.'s Resp. Br. [Doc. No. 120]; Pl.'s Resp. Br. [Doc. No. 124]. Neither party requested leave to file a reply brief.

## Standard of Decision

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (internal quotation omitted). It is a "pretrial request that certain inadmissible evidence not be referred to or offered at trial." *Edens v. Netherlands Ins. Co.*, 834 F.3d 1116, 1130 (10th Cir. 2016) (quoting *Black's Law Dictionary* (10th ed. 2014)). "The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence . . . without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) *aff'd*, 402 Fed. App'x 337 (10th Cir. 2010) (internal quotation omitted). A motion *in limine* is not a proper vehicle to obtain a dispositive ruling. *See New Mexico ex rel. Balderas v. Real Est. L. Ctr.*, 409 F. Supp. 3d 1122, 1157-58 (D. N.M. 2019) (citing cases); *Bales v. State Farm Fire & Cas. Co.*, No. CIV-22-851-D, 2024 WL 42339, *1 (W.D. Okla. Jan. 3, 2024).

Despite the streamlining benefits of a motion *in limine*, "evidentiary rulings should [generally] be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context." *Mendelsohn*, 587 F. Supp. 2d at 1208; *see Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007) ("a court is almost always better situated during the actual trial to assess the value and utility of evidence"). "Consequently, a court should reserve its rulings for those instances when the evidence plainly is inadmissible on all potential grounds[.]" *Wilkins*, 487 F. Supp. 2d at 1218-19 (internal quotation omitted). Even where a pretrial ruling is made, "the district court may

change its ruling at any time for whatever reason it deems appropriate." *Jones*, 59 F.3d at 146 (citation omitted); *see Luce*, 469 U.S. at 41-42.

A.     **Plaintiff's Motion**

Plaintiff seeks to exclude evidence and argument regarding five subject areas:  1) his litigation conduct before filing the Second Amended Complaint [Doc. No. 29]; 2) any contention by Defendant that it is not responsible for the sales agent that solicited the policy, Earl Chambers; 3) any assertion that Plaintiff's loss of income was not "as a result of the same sickness," as required by the policy; 4) any inference that Defendant is distinct from a tradename, "UNUM;"[2] and 5) any contention that Plaintiff cannot recover damages for "future benefits" allegedly due under the policy.

In response, Defendant opposes Plaintiff's Motion except regarding category No. 2. Defendant "does not anticipate offering evidence or testimony addressing Mr. Chambers' agency or lack thereof . . . ." *See* Def's Resp. Br. at 2.[3]  The Court therefore finds this part of Plaintiff's Motion is moot.

---

[2] The Court distills this description from the parties' briefs; it is not entirely clear from Plaintiff's Motion which "UNUM" he is referring to. Confusion apparently arises from the facts of a corporate merger that occurred after the original policy was issued, Defendant's use of a tradename, and a similar name of the company that adjusted the claim, Unum Life and Accident Insurance Company.  Defendant also objects in its Motion to Plaintiff's references to "UNUM" at trial.  *See* Def.'s Mot. at 3.

[3] Defendant qualifies this statement with a condition:  "other than reflected in the exhibits identified by the parties."  *Id*.  The Court has examined the parties' Final Pretrial Report and finds no objection by Plaintiff to any of Defendant's exhibits.  Plaintiff could not properly object to any reasonable inference to be drawn from his own exhibits.  Thus, the Court finds this qualification does not raise any issue for decision.

Regarding the remaining categories, the Court finds that, except for No. 1, Plaintiff makes broad arguments regarding possible positions that Defendant may take at trial, without reference to any specific evidence or any evidentiary rule. As to some, Plaintiff seeks dispositive rulings on possible defenses or issues of recoverable damages, rather than admissible evidence. Upon consideration, the Court finds that it cannot decide categorically in advance of trial whether the subject matter that Plaintiff seeks to exclude is inadmissible.

Regarding No. 1, Defendant partially objects to Plaintiff's Motion on this issue – which seeks to prevent the jury from learning of claims that Plaintiff asserted earlier in this case but later abandoned.[4] However, Defendant takes an opposite position in its Motion, discussed *infra*, regarding evidence of its conduct during the litigation. Plaintiff concedes in response to Defendant's Motion that it would be impossible to draw a bright-line rule and prevent the jury from learning of relevant conduct with respect to the handling of Plaintiff's insurance claim. The Court finds this same principle applies to the claims Plaintiff has asserted in the litigation. For example, evidence of Plaintiff's reading of the policy bears on his claim of fraud, like Defendant's reading of the policy bears on its

---

[4] Defendant disclaims any intention of referring to Plaintiff's prior pleadings, and they are not listed as trial exhibits. The Court understands Plaintiff's Motion as objecting to testimony or argument regarding his earlier contentions or legal positions.

defense to his claim of bad faith. Whether to exclude specific evidence related to these issues must be decided in the context of the trial on contemporaneous objections.[5]

## B.     Defendant's Motion in Limine

Defendant seeks to exclude evidence or argument regarding fifteen enumerated areas, which can be distilled to the following categories: 1) "future benefits" under the policy; 2) benefits under a separate disability insurance policy issued by Unum Life and Accident Insurance Company pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 *et seq.*; 3) inferences that Defendant and Unum Life and Accident Insurance Company are not separate entities; 4) Defendant's corporate size or citizenship; 5) "Golden Rule" arguments; 6) Defendant's post-decision or post-litigation conduct; 7) medical reviews of other insureds' disability claims; 8) definitions of "bad faith" conduct, such as characterizing certain claim-handling practices as unfair or unreasonable and invoking standards set by Defendant's claim-handling guidelines or Oklahoma's Unfair Claims Settlement Practices Act, Okla. Stat. tit. 36, § 1250.1 *et seq.*; 9) any requirement that an insurer should look for ways to pay a claim or owes an insured "the benefit of the doubt;" 10) testimony by fact witnesses, such as Plaintiff and his treating physician, that constitutes expert opinions regarding Plaintiff's condition or injuries; and 11) any reference to punishment of Defendant or punitive damages before the second stage of a jury trial conducted under the bifurcated procedure of Okla. Stat. tit. 12, § 9.1.

---

[5] With respect to No. 4, however, the Court cautions counsel for the parties to be mindful of possible confusion that may arise from imprecise references to "UNUM" at trial, and urges them to be careful to distinguish separate companies in making their trial presentations.

In response, Plaintiff states that category No. 2 is "moot" because he is not seeking damages for benefits allegedly due under the ERISA policy. Regarding No. 8, Plaintiff denies any intention to ask witnesses to define "bad faith" or legal requirements, and points out that he will not present an expert witness on insurance matters.[6] Plaintiff also accedes to Defendant's position in No. 11 that his trial presentation regarding punitive damages should be limited to the issues to be decided in the first stage of a bifurcated proceeding under the Oklahoma statute.[7] Plaintiff's position on the other issues raised by Defendant's Motion is less clear.

Upon consideration of the remainder of Defendant's Motion, the Court finds that most categories do not seek evidentiary rulings that would provide meaningful guidance for a trial of this case. For example, No. 1 raises an issue of recoverable damages that will be addressed, as appropriate, in the Court's instructions to the jury.[8] No. 3 raises a similar

---

[6] To the extent the parties are not in full agreement on this issue, the Court advises counsel to confine their trial presentations to relevant information regarding the handling of Plaintiff's insurance claim. A legal definition of "bad faith" will be provided in the Court's jury instructions. As to Defendant's internal guidelines, Defendant provides no pertinent authority to establish they are categorically inadmissible; any improper use of them should be raised by a contemporaneous objection.

[7] The two-stage trial procedure for punitive damages provided by Oklahoma law may be used in federal trials at the discretion of the presiding judge. *See Shugart v. Cent. Rural Elec. Co-op.*, 110 F.3d 1501, 1504 (10th Cir. 1997); *but see Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1169 & n.6 (10th Cir. 2017) (questioning whether Oklahoma's two-stage process is substantive or procedural). The Court plans to use the statutory procedure for punitive damages in this case, if warranted by the evidence.

[8] Like Plaintiff, Defendant appears to seek a dispositive ruling on damages that would be appropriate before trial, if at all, only under Rule 56.

issue to Plaintiff's Motion regarding confusing references to "UNUM."[9] Nos. 4, 5 and 9 speak to improper attempts to influence a jury's decision based on emotional or other improper considerations, but in some instances, the information Defendant seeks to exclude also bears on a proper consideration. For example, evidence having some "Golden Rule" or "benefit of the doubt" color might permissibly bear on the reasonableness of Defendant's conduct under the circumstances. No. 6 proposes a similar bright-line rule regarding a party's conduct during the litigation that is sought by Plaintiff's Motion, but no categorical ruling can be made given the nature of Plaintiff's claims.

The Court has identified two subjects raised by Defendant's Motion that may be appropriate for a pretrial ruling: No. 7 challenges the admissibility of evidence regarding Defendant's handling of other insureds' disability claims; and in No. 10, Defendant asserts that opinion testimony regarding medical issues and damages is barred by unmet disclosure and evidentiary requirements governing expert witnesses.

### 1) Similar Claims by Other Insureds

Defendant objects to Plaintiff's anticipated evidence, as shown by exhibits listed in the Final Pretrial Report, regarding medical reviews of other insureds' disability claims by the physicians who were involved in the evaluation of Plaintiff's claim. Defendant contends this evidence has no relevance to Plaintiff's contract claim, little relevance to the

---

[9] Notably, "Defendant does not object to Plaintiff's use of 'Unum' to describe the fact that [Unum Life and Accident Insurance Company's] employees were engaged to conduct the investigation and evaluation of Plaintiff's claims." *See* Def.'s Mot. at 3-4. The involvement of a nonparty "Unum" entity may heighten the need for precise references by Plaintiff's counsel, but Defendant (like Plaintiff) does not raise an evidentiary issue for pretrial decision. *See supra* note 4.

bad faith claim, and "should be excluded [under Fed. R. Evid. 403] given the danger of unfair prejudice, confusion of the issues and wasting of time." *See* Def.'s Mot. at 7.[10]

Plaintiff's response to this issue makes his position difficult to discern. He argues that the reviewers' reports regarding other claims may be used for impeachment purposes and that they might be used to show a pattern and practice by Defendant of disguising improper denials as "independent" medical reviews. On the latter point, Plaintiff asserts that the evidence is admissible under Fed. R. Evid. 406 to show conduct in conformity with a routine organizational practice. *See* Pl.'s Resp. Br. at 11.

In the Court's experience, whether to admit evidence of an insurer's alleged similar conduct toward other insureds is a close question. The issue arises in this case under circumstances that make a pretrial determination particularly difficult. Assuming Plaintiff intends to introduce evidence of individual medical reviews of other disability claims conducted by the same physicians who reviewed his claim, he has not presented a factual basis to determine that the reviews involved similar claims or issues, or that other insureds' claims received like treatment under similar circumstances. The Court thus lacks a sufficient basis to determine whether the anticipated evidence is probative of bad faith conduct, as argued in Plaintiff's brief, and whether any probative value is substantially

---

[10] Defendant also speculates that, rather than introducing individual claim reviews, Plaintiff may attempt to present a statistical analysis regarding outcomes of the review process. Defendant argues that the medical reports listed as exhibits would not permit such a comparison. Plaintiff makes no response to this argument, except to argue that the challenged evidence could be used to impeach a witness who cannot recall whether he "agree[d] with UNUM over 95% of the time." *See* Pl.'s Resp. Br. at 12. From Plaintiff's argument, it appears he does not propose to use the exhibits to make a statistical presentation, and thus this part of Defendant's objection is unopposed.

outweighed by the dangers raised by Defendant, as required for exclusion under Rule 403. Therefore, a resolution of these issues must be made at trial.

To guide the parties' trial preparation, Plaintiff should be aware that the Court shares Defendant's concern that an extended presentation of other-insureds evidence has the potential for jury confusion and unwarranted delay. The Court expects Plaintiff's counsel to carefully plan and conduct the examination of witnesses with relevant knowledge of nonparty claims. Defendant may object to this evidence, as appropriate, and may propose for consideration by the Court a limiting instruction to be given to the jury.

**2)  Opinion Testimony**

Defendant anticipates that Plaintiff may elicit opinion testimony from fact witnesses – namely, Plaintiff and his treating physician – regarding medical issues, such as causation, prognosis, and permanent injury. Defendant objects to any such testimony that constitutes expert opinion on the ground that Plaintiff did not properly disclose himself and his cardiologist as expert witnesses. Defendant seeks to limit the scope of their testimony to lay opinions admissible under Fed. R. Evid. 701. Also, Defendant objects to any testimony by Plaintiff regarding "emotional injuries" as beyond the realm of his personal knowledge.

According to Plaintiff, the underlying medical condition for his disability claim was self-diagnosed and initially self-treated; he referred himself to a specialist for surgery; and he provided medical opinions and evidence during the medical review process for his insurance claim. Plaintiff also notes that he and his cardiologist were timely disclosed as expert witnesses and that only retained experts must provide written reports. Plaintiff urges the Court to apply Rule 701 as permitting him and his cardiologist to testify regarding the

9

same fact-based opinions they provided during Defendant's investigation and review of the claim. As to emotional injury, Plaintiff asserts that his testimony will fall within the scope of his personal knowledge.[11]

As framed by the parties' arguments, the Court views the issue to be whether the Plaintiff can testify about, or ask his treating physician to give, opinions about Plaintiff's medical condition and injuries. The admissibility of such evidence is governed by Rule 701, which permits opinion testimony "that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Treating physicians – which in this case may include Plaintiff's self-treatment – can properly testify from their own observations and personal opinions about a patient's medical condition and injuries. *See Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999); *Guerrero v. Meadows*, 646 F. App'x 598, 602 (10th Cir. 2016).

Defendant emphasizes Rule 701(c)'s limitation on opinions requiring specialized knowledge, and argues that Plaintiff should not be permitted to evade the rules applicable to experts. Upon examination, the case record shows that Plaintiff provided sufficient information to satisfy the disclosure requirement of Rule 26(a)(2)(C) for non-retained experts. *See* Pl.'s Expert Witness List [Doc. No. 33]; *see also Vincent v. Nelson*, 51 F.4th

---

[11] Plaintiff asserts, and the Court agrees, that Defendant does not adequately explain the basis of its position that expert testimony regarding Plaintiff's emotional injury or mental health is required. As noted by Plaintiff, the cited legal authority concerns a psychological diagnosis or condition and does not seem to fit the facts of this case.

1200, 1216 (10th Cir. 2022). Defendant does not identify any testimony that might be inadmissible under Rule 702, nor did it file a timely *Daubert* motion challenging any alleged expert opinions.

Under these circumstances, the Court finds that Defendant has not sufficiently identified any inadmissible opinion testimony. Its counsel may make contemporaneous objections at trial to any opinion testimony they believe is inadmissible. Defendant may also test the expressed opinions in the usual ways, by cross-examination, impeachment, and introduction of contradictory evidence. Therefore, the Court finds that Defendant's Motion regarding opinion testimony should be denied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion in Limine [Doc. No. 96] and Defendant's Motion in Limine [Doc. No. 100] are **DENIED**, as set forth herein.

**IT IS SO ORDERED** this 25th day of January, 2024.

TIMOTHY D. DeGIUSTI
Chief United States District Judge